1  Thomas A. Saenz (SBN 159430)
   Shaheena Ahmad Simons (SBN 225520)
2  MEXICAN AMERICAN LEGAL DEFENSE
   AND EDUCATIONAL FUND
3  634 South Spring Street
   Los Angeles, CA  90014
4  Telephone:  (213) 629-2512
   Facsimile:  (213) 629-0266
5
   Bill Lann Lee (SBN 108452)
6  Kelly M. Dermody (SBN 171716)
   Eve H. Cervantez (SBN 164709)
7  Elizabeth A. Alexander (pro hac vice)
   Jahan C. Sagafi (SBN 224887)
8  LIEFF, CABRASER, HEIMANN &           Joseph C. Kohn
   BERNSTEIN, LLP                       Martin J. D'Urso
9  275 Battery Street, 30th Floor       Diana Liberto
   San Francisco, CA  94111-3339        Hilary Cohen
10 Telephone:  (415) 956-1000           KOHN, SWIFT & GRAF, P.C.
   Facsimile:  (415) 956-1008           One South Broad Street, Suite 2100
11                                      Philadelphia, PA 19107
                                        Telephone:  (215) 238-1700
12                                      Facsimile:  (215) 238-1968

13 *Attorneys for Plaintiffs*

14 [Additional counsel listed on signature page]

15                 UNITED STATES DISTRICT COURT
                  NORTHERN DISTRICT OF CALIFORNIA
16               SAN FRANCISCO / OAKLAND DIVISION

17 EDUARDO GONZALEZ, ANTHONY            Case No.  03-2817 SI
   OCAMPO, ENCARNACION
18 GUTIERREZ, JOHAN MONTOYA,
   JUANCARLOS GÓMEZ-MONTEJANO,          **SECOND AMENDED CLASS ACTION
19 JENNIFER LU, AUSTIN CHU, IVY         COMPLAINT FOR INJUNCTIVE AND
   NGUYEN, ANGELINE WU, ERIC            DECLARATORY RELIEF AND
20 FIGHT, CARLA GRUBB, DAVID            DAMAGES, FOR VIOLATIONS OF TITLE
   CULPEPPER, PATRICE DOUGLASS,         VII OF THE CIVIL RIGHTS ACT OF 1964,
21 and ROBAIR SHERROD, on behalf of     42 U.S.C. § 2000e; 42 U.S.C. § 1981; AND
   themselves and all others similarly situated,   CALIFORNIA FAIR EMPLOYMENT AND
22                                       HOUSING ACT**
                        Plaintiffs,
23                                       **DEMAND FOR JURY TRIAL**
             v.
24
   ABERCROMBIE & FITCH STORES,
25 INC., A&F CALIFORNIA, LLC, and A&F
   OHIO, INC.
26
                        Defendants.
27

28

260294.11                                      SECOND AMENDED CLASS ACTION COMPLAINT

1        Individual and Representative Plaintiffs Eduardo Gonzalez, Anthony Ocampo,

2   Encarnacion Gutierrez, Johan Montoya, Juancarlos Gómez-Montejano, Jennifer Lu, Austin Chu,

3   Ivy Nguyen, Angeline Wu, Eric Fight, Carla Grubb, and David Culpepper, Patrice Douglass, and

4   Robair Sherrod (collectively "Plaintiffs") on behalf of themselves and all others similarly

5   situated, allege, upon personal knowledge as to themselves and information and belief as to other

6   matters, as follows:

7   **<u>INTRODUCTORY STATEMENT</u>**

8        1.    Defendants Abercrombie & Fitch Stores, Inc., A&F California, LLC, and

9   A&F Ohio, Inc. (hereinafter collectively identified as "Abercrombie," "A&F," or "the

10  Company") are a national retail clothing seller that discriminates against minority individuals,

11  including Latinos, Asian Americans, and African Americans (hereinafter, collectively,

12  "minorities") on the basis of race, color, and/or national origin, with respect to hiring, firing, job

13  assignment, compensation and other terms and conditions of employment by enforcing a

14  nationwide corporate policy of preferring white employees for sales positions, desirable job

15  assignments, and favorable work schedules in its stores throughout the United States.

16       2.    Abercrombie recruits, hires, and maintains a disproportionately white sales

17  force (called Brand Representatives) who act as salespeople and recruiters of other potential

18  Brand Representatives.

19       3.    Abercrombie systematically refuses to hire qualified minority applicants as

20  Brand Representatives to work on the sales floor and discourages applications from minority

21  applicants.  To the extent that it hires minorities, it channels them to stock room and overnight

22  shift positions and away from visible sales positions, keeping them out of the public eye.  In

23  addition, Abercrombie systematically fires qualified minority Brand Representatives in

24  furtherance of its discriminatory policies or practices.

25       4.    Abercrombie implements its discriminatory employment policies and

26  practices in part through a detailed and rigorous "Appearance Policy," which requires that all

27  Brand Representatives must exhibit the "A&F Look."  The "A&F Look" is a virtually all-white

28  image that Abercrombie uses not only to market its clothing, but also to implement its

1    discriminatory employment policies or practices.

2           5.     When people who do not fit the "A&F Look" inquire about employment,

3    managers sometimes tell them that the store is not hiring, or may provide them with applications

4    even though they have no intention of considering them for employment.  If applicants who do

5    not fit the "A&F Look" submit applications, managers and/or Brand Representatives acting at

6    their direction sometimes throw them away without reviewing them.

7           6.     Abercrombie publishes and distributes to its employees a "Look Book" that

8    explains the importance of the Appearance Policy and the "A&F Look," and that closely regulates

9    the Brand Representatives' appearance.  The Company requires its managers to hire and continue

10   to employ only Brand Representatives who fit within the narrow confines of the "Look Book,"

11   resulting in a disproportionately white Brand Representative workforce.

12          7.     Abercrombie also uses visual media to reinforce to managers responsible

13   for recruitment, hiring, assignment, compensation, termination, and other terms and conditions of

14   employment of Brand Representatives the importance of adhering to the virtually all-white A&F

15   image in employment decisions.  Each store prominently posts large photographs of models –

16   virtually all of whom are white.  In addition, the Company publishes and sells A&F Quarterly, a

17   magazine/catalog featuring almost exclusively white models.  Some stores also display A&F TV,

18   a television program played on a loop featuring Brand Representatives who fit the "A&F Look."

19   Again, almost every Brand Representative shown is white.  Abercrombie corporate

20   representatives and managers use these displays and publications to portray and promote the

21   "A&F Look" to employees, customers, applicants, and potential applicants, to discourage and

22   deter minority applicants, and to justify terminating minority employees.

23          8.     The Company rigorously maintains the "A&F Look" by careful scrutiny

24   and monitoring of its stores by regional and district managers and corporate representatives.

25   These managers and corporate representatives visit stores frequently to ensure, among other

26   things, that the store is properly implementing the Company's discriminatory employment

27   policies and practices.  These visits are referred to as "blitzes."  When managers or corporate

28   representatives discover that minority Brand Representatives have been hired, they have directed

1   that these Brand Representatives be fired, moved to the stock room or overnight shift, or have

2   their hours "zeroed out," which is the equivalent of termination.

3         9.    The Company also scrutinizes and enforces compliance with the "A&F

4   Look" by requiring all stores to submit a picture of roughly 10 of their Brand Representatives

5   who fit the "Look" to headquarters each quarter.  The corporate officials then select roughly 15

6   stores' pictures as exemplary models that perpetuate the Company's discriminatory employment

7   policies and practices.  They then disseminate these pictures to the over 600 A&F stores.  The

8   Brand Representatives in the pictures are almost invariably white.  This practice and policy, like

9   the others described above, constitutes an official directive to give preference to white Brand

10  Representatives and applicants, and to discriminate against minority Brand Representatives and

11  applicants.

12        10.    The A&F image is not limited to appearance; the Company accomplishes

13  its discriminatory employment policies or practices by defining its desired "classic" and "cool"

14  workforce as exclusively white.  It seeks to hire Brand Representatives who convey a certain

15  image.  This A&F image is decidedly non-minority.  In order to perpetuate the A&F image,

16  Abercrombie identifies specific colleges from which each store should recruit its employees, even

17  though the Brand Representative position does not require any of the skills or abilities acquired in

18  college, much less in any specific college.  Abercrombie also encourages the recruitment and

19  hiring of members of specified overwhelmingly white fraternities and sororities, and of students

20  who participate in certain overwhelmingly white intercollegiate sports.  However, the Company

21  does not encourage recruitment from fraternities, sororities, or sports teams with significant

22  minority populations.  To further reinforce to store managers the importance of hiring white

23  students who fit the Abercrombie image, the Company requires weekly reports on the number of

24  Brand Representatives who attend targeted colleges and who fit the emphasis on

25  fraternity/sorority membership and athletic team involvement.

26        11.    This class action is accordingly brought by minority Brand Representatives

27  and applicants for Brand Representative positions on behalf of themselves individually and all

28  minority applicants and employees against whom Abercrombie has discriminated on the basis of

race, color, and/or national origin.  Abercrombie has maintained and continues to maintain a pervasive policy or practice of discrimination based on race, color, and/or national origin in denying employment, desirable job assignments, job transfers, allocation of weekly hours, compensation, and other terms and conditions of employment to minorities in Abercrombie stores throughout the United States.

12.    This action seeks an end to these discriminatory policies or practices, an award of backpay and front pay, as well as compensatory damages, punitive damages, and injunctive relief, including rightful place relief for all class members.

## JURISDICTION, VENUE, AND INTRADISTRICT ASSIGNMENT

13.    This Court has jurisdiction over this action pursuant to 28 U.S.C. §§ 1331 and 1343.

14.    Venue is proper in this District pursuant to 28 U.S.C. § 1391(b).  Members of the Plaintiff class reside in California and throughout the United States.  Defendant Abercrombie is a Delaware corporation licensed to do business in California.  It has retail stores throughout California and this District.  Many of the acts complained of occurred in this State and this District and gave rise to the claims alleged.

15.    Intradistrict assignment is proper in the San Francisco/Oakland Division because (1) some of the events and omissions that give rise to the claims of Plaintiff Anthony Ocampo occurred in San Mateo County, (2) some of the events and omissions that give rise to the claims of Plaintiff David Culpepper occurred in San Francisco County, and (3) some of the events and omissions that give rise to the claims of Plaintiff Patrice Douglass occurred in Alameda County.

## PARTIES

16.    Plaintiff Eduardo Gonzalez is a minority resident of Palo Alto, California, where he is a student at Stanford University.  He was denied a position as a Brand Representative at the Abercrombie store in the Valley Fair Mall in Santa Clara, California in August 2002, on account of his race, color, and/or national origin.

17.    Plaintiff Anthony Ocampo is a minority resident of Palo Alto, California,

where he is a student at Stanford University.  He was denied a position as a Brand Representative at the Abercrombie store in the Hillsdale Shopping Center in San Mateo, California, in or around January 2000 on account of his race, color, and/or national origin.  He was also denied a position as a Brand Representative at the Abercrombie Store in the Glendale Galleria in Glendale, California in June 2000 on account of his race, color, and/or national origin.

18.     Plaintiff Encarnacion Gutierrez is a minority resident of South San Francisco, California.  He was denied a position as a Brand Representative at the Abercrombie store in the Third Street Promenade in Santa Monica, California in June or July 2001, on account of his race, color, and/or national origin.

19.     Plaintiff Johan Montoya is a minority resident of Goleta, California, where he is a student at the University of California at Santa Barbara.  He was denied a position as a Brand Representative at the Abercrombie store in the Topanga Mall in Canoga Park, California in August or September 2002 on account of his race, color, and/or national origin.

20.     Plaintiff Juancarlos Gómez-Montejano is a minority resident of Los Angeles, California.  He was employed as a Brand Representative at the Abercrombie store at the Third Street Promenade in Santa Monica, California, from November 1998 to April 1999, when he was terminated on account of his race, color, and/or national origin.

21.     Plaintiff Jennifer Lu is a minority resident of Irvine, California, where she is a student at the University of California at Irvine.  She was employed as a Brand Representative in the Abercrombie store in the Crystal Court Mall in Costa Mesa, California, from September 2000 to February 2003, when she was terminated on account of her race, color, and/or national origin.

22.     Plaintiff Austin Chu is a minority resident of Irvine, California, where he is a student at the University of California at Irvine.  He was employed as a Brand Representative in the Abercrombie store in the Crystal Court Mall in Costa Mesa, California from June 2001 to March 2003, when he was constructively discharged on account of his race, color, and/or national origin.

23.     Plaintiff Ivy Nguyen is a minority resident of Anaheim, California, where

1   she is a student at the University of California at Irvine.  She was employed as a Brand

2   Representative in the Abercrombie store in the Crystal Court Mall in Costa Mesa, California,

3   from June 2002 to February 2003, when she was terminated on account of her race, color, and/or

4   national origin.

5           24.     Plaintiff Angeline Wu is a minority resident of Irvine, California where she

6   is a student at the University of California at Irvine.  She was employed as a Brand

7   Representative in the Abercrombie store in the Crystal Court Mall in Costa Mesa, California,

8   from August 2002 to February 2003, when she was terminated on account of her race, color,

9   and/or national origin.

10           25.     Plaintiff Eric Fight is a minority resident of Venice, California.  He was

11   employed as a Brand Representative in the Abercrombie store in the Third Street Promenade in

12   Santa Monica, California, from roughly May 2003 to June 2003, but was channeled to a stock

13   room role (a non-sales position) due to his race or color.  He was constructively discharged in or

14   around June 2003 when he learned that he was not allowed to work on the sales floor due to his

15   race or color and that he had been misled by the manager with whom he had interviewed into

16   believing that there were no sales floor Brand Representative positions available.

17           26.     Plaintiff Carla Grubb is a minority resident of Bakersfield, California,

18   where she is a student at California State University at Bakersfield.  She began working as a

19   Brand Representative in the Abercrombie store in the Bakersfield Valley Plaza Mall in

20   Bakersfield, California in November 2002.  In or after January 2003, she was constructively

21   discharged on account of her race or color.

22           27.     Plaintiff David Culpepper is a minority resident of Berkeley, California,

23   where he is a graduate student at the University of California at Berkeley.  He was denied

24   positions as a Brand Representative at the Abercrombie store in the SF Shopping Center in San

25   Francisco, California in June 2003, and at the SF Stonestown Galleria in San Francisco,

26   California in March 2003 on account of his race or color.

27           28.     Plaintiff Patrice Douglass is a minority resident of El Sobrante, California,

28   where she is a student at the University of California, Santa Cruz.  She was denied a position as a

1  Brand Representative at the Abercrombie store in the Bay Street shopping area in Emeryville,

2  California in or about May 2003 on account of her race, color, and/or national origin.

3         29.    Plaintiff Robair Sherrod is a minority resident of Carson, California, where

4  he is a student at California State University at Dominguez Hills.  He was denied a position as a

5  Brand Representative at the Abercrombie store at the South Bay Galleria in Redondo Beach,

6  California in or about December 2002.

7         30.    Defendant Abercrombie & Fitch Stores, Inc. is an Ohio corporation and a

8  wholly owned subsidiary of Abercrombie.  Based on the representations of defendants, from July

9  1996 to August 2000, during which time it was a Delaware corporation, Abercrombie & Fitch

10  Stores, Inc. operated all California Abercrombie stores; from August 2000, when it became an

11  Ohio corporation, to May 2002, it operated all Abercrombie stores; and since May 2002, it has

12  operated all Abercrombie stores outside of California and Ohio.

13         31.    Defendant A&F California, LLC is an Ohio limited liability company and a

14  wholly owned subsidiary of Abercrombie.  Based on the representations of defendants, since May

15  2002, it has operated all Abercrombie stores in California.

16         32.    Defendant A&F Ohio, Inc. is an Ohio corporation and a wholly owned

17  subsidiary of Abercrombie.  Based on the representations of defendants, since May 2002, it has

18  operated all Abercrombie stores in Ohio.

19         33.    Defendants are a national retail clothing seller primarily marketing to

20  teenagers and young adults.  According to the Company, it took in $1.6 billion in revenue during

21  fiscal year 2002, a 17% increase over the previous year.  As of the end of the first quarter of 2003

22  (ended May 3, 2003), the Company operated 602 stores.

23         34.    Abercrombie operates stores (and/or departments within Abercrombie &

24  Fitch stores) under three different names:  "Abercrombie & Fitch" (the "Adult" store),

25  "Hollister," and "A&F Kids."  Although each type of store offers different product lines, they all

26  follow the same human resources policies and practices, participate in the same discrimination,

27  and are run by the same management.  Applicants to and employees of each type of store are

28  included in the proposed Class.

1

## CLASS ACTION ALLEGATIONS

2      35.     Plaintiffs bring this Class Action pursuant to Fed. R. Civ. P. 23(a), (b)(2),

3   and (b)(3) on behalf of a class of all past, present, and future minority Abercrombie Brand

4   Representatives and applicants for Brand Representative positions with Abercrombie who have

5   been, continue to be, or in the future may be discouraged from applying or denied employment,

6   desirable job assignments, job transfers, desirable hours, compensation, and/or other terms and

7   conditions of employment on the basis of their race, color, and/or national origin, and/or who

8   have been terminated on account of the policies or practices complained of herein.

9      36.     Plaintiffs are members of the class they seek to represent.

10      37.     The members of the class identified herein are so numerous that joinder of

11  all members is impracticable.  The number of class members is currently indeterminate, but is

12  certainly larger than can be addressed through joinder.  By the end of FY 2003 (ended February 1,

13  2003), Abercrombie had approximately 22,000 employees.  In addition, temporary employees are

14  hired during peak periods, such as the holiday season.  Each of Abercrombie's 600-odd stores

15  employs very few minority Brand Representatives but each store, on average, annually receives

16  numerous applications from qualified minorities who are potential Brand Representatives; as a

17  result of Abercrombie's systematic discriminatory hiring practices, an unknown number of

18  minority applicants have also been deterred from applying.  Thus, although the precise number of

19  qualified minority applicants who are not hired and/or who are fired or otherwise discriminated

20  against is currently unknown, it is far greater than can be feasibly addressed through joinder.

21      38.     There are questions of law and fact common to the class, and these

22  questions predominate over any questions affecting only individual members.  Common

23  questions include, among others:  (1) whether Abercrombie's policies or practices discriminate

24  against minority employees and applicants; (2) whether Abercrombie's use of the "A&F Look"

25  and image as an employment policy or practice discriminates against minority applicants and

26  employees; (3) whether Abercrombie's policies and practices violate Title VII; (4) whether

27  Abercrombie's policies or practices violate 42 U.S.C. § 1981; and (4) whether compensatory and

28  punitive damages, injunctive relief, and other equitable remedies for the class are warranted.

39.     The representative Plaintiffs' claims are typical of the claims of the class.

40.     The representative Plaintiffs will fairly and adequately represent and protect the interests of the members of the class.  Plaintiffs have retained counsel competent and experienced in complex class actions, employment discrimination litigation, and the intersection thereof.

41.     Class certification is appropriate pursuant to Fed. R. Civ. P. 23(b)(2) because Abercrombie has acted and/or refused to act on grounds generally applicable to the class, making appropriate declaratory and injunctive relief with respect to Plaintiffs and the class as a whole.  The class members are entitled to injunctive relief to end Abercrombie's common, uniform, and unfair racially discriminatory personnel policies and practices.

42.     Class certification is also appropriate pursuant to Fed. R. Civ. P. 23(b)(3) because common questions of fact and law predominate over any questions affecting only individual members of the class, and because a class action is superior to other available methods for the fair and efficient adjudication of this litigation.  The class members have been damaged and are entitled to recovery as a result of Abercrombie's common, uniform, and unfair racially discriminatory personnel policies and practices.  Abercrombie has computerized payroll and personnel data that will make calculation of damages for specific class members relatively simple.  The propriety and amount of punitive damages are issues common to the class.

## CLAIMS OF REPRESENTATIVE PLAINTIFFS

**Eduardo Gonzalez**

43.     Plaintiff Eduardo Gonzalez, a Latino male, is a student at Stanford University.  He applied for a position as a Brand Representative at the Abercrombie store in the Valley Fair Mall in Santa Clara, California on August 7, 2002.  An Abercrombie manager suggested that he apply to work in the stock room or on the overnight crew in a non-sales position.  Nevertheless, Mr. Gonzalez returned to the store for a group interview for the Brand Representative position on August 27, 2002.  Mr. Gonzalez was not hired as a Brand Representative.  Mr. Gonzalez was qualified for the job.  Indeed, immediately following his Abercrombie interview, he crossed the hall within the same mall to apply for a job at Banana

Republic, a similar retail clothing store that competes directly with Abercrombie for customers and employees.  An employee of Banana Republic asked Mr. Gonzalez if he was interested in applying to work as a manager.  He applied to work as a sales associate, and worked for Banana Republic in such a capacity through the academic year.  Despite knowing of his qualifications, Abercrombie refused to hire Mr. Gonzalez based on his race, color, and/or national origin.

44.     Abercrombie has discriminated against Mr. Gonzalez on the basis of his race, color and/or national origin by denying him employment because he is not white.

45.     On or about April 25, 2003, Mr. Gonzalez filed a charge of discrimination with the Equal Employment Opportunity Commission ("EEOC").  Mr. Gonzalez received a copy of his Notice of Right to Sue from the California Department of Fair Employment and Housing ("DFEH"), dated April 29, 2003.  Attached to this Complaint as Exhibit A and incorporated by reference are copies of that charge and that notice.  On or about December 30, 2003, the EEOC issued Mr. Gonzalez a notice of right to sue.  Attached to this Complaint as Exhibit P and incorporated by reference is a copy of that notice.

**Anthony Ocampo**

46.     Plaintiff Anthony Ocampo, a Filipino American male, is a student at Stanford University.  From December 1999 to January 2000, he worked part time as a Brand Representative at the Abercrombie store in the Glendale Galleria in Glendale, California near his family's home.

47.     It is common practice at Abercrombie for college students to work at the Abercrombie near their family home during vacations, and then to transfer to a store near their college during the school year (or vice versa).  Therefore, when Mr. Ocampo returned to Stanford, he attempted to apply for a position as Brand Representative at the Abercrombie store in the Hillsdale Shopping Center in San Mateo, California.  Mr. Ocampo was told that he would be contacted regarding a stock person position, but not for the position of Brand Representative.  Mr. Ocampo never was contacted for any position with Abercrombie, and when he contacted the manager there, he was told that he would have to reapply.

48.     Later that year, when he returned home for summer vacation in June of

2000, Mr. Ocampo applied to work once again at the Glendale Galleria Abercrombie.  He was told that there were "too many Filipinos" working at that location.  He was not even given the opportunity to submit a written application.  Mr. Ocampo was qualified for the job of Brand Representative, in part based on his prior experience doing that exact job at the Abercrombie store in the Glendale Galleria.  Abercrombie refused to hire Mr. Ocampo, despite knowing of his qualifications, based on his race, color, and/or national origin.

49.     Abercrombie has discriminated against Mr. Ocampo on the basis of his race, color and/or national origin (a) by denying him employment because he is not white; and (b) by refusing to transfer him from one store to another on the same terms as white Brand Representatives.

**Encarnacion Gutierrez**

50.     Plaintiff Encarnacion Gutierrez, a Latino male, graduated from the University of California at Los Angeles in 2002 with a B.S. in Civil Engineering and from the University of California at Berkeley in 2003 with an M.S. in Structural Engineering.  He applied to work as a Brand Representative at the Abercrombie store in the Third Street Promenade in Santa Monica, California in June or July 2001, and later returned for a group interview.  Mr. Gutierrez was qualified for the job.  Abercrombie refused to hire Mr. Gutierrez, despite knowing of his qualifications, based on his race, color, and/or national origin.

51.     During his initial visit to the store, Mr. Gutierrez observed that the staff was virtually exclusively white.  The manager who conducted the group interview was white.  He asked no questions regarding prior work experience or relevant skills.  During the interview, the manager asked a Filipino-American applicant whether he spoke English even though the applicant had already answered several questions and demonstrated his fluency in English.  Mr. Gutierrez saw the manager write "phil" next to the applicant's name.

52.     Abercrombie has discriminated against Mr. Gutierrez on the basis of his race, color, and/or national origin by denying him employment because he is not white.

53.     On or about May 21, 2002, Mr. Gutierrez filed a charge of discrimination with the EEOC.  Attached to this Complaint as Exhibit B, and incorporated by reference, is a

1   copy of that charge.  On or about December 30, 2003, the EEOC issued Mr. Gutierrez a notice of

2   right to sue.  Attached to this Complaint as Exhibit Q and incorporated by reference is a copy of

3   that notice.

4   **Johan Montoya**

5          54.     Plaintiff Johan Montoya, a Latino male, is a student at the University of

6   California at Santa Barbara.  He applied for a position as a Brand Representative at the

7   Abercrombie store in the Topanga Mall in Canoga Park, California in August or September 2002,

8   participated in a group interview for the job and submitted a paper application.  He was qualified

9   for the job, in part based on his prior work experience as a sales associate at another retail

10  establishment in the same mall.  Abercrombie refused to hire Mr. Montoya despite knowing of his

11  qualifications, based on his race, color, and/or national origin.

12         55.     Abercrombie has discriminated against Mr. Montoya on the basis of his

13  race, color, and/or national origin by denying him employment because he is not white.

14         56.     On or about April 22, 2003, Mr. Montoya filed a charge of discrimination

15  with the EEOC.  Mr. Montoya received a copy of his Notice of Right to Sue from the DFEH,

16  dated April 29, 2003.  Attached to this Complaint as Exhibit C and incorporated by reference, are

17  copies of that charge and that notice.  On or about December 30, 2003, the EEOC issued Mr.

18  Montoya a notice of right to sue.  Attached to this Complaint as Exhibit R and incorporated by

19  reference is a copy of that notice.

20  **Juancarlos Gómez-Montejano**

21         57.     Plaintiff Juancarlos Gómez-Montejano, a Latino male, worked as a Brand

22  Representative at the Abercrombie store at the Third Street Promenade in Santa Monica,

23  California from November 22, 1998 until August 1999, while he was a student at the University

24  of California at Los Angeles.  During that time, he regularly worked roughly 10-15 hours per

25  week.  After noticing that his work hours had been reduced, Mr. Gómez-Montejano requested his

26  personnel file.  In August 1999 he learned that Company records showed that, unbeknownst to

27  him, he had been fired from his position.  He had never been previously informed of this

28  termination, nor was he advised of any reasons for the termination.

58.     In or around February or March 1999, Abercrombie representatives from Ohio corporate headquarters visited the store on a "blitz," and observed that there were photographs of each of the Brand Representatives posted in an employee area in the back. A corporate official pointed to the pictures of four or five minority Brand Representatives, including Mr. Gómez-Montejano, and directed store management to "zero them out." This expression is used within the Company to signify that the manager assigning work shifts should begin assigning that person zero hours each week. In the following weeks, Mr. Gómez-Montejano continued to inform his manager that he was available to work many hours a week, just as he had throughout his tenure at Abercrombie; however, each week he received a schedule giving him zero hours. Eventually, he realized that this "zeroed out" schedule might be permanent. Therefore, he requested his personnel file in July 1999, and, after his second request, received a copy of a company document stating that he had been terminated.

59.     Abercrombie has discriminated against Mr. Gómez-Montejano on the basis of his race, color, and/or national origin by (a) terminating his employment because he is not white; and (b) refusing to give him desirable hours/assignments on the same terms as white Brand Representatives.

60.     On or about December 21, 1999, Mr. Gómez-Montejano filed a charge of discrimination with the EEOC. Attached to this Complaint as Exhibit D, and incorporated by reference, is a copy of that charge. After investigating, the EEOC issued a Letter of Determination, finding that Abercrombie had discriminated against Mr. Gómez-Montejano and against "Latinos and Blacks, as a class." Attached to this Complaint as Exhibit E, and incorporated by reference, is a copy of that letter. On or about December 21, 1999, the DFEH issued to Mr. Gómez-Montejano a Notice of Right to Sue. Attached to this Complaint as Exhibit F, and incorporated by reference, is a copy of that notice. On or about December 30, 2003, the EEOC issued Mr. Gómez-Montejano a notice of right to sue. Attached to this Complaint as Exhibit S and incorporated by reference is a copy of that notice.

**Jennifer Lu**

61.     Plaintiff Jennifer Lu is an Asian American female and a student at the

University of California at Irvine.  She worked as a Brand Representative at the Abercrombie store in the Crystal Court Mall in Costa Mesa, California from September 2000 to February 2003.  She was entrusted with responsibilities that only the most trustworthy and more senior staff were given.

62.     In or around January 2003, representatives from corporate and/or regional headquarters visited the Crystal Court Mall store on an inspection tour, or "blitz."  These headquarters/regional representatives reiterated to the Store Manager and other managers the importance of having a predominantly white Brand Representative workforce, with fewer minorities.  Specifically, corporate employees communicated this directive by pointing to a picture of a white male model hanging in the store, and making a statement to the effect of "This is the 'A&F Look' – you need to make your store look more like this."  Soon after this "blitz," on or about February 8, 2003, roughly five Asian American Brand Representatives, including Plaintiffs Jennifer Lu, Austin Chu, Ivy Nguyen, and Angeline Wu were terminated and/or constructively discharged, and one African American Brand Representative was transferred to a behind-the-scenes stockroom position at another Abercrombie store.  This action was not premised on any legitimate business consideration, such as a lessened need for Brand Representatives or poor work performance.  The store hired several white Brand Representatives within two weeks of firing Ms. Lu.

63.     On February 8, 2003, Ms. Lu learned that she had been fired.  She informed the Store Manager that she was willing to be flexible with shift assignments, and that if the staffing needs picked up in the summer months or other peak shopping seasons, she would like to be considered.  Mr. Richter told her that she was not needed at that time nor would she be needed in the future.

64.     Abercrombie has discriminated against Ms. Lu on the basis of her race, color, and/or national origin by (a) terminating her employment because she is not white; and (b) assigning her fewer hours than similarly-situated white Brand Representatives.

65.     On or about April 22, 2003, Ms. Lu filed a charge of discrimination with the EEOC.  Ms. Lu received a copy of her Notice of Right to Sue from the DFEH, dated April 29,

1    2003.  Attached to this Complaint as Exhibit G and incorporated by reference, are copies of that

2    charge and that notice.  On or about December 30, 2003, the EEOC issued Ms. Lu a notice of

3    right to sue.  Attached to this Complaint as Exhibit T and incorporated by reference is a copy of

4    that notice.

5    **Austin Chu**

6            66.    Plaintiff Austin Chu is an Asian American male and a student at the

7    University of California at Irvine.  He worked as a Brand Representative at the Abercrombie store

8    in the Crystal Court Mall in Costa Mesa, California from June 2001 to March 2003, when he was

9    constructively discharged.

10            67.    Immediately after the January corporate "blitz" visit described herein in the

11    preceding paragraphs, Mr. Chu's hours were reduced from the usual 10-15 hours per week he had

12    worked during his year and a half tenure to roughly zero hours per week.  This "zeroing out"

13    began on or about February 8, 2003 and lasted until approximately March 26, 2003, during which

14    six-week period Mr. Chu was assigned only one four-hour shift (in contrast to his usual 60-90

15    hours for such a six-week period), despite notifying his managers each week of his availability

16    and interest in working the usual 10-15 hours per week.  Mr. Chu attempted to gain more hours

17    by offering to fill in for those who were unavailable, and he was denied the opportunity to work

18    more hours.  Because he was not assigned any hours to work, Mr. Chu tendered his resignation on

19    March 26, 2003.  Mr. Chu was known as one of the most effective Brand Representatives in the

20    store due to his gregarious nature.

21            68.    Abercrombie has discriminated against Mr. Chu on the basis of his race,

22    color, and/or national origin by (a) constructively terminating his employment because he is not

23    white; and (b) assigning him fewer hours than similarly-situated white Brand Representatives.

24            69.    On or about April 22, 2003, Mr. Chu filed a charge of discrimination with

25    the EEOC.  Mr. Chu received a copy of his Notice of Right to Sue from the DFEH, dated

26    April 29, 2003.  Attached to this Complaint as Exhibit H and incorporated by reference, are

27    copies of that charge and that notice.  On or about December 30, 2003, the EEOC issued Mr. Chu

28    a notice of right to sue.  Attached to this Complaint as Exhibit U and incorporated by reference is

1    a copy of that notice.

2    **Ivy Nguyen**

3            70.    Plaintiff Ivy Nguyen is an Asian American female and a student at the

4    University of California at Irvine.  She worked as a Brand Representative in the Abercrombie

5    store in the Crystal Court Mall in Costa Mesa, California from approximately June 2002 until she

6    was fired sometime during February 2003, shortly after the corporate "blitz" described herein in

7    the preceding paragraphs.

8            71.    Abercrombie has discriminated against Ms. Nguyen on the basis of her

9    race, color, and/or national origin by (a) terminating her employment because she is not white;

10   and (b) assigning her fewer hours than similarly-situated white Brand Representatives.

11           72.    On or about June 16, 2003, Ms. Nguyen filed a charge of discrimination

12   with the EEOC.  Attached to this Complaint as Exhibit I and incorporated by reference, is a copy

13   of that charge.  On or about December 30, 2003, the EEOC issued Ms. Nguyen a notice of right to

14   sue.  Attached to this Complaint as Exhibit V and incorporated by reference is a copy of that

15   notice.

16   **Angeline Wu**

17           73.    Plaintiff Angeline Wu is an Asian American female and a student at the

18   University of California at Irvine.  She worked as a Brand Representative at the Abercrombie

19   store in the Crystal Court Mall in Costa Mesa, California from August 2002 to February 2003.

20           74.    Ms. Wu worked approximately 5-10 hours a week, at least 2-3 shifts per

21   week.  Shortly after the corporate "blitz" described herein in the preceding paragraphs, Ms. Wu's

22   hours were reduced and eventually "zeroed out."  Ms. Wu was then terminated in February 2003.

23           75.    Abercrombie has discriminated against Ms. Wu on the basis of her race,

24   color, and/or national origin by (a) terminating her employment because she is not white; and

25   (b) assigning her fewer hours than similarly-situated white Brand Representatives.

26           76.    On or about April 17, 2003, Ms. Wu filed a charge of discrimination with

27   the EEOC.  Ms. Wu received a copy of her Notice of Right to Sue from the DFEH, dated

28   April 22, 2003.  Attached to this Complaint as Exhibit J and incorporated by reference, are copies

1    of that charge and that notice.  On or about December 30, 2003, the EEOC issued Ms. Wu a

2    notice of right to sue.  Attached to this Complaint as Exhibit W and incorporated by reference is a

3    copy of that notice.

4    **Eric Fight**

5            77.    Plaintiff Eric Fight is an African American male residing in Venice,

6    California.  He worked as a Brand Representative in the stock room only (a non-sales position) at

7    the Abercrombie store in the Third Street Promenade in Santa Monica, California, from roughly

8    May 2003 to June 2003.  He was constructively discharged in or around June 2003 when he

9    learned that he was not allowed to work on the sales floor due to his race or color and that he had

10   been misled by the manager with whom he had interviewed into believing that there were no sales

11   floor Brand Representative positions available.

12           78.    In May 2003, Mr. Fight applied for a position as a Brand Representative at

13   the Abercrombie store in the Third Street Promenade in Santa Monica, California and participated

14   in a group interview for the job.  Mr. Fight informed the manager conducting the interview that he

15   would rather work as a floor Brand Representative because he had substantial experience in sales

16   and did not have any experience working in a stockroom.  The manager told Mr. Fight that he

17   would call him with a hiring decision within a week.  Mr. Fight was qualified for the floor Brand

18   Representative job because of his prior work experience as a sales representative for comparable

19   retail clothing stores, including the Gap, Urban Outfitters, and Miller's Outpost.  Abercrombie

20   refused to hire Mr. Fight as a Brand Representative despite knowing of his qualifications for the

21   position, based on his race or color.

22           79.    A week later, not having heard from the store, Mr. Fight called the store to

23   inquire about the status of his application.  The same manager told Mr. Fight that the store was

24   not hiring floor Brand Representatives.  Roughly ten days later, the store's stock manager called

25   Mr. Fight and offered him a position in the stock room (a non-sales position).  Mr. Fight accepted

26   the position and began working at the store in June 2003, expecting that the store would soon be

27   hiring floor Brand Representatives again and that he could reapply for such a position then.  Upon

28   beginning work at the Third Street Promenade store, Mr. Fight observed that the floor Brand

Representative staff was virtually exclusively white.

80.     In June 2003, on Mr. Fight's second day of work at Abercrombie, he met a white floor Brand Representative who had just begun working at the store.  Mr. Fight learned that this new Brand Representative had recently been hired, and thus that the manager with whom he had interviewed had deceived him about the availability of floor Brand Representative positions.  Mr. Fight concluded that the manager and the store would not consider him for floor Brand Representative positions at that time or in the future due to his race or color.  Mr. Fight thus realized that he had been constructively discharged.

81.     Approximately a week after his discharge, Mr. Fight was hired as a sales associate for the Levi's Store at the Third Street Promenade, a similar retail clothing store that competes with Abercrombie for customers and employees.

82.     Abercrombie has discriminated against Mr. Fight on the basis of his race, color, and/or national origin by denying him employment as a Brand Representative and channeling him to a stock room position because he is not white.

83.     On or about August 18, 2003, Mr. Fight filed a charge of discrimination with the EEOC.  Attached to this Complaint as Exhibit K, and incorporated by reference, is a copy of that charge.  On or about December 30, 2003, the EEOC issued Mr. Fight a notice of right to sue.  Attached to this Complaint as Exhibit X and incorporated by reference is a copy of that notice.

**Carla Grubb**

84.     Plaintiff Carla Grubb is an African American female and a student at California State University at Bakersfield.  She worked as a Brand Representative at the Abercrombie store in the Bakersfield Valley Plaza Mall in Bakersfield, California from November 2002 to January 2003, when she was constructively discharged.

85.     From November 2002 to December 2002, Ms. Grubb worked as Brand Representative.  Each week she requested daytime shifts.  However, she was usually assigned to work night shifts, often starting approximately one hour before closing and continuing into the late night.  When Ms. Grubb began working for Abercrombie, she observed that she was the only

African American employee at the store; besides one Latino male Brand Representative, all the other employees were white.  She also noticed that white Brand Representatives were receiving daytime hours and floor time.  Although she was officially a floor Brand Representative, Ms. Grubb spent the vast majority of her work time dusting and cleaning windows.

86.     In approximately late December 2002, Ms. Grubb notified a manager that she would not be available for shifts for the next few weeks, a practice that she had observed to be unremarkable among Brand Representatives in the store.  The manager granted her request and stated that it would be "no problem."  Upon returning to work roughly two weeks later, in January 2003, Ms. Grubb's hours had been reduced from the normal 15-20 hours per week to almost nothing.  She was assigned one 4-hour shift during the month of January.  From the seven-month period from the end of January to the present (August 2003), Ms. Grubb has been assigned no shifts, despite notifying her managers each week of her interest in working up to 30 hours a week, and indicating availability from roughly 8 am to 10 pm each day as well as requesting opportunities to sign up for overnight shifts.  Ms. Grubb has since learned that there was a corporate "blitz" of the store in early January 2003, which the store managers knew about in advance.  The blitz involved a visit by Abercrombie corporate representatives, who took pictures of the Brand Representatives to gauge the store's compliance with the "A&F Look."

87.     In or around May 2003, Ms. Grubb asked her managers for an explanation as to why she was not being assigned shifts.  She was informed that she could not return to work because the store was full of employees, although the store still considered her an Abercrombie employee.  At the time Ms. Grubb was aware of at least two white Brand Representatives at the store who were assigned shifts of up to 40 hours a week, while Ms. Grubb, despite her continued requests, was assigned no hours.

88.     Abercrombie has discriminated against Ms. Grubb on the basis of her race, color, and/or national origin by (a) constructively terminating her employment because she is not white and (b) assigning her fewer hours than similarly-situated white Brand Representatives.

89.     On or about August 18, 2003, Ms. Grubb filed a charge of discrimination with the EEOC.  Attached to this Complaint as Exhibit L, and incorporated by reference, is a

1  copy of that charge.  On or about December 30, 2003, the EEOC issued Ms. Grubb a notice of

2  right to sue.  Attached to this Complaint as Exhibit Y and incorporated by reference is a copy of

3  that notice.

4  **David Culpepper**

5  90.   Plaintiff David Culpepper is a minority resident of Berkeley, California and

6  a graduate student at the University of California at Berkeley.  He was denied positions as a

7  Brand Representative at the Abercrombie store in the SF Shopping Center in San Francisco,

8  California in June 2003, and at the SF Stonestown Galleria in San Francisco, California in March

9  2003 on account of his race or color.

10  91.   Mr. Culpepper applied to work as a Brand Representative at the SF

11  Shopping Center store in late May 2002, September 2002, and early June 2003 by handing a

12  written application to an Abercrombie sales associate or manager each time.  On the first visit, the

13  Abercrombie employee stated that she would pass the application to the manager.  On the second

14  and third visits, the managers there told him that the store was not hiring and that there were no

15  positions available.  Mr. Culpepper also applied to work at the SF Stonestown Galleria store in

16  June 2002, late November or early December 2002, and March 2003 by handing a written

17  application to an Abercrombie sales associate or manager each time.  On the first and third visits,

18  the Abercrombie employees there told him that the store was not hiring and that there were no

19  positions available.  On the second visit, the Abercrombie employee stated that the store would

20  contact him if they were interested.  During none of these six application attempts did any

21  Abercrombie employee inform him of the existence of a group interview or ask about his

22  qualifications.  Because Mr. Culpepper visited both locations frequently, he noticed many new

23  white Brand Representatives working at both stores, several of whom informed him that they had

24  been hired in recent weeks (during times immediately before and after each of his application

25  attempts).  Mr. Culpepper was not hired nor was he ever contacted by Abercrombie.

26  92.   By the time of his first application to work at Abercrombie, in May 2002,

27  Mr. Culpepper had substantial experience as a sales associate for comparable stores including

28  Banana Republic, Aeropostale, and Instant (a boutique clothing store in New York City).  He was

1   then a recent graduate of the University of California at Berkeley.

2              93.    In June 2002, within a few weeks of Mr. Culpepper's first application to

3   the SF Shopping Center, four white male friends of his with no retail experience applied to that

4   store and were all hired on the spot and scheduled for their first shifts.

5              94.    Abercrombie has discriminated against Mr. Culpepper on the basis of his

6   race, color, and/or national origin by denying him employment because he is not white.

7              95.    On or about August 18, 2003, Mr. Culpepper filed a charge of

8   discrimination with the EEOC.  Attached to this Complaint as Exhibit M, and incorporated by

9   reference, is a copy of that charge.  On or about December 30, 2003, the EEOC issued Mr.

10  Culpepper a notice of right to sue.  Attached to this Complaint as Exhibit Z and incorporated by

11  reference is a copy of that notice.

12  **Patrice Douglass**

13             96.    Plaintiff Patrice Douglass, an African American female, is a student at the

14  University of California, Santa Cruz.  She applied for a position as a Brand Representative at the

15  Abercrombie store in the Bay Street shopping area in Emeryville, California in or about May

16  2003.  She submitted a written application to a manager on duty and informed him of her

17  qualifications, including her prior retail experience.  She was qualified for the job, in part based

18  on that retail experience.  Abercrombie refused to hire Ms. Douglass despite knowing of her

19  qualifications, based on her race, color, and/or national origin.

20             97.    The manager informed Ms. Douglass that May was "early" to apply for

21  summer employment.  He also questioned Ms. Douglass why she had included two phone

22  numbers, when the "usual" applicant only listed one.

23             98.    One week later, Ms. Douglass's friend, who is white, requested an

24  application for summer employment as a Brand Representative at the same Abercrombie store.

25  An Abercrombie employee invited the friend to attend one of the group interviews that the store

26  held every Wednesday.  The friend did so and was hired.

27             99.    Abercrombie has discriminated against Ms. Douglass on the basis of her

28  race, color, and/or national origin by denying her employment because she is not white.

100.    On or about December 23, 2003, Ms. Douglass filed a charge of discrimination with the EEOC.  Ms. Douglass received a copy of her Notice of Right to Sue from the DFEH, dated December 23, 2003.  Attached to this Complaint as Exhibit N, and incorporated by reference, are copies of that charge and that notice.  On or about December 30, 2003, the EEOC issued Ms. Douglass a notice of right to sue.  Attached to this Complaint as Exhibit AA and incorporated by reference is a copy of that notice.

**Robair Sherrod**

101.    Plaintiff Robair Sherrod, an African American male, is a student at California State University at Dominguez Hills.  He applied for a position as a Brand Representative at the Abercrombie store in the South Bay Galleria in Redondo Beach, California in or around December 2002.  He submitted a written application and participated in two group interviews.  He was qualified for the job, in part based on his prior retail experience.  Abercrombie refused to hire Mr. Sherrod despite knowing of his qualifications, based on his race, color, and/or national origin.

102.    In or around January 2003, shortly after he had submitted his application, Mr. Sherrod was invited to a group interview.  The manager who conducted the interview informed Mr. Sherrod that the Company would contact him within a week regarding his application.  Approximately one month later, a store employee called Mr. Sherrod to invite him to a second group interview.  Again, the manager who conducted the interview informed Mr. Sherrod that he would be called within a week regarding his application.  No store employee has since contacted Mr. Sherrod regarding his application.

103.    Abercrombie has discriminated against Mr. Sherrod on the basis of his race, color, and/or national origin by denying him employment because he is not white.

104.    On or about December 1, 2003, Mr. Sherrod filed a charge of discrimination with the EEOC.  Mr. Sherrod received a copy of her Notice of Right to Sue from the DFEH, dated December 30, 2003.  Attached to this Complaint as Exhibit O, and incorporated by reference, are copies of that charge and that notice.  On or about December 30, 2003, the EEOC issued Mr. Sherrod a notice of right to sue.  Attached to this Complaint as Exhibit BB and

incorporated by reference is a copy of that notice.

## GENERAL POLICIES OR PRACTICES OF DISCRIMINATION

105.     The denials and abridgments of employment opportunities suffered by the Representative Plaintiffs are part of a general policy or practice of discrimination on the basis of race, color, and/or national origin in employment that has existed at Abercrombie throughout the relevant time period.  These are not isolated examples of employment practices or individual decisions.  On the contrary, these incidents are representative of A&F's systematic discrimination against minorities and in favor of white applicants and employees, to create an overwhelmingly white Brand Representative workforce.

106.     On September 13, 2001, the EEOC issued a Letter of Determination with respect to the EEOC charge filed by Plaintiff Juancarlos Gómez-Montejano, stating,

> The preponderance of the evidence supports Charging Party's claim that he was denied a permanent position as a Brand Representative, denied an assignment and terminated because of his national origin. Moreover, evidence obtained during the course of the investigation revealed that *Latinos and Blacks, as a class, were denied permanent positions, denied assignments and treated in an unfair manner with regard to recruitment based on their race and national origin*, and that Respondent failed to maintain employment records as required by Title VII.  Therefore, I have concluded that the evidence is sufficient to establish a violation of the above-cited statute.

Attached hereto as Exhibit E (emphasis added).

107.     The EEOC sent this letter to Mr. Gómez-Montejano and to Abercrombie.

108.     The under-representation of minorities in Brand Representative positions throughout Abercrombie's approximately 602 stores in the United States results from an intentional policy and practice of discrimination on the basis of race, color, and/or national origin in hiring, initial job assignment, weekly hours allocation, internal job transfer, inter-store transfer, and termination.

109.     Abercrombie has pursued policies or practices on a continuing basis that have denied or restricted job opportunities to qualified minority applicants and employees.

110.     Such discriminatory policies or practices include, without limitation:

1        a.     reliance on subjective, arbitrary, standardless, and unvalidated

2 criteria in making hiring decisions, focusing on whether applicants properly reflect the

3 predominantly white "A&F Look" and image rather than whether they would be responsible,

4 effective Brand Representatives who could perform their jobs well;

5        b.     reliance on subjective, arbitrary, standardless, and unvalidated

6 criteria in making decisions in job assignments, weekly hour allocations, and ability to transfer

7 between stores focusing on whether employees properly reflect the predominantly white "A&F

8 Look" and image rather than whether they would be responsible, effective Brand Representatives

9 who perform their jobs well;

10        c.     shunting minority applicants and Brand Representatives to stock

11 room and overnight shift positions where they are out of the public eye;

12        d.     targeting white candidates for recruitment, both systemically (_e.g._,

13 recruiting visits to college campuses and/or targeting of specific sororities and fraternities) and

14 individually (_e.g._, inviting individual customers in the store to apply to become Brand

15 Representatives), but avoiding, ignoring, discouraging or dissuading equally qualified minorities

16 from applying;

17        e.     use of the "Look Book," the A&F Quarterly, and wall posters as

18 guidelines for management to select Brand Representatives on the basis of their appearance – _e.g._,

19 white – as opposed to their qualifications for the job;

20        f.     use of corporate "blitzes" to monitor and enforce stores'

21 compliance with the "A&F Look" and to weed out minority Brand Representatives; and

22        g.     termination of employees based on race, color, and/or national origin

23 without regard to their performance on the job.

24

**FIRST CLAIM FOR RELIEF**
**(42 U.S.C. § 2000e _et seq._)**

25

26       111.    Plaintiffs incorporate paragraphs 1 through 110 as alleged above.

27       112.    This Claim is brought on behalf of all representative plaintiffs, except Mr.

28 Ocampo, on behalf of themselves and the Class they represent.

113.     Abercrombie has maintained a system that is intentionally discriminatory, subjective, standardless, and arbitrary with respect to recruitment, hiring, job assignment, transfer, weekly hour allocation, and termination.  The system has an adverse disparate impact on minority applicants and employees.  This system is not and cannot be justified by business necessity, but even if it could be so justified, less discriminatory alternatives exist that could equally serve any alleged necessity.

114.     Abercrombie's discriminatory policies or practices described above have denied minority applicants and employees employment, job assignments, job transfers, and weekly hour allocations, resulting in the loss of past and future wages and other job benefits.

115.     As noted above, the EEOC has determined that "the evidence is sufficient to establish" that Abercrombie has violated Title VII, because "Latinos and Blacks, as a class, were denied permanent positions, denied assignments and treated in an unfair manner with regard to recruitment based on their race and national origin."  Exhibit E.

116.     The The foregoing conduct constitutes illegal, intentional discrimination as unjustified disparate impact prohibited by 42 U.S.C. § 2000e *et seq.*

117.     Plaintiffs request relief as hereinafter provided.

**SECOND CLAIM FOR RELIEF**
**(42 U.S.C. § 1981)**

118.     Plaintiffs incorporate paragraphs 1 through 110 as alleged above.

119.     This claim is brought on behalf of all Plaintiffs and the Class they represent.

120.     Abercrombie has maintained an intentionally discriminatory system with respect to recruitment, hiring, job assignments, transfers, weekly hour allocations, and termination.

121.     The foregoing conduct constitutes illegal intentional discrimination with respect to the making, performance, modification, and termination of contracts prohibited by 42 U.S.C. § 1981.

122.     Plaintiffs request relief as hereinafter provided.

**THIRD CLAIM FOR RELIEF**
**(California Fair Employment and Housing Act, Government Code § 12940, et seq.)**

123.    Plaintiffs incorporate paragraphs 1 through 110 as alleged above.

124.    This claim is brought on behalf of Eduardo Gonzalez, Encarnacion Gutierrez, Johan Montoya, Juancarlos Gómez-Montejano, Jennifer Lu, Austin Chu, Ivy Nguyen, Angeline Wu, Eric Fight, Carla Grubb, David Culpepper, Patrice Douglass, and Robair Sherrod and the subclass of California class members they represent.

125.    Plaintiffs Eduardo Gonzalez, Johan Montoya, Juancarlos Gómez-Montejano, Jennifer Lu, Austin Chu, and Angeline Wu have received copies of their Right to Sue letters from the DFEH.  The pendency of the EEOC investigations into Plaintiffs' charges tolled the time limits for filing civil actions pursuant to the Fair Employment and Housing Act. Plaintiffs have therefore timely complied with all prerequisites to suit.

126.    Plaintiffs request relief as hereinafter provided.

**ALLEGATIONS REGARDING RELIEF**

127.    Plaintiffs, and the class they seek to represent, have no plain, adequate, or complete remedy at law to redress the wrongs alleged herein, and the injunctive relief sought in this action is the only means of securing complete and adequate relief.  Plaintiffs, and the class they seek to represent, are now suffering and will continue to suffer irreparable injury from defendant's discriminatory acts and omissions.

128.    Abercrombie's actions have caused and continue to cause plaintiffs and all class members substantial losses in earnings, work experience, weekly hour allocations, and other employment benefits.

129.    In addition, representative plaintiffs and the class suffer and continue to suffer humiliation, embarrassment, and anguish, all to their damage in an amount according to proof.

130.    Abercrombie performed the acts herein alleged with malice or reckless indifference.  Plaintiffs and class members are thus entitled to recover punitive damages in an amount according to proof.

**PRAYER FOR RELIEF**

WHEREFORE, plaintiffs and the class pray for relief as follows:

131.   Certification of the case as a class action on behalf of the proposed class;

132.   Designation of Representative Plaintiffs Eduardo Gonzalez, Anthony Ocampo, Encarnacion Gutierrez, Johan Montoya, Juancarlos Gómez-Montejano, Jennifer Lu, Austin Chu, Ivy Nguyen, Angeline Wu, Eric Fight, Carla Grubb, David Culpepper, Patrice Douglass, and Robair Sherrod as representatives of the class;

133.   Designation of Representative Plaintiffs' counsel of record as class counsel;

134.   A declaratory judgment that the practices complained of herein are unlawful and violate 42 U.S.C. § 1981;

135.   A preliminary and permanent injunction against Abercrombie and its officers, agents, successors, employees, representatives, and any and all persons acting in concert with them, from engaging in each of the unlawful policies, practices, customs, and usages set forth herein;

136.   An order that Abercrombie institute and carry out policies, practices, and programs that provide equal employment opportunities for all minorities, and that it eradicate the effects of its past and present unlawful employment practices;

137.   An order restoring plaintiffs and class members to their rightful positions at Abercrombie, or in lieu of reinstatements, an order for front pay benefits;

138.   Back pay (including interest and benefits) for individual plaintiffs and class members;

139.   All damages sustained as a result of Abercrombie's conduct, including damages for emotional distress, humiliation, embarrassment, and anguish, according to proof;

140.   Exemplary and punitive damages in an amount commensurate with Abercrombie's ability to pay and to deter future conduct;

141.   Costs incurred herein, including reasonable attorneys' fees to the extent allowable by law;

142.   Pre-judgment and post-judgment interest, as provided by law; and

143.   Such other and further legal and equitable relief as this Court deems necessary, just, and proper.

Dated: January 6, 2004

Respectfully submitted,

| | |
|---|---|
| Julie Su<br>Minah Park<br>ASIAN PACIFIC AMERICAN LEGAL<br>    CENTER<br>1145 Wilshire Boulevard, 2nd Floor<br>Los Angeles, CA  90017<br>Telephone:  (213) 977-7500<br>Facsimile:  (213) 977-7595 | Thomas A. Saenz<br>Shaheena Ahmad Simons<br>MEXICAN AMERICAN LEGAL DEFENSE<br>    AND EDUCATIONAL FUND<br>634 South Spring Street<br>Los Angeles, CA  90014<br>Telephone:  (213) 629-2512<br>Facsimile:  (213) 629-0266 |
| Kimberly West-Faulcon<br>NAACP LEGAL DEFENSE AND<br>    EDUCATIONAL FUND, INC.<br>1055 Wilshire Blvd., Suite 1480<br>Los Angeles, CA 90017<br>Telephone: (213) 975-0211<br>Facsimile:   (213) 202-5773 | Bill Lann Lee<br>Kelly M. Dermody<br>Eve H. Cervantez<br>Jahan C. Sagafi<br>LIEFF, CABRASER, HEIMANN<br>    & BERNSTEIN, LLP<br>275 Battery Street, 30th Floor<br>San Francisco, CA  94111-3339<br>Telephone:  (415) 956-1000<br>Facsimile:  (415) 956-1008 |
| Sidney L. Gold<br>Traci M. Greenberg<br>SIDNEY L. GOLD & ASSOCIATES, P.C.<br>1835 Market Street, Suite 515<br>Philadelphia, PA 19103<br>Telephone:  (215) 569-1999 | Bryan L. Clobes<br>Melody Forrester<br>Jeffrey D. Lerner<br>MILLER FAUCHER AND CAFFERTY<br>One Logan Square, Suite 1700<br>Philadelphia, PA 19103<br>Telephone:  (215) 864-2800 |
| Joseph C. Kohn<br>Martin J. D'Urso<br>Diana Liberto<br>Hilary Cohen<br>KOHN, SWIFT & GRAF, P.C.<br>One South Broad Street, Suite 2100<br>Philadelphia, PA 19107<br>Telephone:  (215) 238-1700 | Cleo Fields<br>RAINBOW/PUSH COALITION<br>930 East 50th Street<br>Chicago, IL 60615<br>Telephone:  (773) 373-3366 |

By:  ___*/s/ Bill Lann Lee*_____
           Bill Lann Lee

*Attorneys for Plaintiffs Eduardo Gonzalez,
Anthony Ocampo, Encarnacion Gutierrez,
Johan Montoya, Juancarlos Gómez-Montejano,
Jennifer Lu, Austin Chu, Ivy Nguyen,  Angeline
Wu, Eric Fight, Carla Grubb, David
Culpepper, Patrice Douglass, and Robair
Sherrod*

1

## **DEMAND FOR JURY TRIAL**

2

Plaintiffs hereby demand a trial by jury as to all issues so triable.

3

Dated: January 6, 2004

4

Respectfully submitted,

5

Julie Su                                          Thomas A. Saenz
Minah Park                                    Shaheena Ahmad Simons

6

ASIAN PACIFIC AMERICAN LEGAL      MEXICAN AMERICAN LEGAL DEFENSE
   CENTER                                     AND EDUCATIONAL FUND

7

Kimberly West-Faulcon                   Bill Lann Lee

8

NAACP LEGAL DEFENSE AND          Kelly M. Dermody
   EDUCATIONAL FUND, INC.          Eve H. Cervantez

9

Jahan C. Sagafi
LIEFF, CABRASER, HEIMANN

10

   & BERNSTEIN, LLP

11

Sidney L. Gold                                Bryan L. Clobes
Traci M. Greenberg                         Melody Forrester

12

SIDNEY L. GOLD & ASSOCIATES, P.C.   Jeffrey D. Lerner
MILLER FAUCHER AND CAFFERTY

13

14

Joseph C. Kohn                             Cleo Fields
Martin J. D'Urso                            RAINBOW/PUSH COALITION

Diana Liberto

15

Hilary Cohen
KOHN, SWIFT & GRAF, P.C.

16

17

By:       */s/ Bill Lann Lee*
              Bill Lann Lee

18

*Attorneys for Plaintiffs Eduardo Gonzalez,*

19

*Anthony Ocampo, Encarnacion Gutierrez,*
*Johan Montoya, Juancarlos Gómez-*

20

*Montejano, Jennifer Lu, Austin Chu, Ivy*
*Nguyen, Angeline Wu, Eric Fight, Carla*

21

*Grubb, David Culpepper, Patrice Douglass,*
*and Robair Sherrod*

22

23

24

25

26

27

28