1   Thomas A. Saenz (SBN 159430)
    Shaheena Ahmad Simons (SBN 225520)
2   MEXICAN AMERICAN LEGAL DEFENSE
    AND EDUCATIONAL FUND
3   634 South Spring Street
    Los Angeles, CA  90014
4   Telephone:  (213) 629-2512
    Facsimile:  (213) 629-0266
5
    Bill Lann Lee (SBN 108452)
6   Kelly M. Dermody (SBN 171716)
    Eve H. Cervantez (SBN 164709)
7   Elizabeth A. Alexander (pro hac vice)
    Jahan C. Sagafi (SBN 224887)
8   LIEFF, CABRASER, HEIMANN &              Joseph C. Kohn
    BERNSTEIN, LLP                          Martin J. D'Urso
9   275 Battery Street, 30th Floor          Diana Liberto
    San Francisco, CA  94111-3339           Hilary Cohen
10  Telephone:  (415) 956-1000              KOHN, SWIFT & GRAF, P.C.
    Facsimile:  (415) 956-1008              One South Broad Street, Suite 2100
11                                          Philadelphia, PA 19107
                                            Telephone:  (215) 238-1700
12                                          Facsimile:  (215) 238-1968

13  *Attorneys for Plaintiffs*

14  [Additional counsel listed on signature page]

15                  UNITED STATES DISTRICT COURT
                    NORTHERN DISTRICT OF CALIFORNIA
16                  SAN FRANCISCO / OAKLAND DIVISION

17  EDUARDO GONZALEZ, ANTHONY              Case No.  03-2817 SI
    OCAMPO, ENCARNACION
18  GUTIERREZ, JOHAN MONTOYA,
    JUANCARLOS GÓMEZ-MONTEJANO,            **THIRD AMENDED CLASS ACTION
19  JENNIFER LU, AUSTIN CHU, IVY           COMPLAINT FOR INJUNCTIVE AND
    NGUYEN, ANGELINE WU, ERIC              DECLARATORY RELIEF AND
20  FIGHT, CARLA GRUBB, DAVID              DAMAGES, FOR VIOLATIONS OF TITLE
    CULPEPPER, PATRICE DOUGLASS,           VII OF THE CIVIL RIGHTS ACT OF 1964,
21  and ROBAIR SHERROD, on behalf of       42 U.S.C. § 2000e; 42 U.S.C. § 1981; AND
    themselves and all others similarly situated,   CALIFORNIA FAIR EMPLOYMENT AND
22                                          HOUSING ACT**
                    Plaintiffs,
23                                          **DEMAND FOR JURY TRIAL**
            v.
24
    ABERCROMBIE & FITCH STORES,
25  INC., A&F CALIFORNIA, LLC, and A&F
    OHIO, INC.
26
                    Defendants.
27

28

1       Individual and Representative Plaintiffs Eduardo Gonzalez, Anthony Ocampo,

2  Encarnacion Gutierrez, Johan Montoya, Juancarlos Gómez-Montejano, Jennifer Lu, Austin Chu,

3  Ivy Nguyen, Angeline Wu, Eric Fight, Carla Grubb, and David Culpepper, Patrice Douglass, and

4  Robair Sherrod (collectively "Plaintiffs") on behalf of themselves and all others similarly

5  situated, allege, upon personal knowledge as to themselves and information and belief as to other

6  matters, as follows:

7                       **INTRODUCTORY STATEMENT**

8       1.     Defendants Abercrombie & Fitch Stores, Inc., A&F California, LLC, and

9  A&F Ohio, Inc. (hereinafter collectively identified as "Abercrombie," "A&F," or "the

10  Company") are a national retail clothing seller that discriminates against minority individuals,

11  including Latinos, Asian Americans, and African Americans (hereinafter, collectively,

12  "minorities") on the basis of race, color, and/or national origin, with respect to hiring, firing, job

13  assignment, compensation and other terms and conditions of employment by enforcing a

14  nationwide corporate policy of preferring white employees for sales positions, desirable job

15  assignments, and favorable work schedules in its stores throughout the United States.

16       2.     Abercrombie recruits, hires, and maintains a disproportionately white sales

17  force (called Brand Representatives) who act as salespeople and recruiters of other potential

18  Brand Representatives.

19       3.     Abercrombie systematically refuses to hire qualified minority applicants as

20  Brand Representatives to work on the sales floor and discourages applications from minority

21  applicants.  To the extent that it hires minorities, it channels them to stock room and overnight

22  shift positions and away from visible sales positions, keeping them out of the public eye.  In

23  addition, Abercrombie systematically fires qualified minority Brand Representatives in

24  furtherance of its discriminatory policies or practices.

25       4.     Abercrombie implements its discriminatory employment policies and

26  practices in part through a detailed and rigorous "Appearance Policy," which requires that all

27  Brand Representatives must exhibit the "A&F Look."  The "A&F Look" is a virtually all-white

28

1   image that Abercrombie uses not only to market its clothing, but also to implement its

2   discriminatory employment policies or practices.

3        5.   When people who do not fit the "A&F Look" inquire about employment,

4   managers sometimes tell them that the store is not hiring, or may provide them with applications

5   even though they have no intention of considering them for employment.  If applicants who do

6   not fit the "A&F Look" submit applications, managers and/or Brand Representatives acting at

7   their direction sometimes throw them away without reviewing them.

8        6.   Abercrombie publishes and distributes to its employees a "Look Book" that

9   explains the importance of the Appearance Policy and the "A&F Look," and that closely regulates

10   the Brand Representatives' appearance.  The Company requires its managers to hire and continue

11   to employ only Brand Representatives who fit within the narrow confines of the "Look Book,"

12   resulting in a disproportionately white Brand Representative workforce.

13        7.   Abercrombie also uses visual media to reinforce to managers responsible

14   for recruitment, hiring, assignment, compensation, termination, and other terms and conditions of

15   employment of Brand Representatives the importance of adhering to the virtually all-white A&F

16   image in employment decisions.  Each store prominently posts large photographs of models –

17   virtually all of whom are white.  In addition, the Company publishes and sells A&F Quarterly, a

18   magazine/catalog featuring almost exclusively white models.  Some stores also display A&F TV,

19   a television program played on a loop featuring Brand Representatives who fit the "A&F Look."

20   Again, almost every Brand Representative shown is white.  Abercrombie corporate

21   representatives and managers use these displays and publications to portray and promote the

22   "A&F Look" to employees, customers, applicants, and potential applicants, to discourage and

23   deter minority applicants, and to justify terminating minority employees.

24        8.   The Company rigorously maintains the "A&F Look" by careful scrutiny

25   and monitoring of its stores by regional and district managers and corporate representatives.

26   These managers and corporate representatives visit stores frequently to ensure, among other

27   things, that the store is properly implementing the Company's discriminatory employment

28   policies and practices.  These visits are referred to as "blitzes."  When managers or corporate

1  representatives discover that minority Brand Representatives have been hired, they have directed

2  that these Brand Representatives be fired, moved to the stock room or overnight shift, or have

3  their hours "zeroed out," which is the equivalent of termination.

4         9.    The Company also scrutinizes and enforces compliance with the "A&F

5  Look" by requiring all stores to submit a picture of roughly 10 of their Brand Representatives

6  who fit the "Look" to headquarters each quarter.  The corporate officials then select roughly 15

7  stores' pictures as exemplary models that perpetuate the Company's discriminatory employment

8  policies and practices.  They then disseminate these pictures to the over 600 A&F stores.  The

9  Brand Representatives in the pictures are almost invariably white.  This practice and policy, like

10  the others described above, constitutes an official directive to give preference to white Brand

11  Representatives and applicants, and to discriminate against minority Brand Representatives and

12  applicants.

13        10.    The A&F image is not limited to appearance; the Company accomplishes

14  its discriminatory employment policies or practices by defining its desired "classic" and "cool"

15  workforce as exclusively white.  It seeks to hire Brand Representatives who convey a certain

16  image.  This A&F image is decidedly non-minority.  In order to perpetuate the A&F image,

17  Abercrombie identifies specific colleges from which each store should recruit its employees, even

18  though the Brand Representative position does not require any of the skills or abilities acquired in

19  college, much less in any specific college.  Abercrombie also encourages the recruitment and

20  hiring of members of specified overwhelmingly white fraternities and sororities, and of students

21  who participate in certain overwhelmingly white intercollegiate sports.  However, the Company

22  does not encourage recruitment from fraternities, sororities, or sports teams with significant

23  minority populations.  To further reinforce to store managers the importance of hiring white

24  students who fit the Abercrombie image, the Company requires weekly reports on the number of

25  Brand Representatives who attend targeted colleges and who fit the emphasis on

26  fraternity/sorority membership and athletic team involvement.

27        11.    This class action is accordingly brought by minority Brand Representatives

28  and applicants for Brand Representative positions on behalf of themselves individually and all

1  minority applicants and employees against whom Abercrombie has discriminated on the basis of

2  race, color, and/or national origin.  Abercrombie has maintained and continues to maintain a

3  pervasive policy or practice of discrimination based on race, color, and/or national origin in

4  denying employment, desirable job assignments, job transfers, allocation of weekly hours,

5  compensation, and other terms and conditions of employment to minorities in Abercrombie stores

6  throughout the United States.

7      12.    This action seeks an end to these discriminatory policies or practices, an

8  award of backpay and front pay, as well as compensatory damages, punitive damages, and

9  injunctive relief, including rightful place relief for all class members.

10  **JURISDICTION, VENUE, AND INTRADISTRICT ASSIGNMENT**

11      13.    This Court has jurisdiction over this action pursuant to 28 U.S.C. §§ 1331

12  and 1343.

13      14.    Venue is proper in this District pursuant to 28 U.S.C. § 1391(b).  Members

14  of the Plaintiff class reside in California and throughout the United States.  Defendant

15  Abercrombie is a Delaware corporation licensed to do business in California.  It has retail stores

16  throughout California and this District.  Many of the acts complained of occurred in this State and

17  this District and gave rise to the claims alleged.

18      15.    Intradistrict assignment is proper in the San Francisco/Oakland Division

19  because (1) some of the events and omissions that give rise to the claims of Plaintiff Anthony

20  Ocampo occurred in San Mateo County, (2) some of the events and omissions that give rise to the

21  claims of Plaintiff David Culpepper occurred in San Francisco County, and (3) some of the events

22  and omissions that give rise to the claims of Plaintiff Patrice Douglass occurred in Alameda

23  County.

24  **PARTIES**

25      16.    Plaintiff Eduardo Gonzalez is a minority resident of Palo Alto, California,

26  where he is a student at Stanford University.  He was denied a position as a Brand Representative

27  at the Abercrombie store in the Valley Fair Mall in Santa Clara, California in August 2002, on

28  account of his race, color, and/or national origin.

17.     Plaintiff Anthony Ocampo is a minority resident of Palo Alto, California, where he is a student at Stanford University.  He was denied a position as a Brand Representative at the Abercrombie store in the Hillsdale Shopping Center in San Mateo, California, in or around January 2000 on account of his race, color, and/or national origin.  He was also denied a position as a Brand Representative at the Abercrombie Store in the Glendale Galleria in Glendale, California in June 2000 on account of his race, color, and/or national origin.

18.     Plaintiff Encarnacion Gutierrez is a minority resident of South San Francisco, California.  He was denied a position as a Brand Representative at the Abercrombie store in the Third Street Promenade in Santa Monica, California in June or July 2001, on account of his race, color, and/or national origin.

19.     Plaintiff Johan Montoya is a minority resident of Goleta, California, where he is a student at the University of California at Santa Barbara.  He was denied a position as a Brand Representative at the Abercrombie store in the Topanga Mall in Canoga Park, California in August or September 2002 on account of his race, color, and/or national origin.

20.     Plaintiff Juancarlos Gómez-Montejano is a minority resident of Los Angeles, California.  He was employed as a Brand Representative at the Abercrombie store at the Third Street Promenade in Santa Monica, California, from November 1998 to April 1999, when he was terminated on account of his race, color, and/or national origin.

21.     Plaintiff Jennifer Lu is a minority resident of Irvine, California, where she is a student at the University of California at Irvine.  She was employed as a Brand Representative in the Abercrombie store in the Crystal Court Mall in Costa Mesa, California, from September 2000 to February 2003, when she was terminated on account of her race, color, and/or national origin.

22.     Plaintiff Austin Chu is a minority resident of Irvine, California, where he is a student at the University of California at Irvine.  He was employed as a Brand Representative in the Abercrombie store in the Crystal Court Mall in Costa Mesa, California from June 2001 to March 2003, when he was constructively discharged on account of his race, color, and/or national origin.

23.     Plaintiff Ivy Nguyen is a minority resident of Anaheim, California, where she is a student at the University of California at Irvine.  She was employed as a Brand Representative in the Abercrombie store in the Crystal Court Mall in Costa Mesa, California, from June 2002 to February 2003, when she was terminated on account of her race, color, national origin, and/or gender.

24.     Plaintiff Angeline Wu is a minority resident of Irvine, California where she is a student at the University of California at Irvine.  She was employed as a Brand Representative in the Abercrombie store in the Crystal Court Mall in Costa Mesa, California, from August 2002 to February 2003, when she was terminated on account of her race, color, national origin, and/or gender.

25.     Plaintiff Eric Fight is a minority resident of Venice, California.  He was employed as a Brand Representative in the Abercrombie store in the Third Street Promenade in Santa Monica, California, from roughly May 2003 to June 2003, but was channeled to a stock room role (a non-sales position) due to his race or color.  He was constructively discharged in or around June 2003 when he learned that he was not allowed to work on the sales floor due to his race or color and that he had been misled by the manager with whom he had interviewed into believing that there were no sales floor Brand Representative positions available.

26.     Plaintiff Carla Grubb is a minority resident of Bakersfield, California, where she is a student at California State University at Bakersfield.  She began working as a Brand Representative in the Abercrombie store in the Bakersfield Valley Plaza Mall in Bakersfield, California in November 2002.  In or after January 2003, she was constructively discharged on account of her race or color.

27.     Plaintiff David Culpepper is a minority resident of Berkeley, California, where he is a graduate student at the University of California at Berkeley.  He was denied positions as a Brand Representative at the Abercrombie store in the SF Shopping Center in San Francisco, California in June 2003, and at the SF Stonestown Galleria in San Francisco, California in March 2003 on account of his race or color.

28.     Plaintiff Patrice Douglass is a minority resident of El Sobrante, California, where she is a student at the University of California, Santa Cruz.  She was denied a position as a Brand Representative at the Abercrombie store in the Bay Street shopping area in Emeryville, California in or about May 2003 on account of her race, color, and/or national origin.

29.     Plaintiff Robair Sherrod is a minority resident of Carson, California, where he is a student at California State University at Dominguez Hills.  He was denied a position as a Brand Representative at the Abercrombie store at the South Bay Galleria in Redondo Beach, California in or about December 2002.

30.     Defendant Abercrombie & Fitch Stores, Inc. is an Ohio corporation and a wholly owned subsidiary of Abercrombie.  Based on the representations of defendants, from July 1996 to August 2000, during which time it was a Delaware corporation, Abercrombie & Fitch Stores, Inc. operated all California Abercrombie stores; from August 2000, when it became an Ohio corporation, to May 2002, it operated all Abercrombie stores; and since May 2002, it has operated all Abercrombie stores outside of California and Ohio.

31.     Defendant A&F California, LLC is an Ohio limited liability company and a wholly owned subsidiary of Abercrombie.  Based on the representations of defendants, since May 2002, it has operated all Abercrombie stores in California.

32.     Defendant A&F Ohio, Inc. is an Ohio corporation and a wholly owned subsidiary of Abercrombie.  Based on the representations of defendants, since May 2002, it has operated all Abercrombie stores in Ohio.

33.     Defendants are a national retail clothing seller primarily marketing to teenagers and young adults.  According to the Company, it took in $1.6 billion in revenue during fiscal year 2002, a 17% increase over the previous year.  As of the end of the first quarter of 2003 (ended May 3, 2003), the Company operated 602 stores.

34.     Abercrombie operates stores (and/or departments within Abercrombie & Fitch stores) under three different names:  "Abercrombie & Fitch" (the "Adult" store), "Hollister," and "A&F Kids."  Although each type of store offers different product lines, they all follow the same human resources policies and practices, participate in the same discrimination,

1   and are run by the same management.  Applicants to and employees of each type of store are

2   included in the proposed Class.

3                                    **CLASS ACTION ALLEGATIONS**

4          35.     Plaintiffs bring this Class Action pursuant to Fed. R. Civ. P. 23(a), (b)(2),

5   and (b)(3) on behalf of a class of all past, present, and future minority Abercrombie Brand

6   Representatives and applicants for Brand Representative positions with Abercrombie who have

7   been, continue to be, or in the future may be discouraged from applying or denied employment,

8   desirable job assignments, job transfers, desirable hours, compensation, and/or other terms and

9   conditions of employment on the basis of their race, color, and/or national origin, and/or who

10  have been terminated on account of the policies or practices complained of herein.

11         36.     Plaintiffs are members of the class they seek to represent.

12         37.     The members of the class identified herein are so numerous that joinder of

13  all members is impracticable.  The number of class members is currently indeterminate, but is

14  certainly larger than can be addressed through joinder.  By the end of FY 2003 (ended February 1,

15  2003), Abercrombie had approximately 22,000 employees.  In addition, temporary employees are

16  hired during peak periods, such as the holiday season.  Each of Abercrombie's 600-odd stores

17  employs very few minority Brand Representatives but each store, on average, annually receives

18  numerous applications from qualified minorities who are potential Brand Representatives; as a

19  result of Abercrombie's systematic discriminatory hiring practices, an unknown number of

20  minority applicants have also been deterred from applying.  Thus, although the precise number of

21  qualified minority applicants who are not hired and/or who are fired or otherwise discriminated

22  against is currently unknown, it is far greater than can be feasibly addressed through joinder.

23         38.     There are questions of law and fact common to the class, and these

24  questions predominate over any questions affecting only individual members.  Common

25  questions include, among others:  (1) whether Abercrombie's policies or practices discriminate

26  against minority employees and applicants; (2) whether Abercrombie's use of the "A&F Look"

27  and image as an employment policy or practice discriminates against minority applicants and

28  employees; (3) whether Abercrombie's policies and practices violate Title VII; (4) whether

1    Abercrombie's policies or practices violate 42 U.S.C. § 1981; and (4) whether compensatory and

2    punitive damages, injunctive relief, and other equitable remedies for the class are warranted.

3           39.     The representative Plaintiffs' claims are typical of the claims of the class.

4           40.     The representative Plaintiffs will fairly and adequately represent and

5    protect the interests of the members of the class.  Plaintiffs have retained counsel competent and

6    experienced in complex class actions, employment discrimination litigation, and the intersection

7    thereof.

8           41.     Class certification is appropriate pursuant to Fed. R. Civ. P. 23(b)(2)

9    because Abercrombie has acted and/or refused to act on grounds generally applicable to the class,

10   making appropriate declaratory and injunctive relief with respect to Plaintiffs and the class as a

11   whole.  The class members are entitled to injunctive relief to end Abercrombie's common,

12   uniform, and unfair racially discriminatory personnel policies and practices.

13          42.     Class certification is also appropriate pursuant to Fed. R. Civ. P. 23(b)(3)

14   because common questions of fact and law predominate over any questions affecting only

15   individual members of the class, and because a class action is superior to other available methods

16   for the fair and efficient adjudication of this litigation.  The class members have been damaged

17   and are entitled to recovery as a result of Abercrombie's common, uniform, and unfair racially

18   discriminatory personnel policies and practices.  Abercrombie has computerized payroll and

19   personnel data that will make calculation of damages for specific class members relatively

20   simple.  The propriety and amount of punitive damages are issues common to the class.

21                        **CLAIMS OF REPRESENTATIVE PLAINTIFFS**

22   **Eduardo Gonzalez**

23          43.     Plaintiff Eduardo Gonzalez, a Latino male, is a student at Stanford

24   University.  He applied for a position as a Brand Representative at the Abercrombie store in the

25   Valley Fair Mall in Santa Clara, California on August 7, 2002.  An Abercrombie manager

26   suggested that he apply to work in the stock room or on the overnight crew in a non-sales

27   position.  Nevertheless, Mr. Gonzalez returned to the store for a group interview for the Brand

28   Representative position on August 27, 2002.  Mr. Gonzalez was not hired as a Brand

1  Representative.  Mr. Gonzalez was qualified for the job.  Indeed, immediately following his

2  Abercrombie interview, he crossed the hall within the same mall to apply for a job at Banana

3  Republic, a similar retail clothing store that competes directly with Abercrombie for customers

4  and employees.  An employee of Banana Republic asked Mr. Gonzalez if he was interested in

5  applying to work as a manager.  He applied to work as a sales associate, and worked for Banana

6  Republic in such a capacity through the academic year.  Despite knowing of his qualifications,

7  Abercrombie refused to hire Mr. Gonzalez based on his race, color, and/or national origin.

8           44.      Abercrombie has discriminated against Mr. Gonzalez on the basis of his

9  race, color and/or national origin by denying him employment because he is not white.

10          45.      On or about April 25, 2003, Mr. Gonzalez filed a charge of discrimination

11 with the Equal Employment Opportunity Commission ("EEOC").  Mr. Gonzalez received a copy

12 of his Notice of Right to Sue from the California Department of Fair Employment and Housing

13 ("DFEH"), dated April 29, 2003.  Attached to this Complaint as Exhibit A and incorporated by

14 reference are copies of that charge and that notice.  On or about December 30, 2003, the EEOC

15 issued Mr. Gonzalez a notice of right to sue.  Attached to this Complaint as Exhibit P and

16 incorporated by reference is a copy of that notice.

17 **Anthony Ocampo**

18          46.      Plaintiff Anthony Ocampo, a Filipino American male, is a student at

19 Stanford University.  From December 1999 to January 2000, he worked part time as a Brand

20 Representative at the Abercrombie store in the Glendale Galleria in Glendale, California near his

21 family's home.

22          47.      It is common practice at Abercrombie for college students to work at the

23 Abercrombie near their family home during vacations, and then to transfer to a store near their

24 college during the school year (or vice versa).  Therefore, when Mr. Ocampo returned to

25 Stanford, he attempted to apply for a position as Brand Representative at the Abercrombie store

26 in the Hillsdale Shopping Center in San Mateo, California.  Mr. Ocampo was told that he would

27 be contacted regarding a stock person position, but not for the position of Brand Representative.

28

1    Mr. Ocampo never was contacted for any position with Abercrombie, and when he contacted the

2    manager there, he was told that he would have to reapply.

3        48.    Later that year, when he returned home for summer vacation in June of

4    2000, Mr. Ocampo applied to work once again at the Glendale Galleria Abercrombie.  He was

5    told that there were "too many Filipinos" working at that location.  He was not even given the

6    opportunity to submit a written application.  Mr. Ocampo was qualified for the job of Brand

7    Representative, in part based on his prior experience doing that exact job at the Abercrombie

8    store in the Glendale Galleria.  Abercrombie refused to hire Mr. Ocampo, despite knowing of his

9    qualifications, based on his race, color, and/or national origin.

10        49.    Abercrombie has discriminated against Mr. Ocampo on the basis of his

11    race, color and/or national origin (a) by denying him employment because he is not white; and

12    (b) by refusing to transfer him from one store to another on the same terms as white Brand

13    Representatives.

14    **Encarnacion Gutierrez**

15        50.    Plaintiff Encarnacion Gutierrez, a Latino male, graduated from the

16    University of California at Los Angeles in 2002 with a B.S. in Civil Engineering and from the

17    University of California at Berkeley in 2003 with an M.S. in Structural Engineering.  He applied

18    to work as a Brand Representative at the Abercrombie store in the Third Street Promenade in

19    Santa Monica, California in June or July 2001, and later returned for a group interview.

20    Mr. Gutierrez was qualified for the job.  Abercrombie refused to hire Mr. Gutierrez, despite

21    knowing of his qualifications, based on his race, color, and/or national origin.

22        51.    During his initial visit to the store, Mr. Gutierrez observed that the staff

23    was virtually exclusively white.  The manager who conducted the group interview was white.  He

24    asked no questions regarding prior work experience or relevant skills.  During the interview, the

25    manager asked a Filipino-American applicant whether he spoke English even though the

26    applicant had already answered several questions and demonstrated his fluency in English.

27    Mr. Gutierrez saw the manager write "phil" next to the applicant's name.

28

52.     Abercrombie has discriminated against Mr. Gutierrez on the basis of his race, color, and/or national origin by denying him employment because he is not white.

53.     On or about May 21, 2002, Mr. Gutierrez filed a charge of discrimination with the EEOC.  Attached to this Complaint as Exhibit B, and incorporated by reference, is a copy of that charge.  On or about December 30, 2003, the EEOC issued Mr. Gutierrez a notice of right to sue.  Attached to this Complaint as Exhibit Q and incorporated by reference is a copy of that notice.

**Johan Montoya**

54.     Plaintiff Johan Montoya, a Latino male, is a student at the University of California at Santa Barbara.  He applied for a position as a Brand Representative at the Abercrombie store in the Topanga Mall in Canoga Park, California in August or September 2002, participated in a group interview for the job and submitted a paper application.  He was qualified for the job, in part based on his prior work experience as a sales associate at another retail establishment in the same mall.  Abercrombie refused to hire Mr. Montoya despite knowing of his qualifications, based on his race, color, and/or national origin.

55.     Abercrombie has discriminated against Mr. Montoya on the basis of his race, color, and/or national origin by denying him employment because he is not white.

56.     On or about April 22, 2003, Mr. Montoya filed a charge of discrimination with the EEOC.  Mr. Montoya received a copy of his Notice of Right to Sue from the DFEH, dated April 29, 2003.  Attached to this Complaint as Exhibit C and incorporated by reference, are copies of that charge and that notice.  On or about December 30, 2003, the EEOC issued Mr. Montoya a notice of right to sue.  Attached to this Complaint as Exhibit R and incorporated by reference is a copy of that notice.

**Juancarlos Gómez-Montejano**

57.     Plaintiff Juancarlos Gómez-Montejano, a Latino male, worked as a Brand Representative at the Abercrombie store at the Third Street Promenade in Santa Monica, California from November 22, 1998 until August 1999, while he was a student at the University of California at Los Angeles.  During that time, he regularly worked roughly 10-15 hours per

1   week.  After noticing that his work hours had been reduced, Mr. Gómez-Montejano requested his

2   personnel file.  In August 1999 he learned that Company records showed that, unbeknownst to

3   him, he had been fired from his position.  He had never been previously informed of this

4   termination, nor was he advised of any reasons for the termination.

5          58.     In or around February or March 1999, Abercrombie representatives from

6   Ohio corporate headquarters visited the store on a "blitz," and observed that there were

7   photographs of each of the Brand Representatives posted in an employee area in the back.  A

8   corporate official pointed to the pictures of four or five minority Brand Representatives, including

9   Mr. Gómez-Montejano, and directed store management to "zero them out."  This expression is

10  used within the Company to signify that the manager assigning work shifts should begin

11  assigning that person zero hours each week.  In the following weeks, Mr. Gómez-Montejano

12  continued to inform his manager that he was available to work many hours a week, just as he had

13  throughout his tenure at Abercrombie; however, each week he received a schedule giving him

14  zero hours.  Eventually, he realized that this "zeroed out" schedule might be permanent.

15  Therefore, he requested his personnel file in July 1999, and, after his second request, received a

16  copy of a company document stating that he had been terminated.

17         59.     Abercrombie has discriminated against Mr. Gómez-Montejano on the basis

18  of his race, color, and/or national origin by (a) terminating his employment because he is not

19  white; and (b) refusing to give him desirable hours/assignments on the same terms as white Brand

20  Representatives.

21         60.     On or about December 21, 1999, Mr. Gómez-Montejano filed a charge of

22  discrimination with the EEOC.  Attached to this Complaint as Exhibit D, and incorporated by

23  reference, is a copy of that charge.  After investigating, the EEOC issued a Letter of

24  Determination, finding that Abercrombie had discriminated against Mr. Gómez-Montejano and

25  against "Latinos and Blacks, as a class."  Attached to this Complaint as Exhibit E, and

26  incorporated by reference, is a copy of that letter.  On or about December 21, 1999, the DFEH

27  issued to Mr. Gómez-Montejano a Notice of Right to Sue.  Attached to this Complaint as

28  Exhibit F, and incorporated by reference, is a copy of that notice.  On or about December 30,

1    2003, the EEOC issued Mr. Gómez-Montejano a notice of right to sue.  Attached to this

2    Complaint as Exhibit S and incorporated by reference is a copy of that notice.

3    **Jennifer Lu**

4         61.    Plaintiff Jennifer Lu is an Asian American female and a student at the

5    University of California at Irvine.  She worked as a Brand Representative at the Abercrombie

6    store in the Crystal Court Mall in Costa Mesa, California from September 2000 to February 2003.

7    She was entrusted with responsibilities that only the most trustworthy and more senior staff were

8    given.

9         62.    In or around January 2003, representatives from corporate and/or regional

10   headquarters visited the Crystal Court Mall store on an inspection tour, or "blitz."  These

11   headquarters/regional representatives reiterated to the Store Manager and other managers the

12   importance of having a predominantly white Brand Representative workforce, with fewer

13   minorities.  Specifically, corporate employees communicated this directive by pointing to a

14   picture of a white model hanging in the store, and making a statement to the effect of "This is the

15   'A&F Look' – you need to make your store look more like this."  Soon after this "blitz," on or

16   about February 8, 2003, roughly five Asian American Brand Representatives, including Plaintiffs

17   Jennifer Lu, Austin Chu, Ivy Nguyen, and Angeline Wu were terminated and/or constructively

18   discharged, and one African American Brand Representative was transferred to a behind-the-

19   scenes stockroom position at another Abercrombie store.  This action was not premised on any

20   legitimate business consideration, such as a lessened need for Brand Representatives or poor

21   work performance.  The store hired several white Brand Representatives within two weeks of

22   firing Ms. Lu.

23        63.    On February 8, 2003, Ms. Lu learned that she had been fired.  She

24   informed the Store Manager that she was willing to be flexible with shift assignments, and that if

25   the staffing needs picked up in the summer months or other peak shopping seasons, she would

26   like to be considered.  Mr. Richter told her that she was not needed at that time nor would she be

27   needed in the future.

28

64.     Abercrombie has discriminated against Ms. Lu on the basis of her race, color, and/or national origin by (a) terminating her employment because she is not white; and (b) assigning her fewer hours than similarly-situated white Brand Representatives.

65.     On or about April 22, 2003, Ms. Lu filed a charge of discrimination with the EEOC.  Ms. Lu received a copy of her Notice of Right to Sue from the DFEH, dated April 29, 2003.  Attached to this Complaint as Exhibit G and incorporated by reference, are copies of that charge and that notice.  On or about December 30, 2003, the EEOC issued Ms. Lu a notice of right to sue.  Attached to this Complaint as Exhibit T and incorporated by reference is a copy of that notice.

**Austin Chu**

66.     Plaintiff Austin Chu is an Asian American male and a student at the University of California at Irvine.  He worked as a Brand Representative at the Abercrombie store in the Crystal Court Mall in Costa Mesa, California from June 2001 to March 2003, when he was constructively discharged.

67.     Immediately after the January corporate "blitz" visit described herein in the preceding paragraphs, Mr. Chu's hours were reduced from the usual 10-15 hours per week he had worked during his year and a half tenure to roughly zero hours per week.  This "zeroing out" began on or about February 8, 2003 and lasted until approximately March 26, 2003, during which six-week period Mr. Chu was assigned only one four-hour shift (in contrast to his usual 60-90 hours for such a six-week period), despite notifying his managers each week of his availability and interest in working the usual 10-15 hours per week.  Mr. Chu attempted to gain more hours by offering to fill in for those who were unavailable, and he was denied the opportunity to work more hours.  Because he was not assigned any hours to work, Mr. Chu tendered his resignation on March 26, 2003.  Mr. Chu was known as one of the most effective Brand Representatives in the store due to his gregarious nature.

68.     Abercrombie has discriminated against Mr. Chu on the basis of his race, color, and/or national origin by (a) constructively terminating his employment because he is not white; and (b) assigning him fewer hours than similarly-situated white Brand Representatives.

1    69.    On or about April 22, 2003, Mr. Chu filed a charge of discrimination with

2    the EEOC.  Mr. Chu received a copy of his Notice of Right to Sue from the DFEH, dated

3    April 29, 2003.  Attached to this Complaint as Exhibit H and incorporated by reference, are

4    copies of that charge and that notice.  On or about December 30, 2003, the EEOC issued Mr. Chu

5    a notice of right to sue.  Attached to this Complaint as Exhibit U and incorporated by reference is

6    a copy of that notice.

7    **Ivy Nguyen**

8    70.    Plaintiff Ivy Nguyen is an Asian American female and a student at the

9    University of California at Irvine.  She worked as a Brand Representative in the Abercrombie

10   store in the Crystal Court Mall in Costa Mesa, California from approximately June 2002 until she

11   was fired sometime during February 2003, shortly after the corporate "blitz" described herein in

12   the preceding paragraphs.

13   71.    Abercrombie maintained a target ratio for the number of male Brand

14   Representatives relative to female Brand Representatives of 60:40.  This policy was in writing on

15   a board in the back of the store, designating the recruiting goal.  In order to meet the target ratio,

16   Brand Representatives were encouraged to recruit more men than women to work as Brand

17   Representatives.

18   72.    Immediately after the corporate "blitz" described in paragraph 62,

19   corporate representatives reiterated the 60:40 policy to management at the Crystal Court Mall

20   store by indicating that there were too many women working in the store.

21   73.    Abercrombie has discriminated against Ms. Nguyen on the basis of her

22   race, color, national origin, and/or gender by (a) terminating her employment because she is not

23   white or male; and (b) assigning her fewer hours than similarly-situated white or male Brand

24   Representatives.

25   74.    On or about June 16, 2003, Ms. Nguyen filed a charge of discrimination

26   with the EEOC.  Attached to this Complaint as Exhibit I and incorporated by reference, is a copy

27   of that charge.  On or about December 30, 2003, the EEOC issued Ms. Nguyen a notice of right to

28

1    sue.  Attached to this Complaint as Exhibit V and incorporated by reference is a copy of that

2    notice.

3    **Angeline Wu**

4           75.     Plaintiff Angeline Wu is an Asian American female and a student at the

5    University of California at Irvine.  She worked as a Brand Representative at the Abercrombie

6    store in the Crystal Court Mall in Costa Mesa, California from August 2002 to February 2003.

7           76.     Ms. Wu worked approximately 5-10 hours a week, at least 2-3 shifts per

8    week.  Shortly after the corporate "blitz" described herein in the preceding paragraphs, Ms. Wu's

9    hours were reduced and eventually "zeroed out."  Ms. Wu was then terminated in February 2003.

10          77.     Abercrombie maintained a target ratio for the number of male Brand

11   Representatives relative to female Brand Representatives of 60:40.  This policy was in writing on

12   a board in the back of the store, designating the recruiting goal.  In order to meet the target ratio,

13   Brand Representatives were encouraged to recruit more men than women to work as Brand

14   Representatives.

15          78.     Immediately after the corporate "blitz" described in paragraph 62,

16   corporate representatives reiterated the 60:40 policy to management at the Crystal Court Mall

17   store by indicating that there were too many women working in the store.

18          79.     Abercrombie has discriminated against Ms. Wu on the basis of her race,

19   color, national origin, and/or gender by (a) terminating her employment because she is not white

20   or male; and (b) assigning her fewer hours than similarly-situated white or male Brand

21   Representatives.

22          80.     On or about April 17, 2003, Ms. Wu filed a charge of discrimination with

23   the EEOC.  Ms. Wu received a copy of her Notice of Right to Sue from the DFEH, dated

24   April 22, 2003.  Attached to this Complaint as Exhibit J and incorporated by reference, are copies

25   of that charge and that notice.  On or about December 30, 2003, the EEOC issued Ms. Wu a

26   notice of right to sue.  Attached to this Complaint as Exhibit W and incorporated by reference is a

27   copy of that notice.

28   **Eric Fight**

81.     Plaintiff Eric Fight is an African American male residing in Venice, California.  He worked as a Brand Representative in the stock room only (a non-sales position) at the Abercrombie store in the Third Street Promenade in Santa Monica, California, from roughly May 2003 to June 2003.  He was constructively discharged in or around June 2003 when he learned that he was not allowed to work on the sales floor due to his race or color and that he had been misled by the manager with whom he had interviewed into believing that there were no sales floor Brand Representative positions available.

82.     In May 2003, Mr. Fight applied for a position as a Brand Representative at the Abercrombie store in the Third Street Promenade in Santa Monica, California and participated in a group interview for the job.  Mr. Fight informed the manager conducting the interview that he would rather work as a floor Brand Representative because he had substantial experience in sales and did not have any experience working in a stockroom.  The manager told Mr. Fight that he would call him with a hiring decision within a week.  Mr. Fight was qualified for the floor Brand Representative job because of his prior work experience as a sales representative for comparable retail clothing stores, including the Gap, Urban Outfitters, and Miller's Outpost.  Abercrombie refused to hire Mr. Fight as a Brand Representative despite knowing of his qualifications for the position, based on his race or color.

83.     A week later, not having heard from the store, Mr. Fight called the store to inquire about the status of his application.  The same manager told Mr. Fight that the store was not hiring floor Brand Representatives.  Roughly ten days later, the store's stock manager called Mr. Fight and offered him a position in the stock room (a non-sales position).  Mr. Fight accepted the position and began working at the store in June 2003, expecting that the store would soon be hiring floor Brand Representatives again and that he could reapply for such a position then.  Upon beginning work at the Third Street Promenade store, Mr. Fight observed that the floor Brand Representative staff was virtually exclusively white.

84.     In June 2003, on Mr. Fight's second day of work at Abercrombie, he met a white floor Brand Representative who had just begun working at the store.  Mr. Fight learned that this new Brand Representative had recently been hired, and thus that the manager with whom he

had interviewed had deceived him about the availability of floor Brand Representative positions. Mr. Fight concluded that the manager and the store would not consider him for floor Brand Representative positions at that time or in the future due to his race or color. Mr. Fight thus realized that he had been constructively discharged.

85.     Approximately a week after his discharge, Mr. Fight was hired as a sales associate for the Levi's Store at the Third Street Promenade, a similar retail clothing store that competes with Abercrombie for customers and employees.

86.     Abercrombie has discriminated against Mr. Fight on the basis of his race, color, and/or national origin by denying him employment as a Brand Representative and channeling him to a stock room position because he is not white.

87.     On or about August 18, 2003, Mr. Fight filed a charge of discrimination with the EEOC. Attached to this Complaint as Exhibit K, and incorporated by reference, is a copy of that charge. On or about December 30, 2003, the EEOC issued Mr. Fight a notice of right to sue. Attached to this Complaint as Exhibit X and incorporated by reference is a copy of that notice.

**Carla Grubb**

88.     Plaintiff Carla Grubb is an African American female and a student at California State University at Bakersfield. She worked as a Brand Representative at the Abercrombie store in the Bakersfield Valley Plaza Mall in Bakersfield, California from November 2002 to January 2003, when she was constructively discharged.

89.     From November 2002 to December 2002, Ms. Grubb worked as Brand Representative. Each week she requested daytime shifts. However, she was usually assigned to work night shifts, often starting approximately one hour before closing and continuing into the late night. When Ms. Grubb began working for Abercrombie, she observed that she was the only African American employee at the store; besides one Latino male Brand Representative, all the other employees were white. She also noticed that white Brand Representatives were receiving daytime hours and floor time. Although she was officially a floor Brand Representative, Ms. Grubb spent the vast majority of her work time dusting and cleaning windows.

90.     In approximately late December 2002, Ms. Grubb notified a manager that she would not be available for shifts for the next few weeks, a practice that she had observed to be unremarkable among Brand Representatives in the store.  The manager granted her request and stated that it would be "no problem."  Upon returning to work roughly two weeks later, in January 2003, Ms. Grubb's hours had been reduced from the normal 15-20 hours per week to almost nothing.  She was assigned one 4-hour shift during the month of January.  From the seven-month period from the end of January to the present (August 2003), Ms. Grubb has been assigned no shifts, despite notifying her managers each week of her interest in working up to 30 hours a week, and indicating availability from roughly 8 am to 10 pm each day as well as requesting opportunities to sign up for overnight shifts.  Ms. Grubb has since learned that there was a corporate "blitz" of the store in early January 2003, which the store managers knew about in advance.  The blitz involved a visit by Abercrombie corporate representatives, who took pictures of the Brand Representatives to gauge the store's compliance with the "A&F Look."

91.     In or around May 2003, Ms. Grubb asked her managers for an explanation as to why she was not being assigned shifts.  She was informed that she could not return to work because the store was full of employees, although the store still considered her an Abercrombie employee.  At the time Ms. Grubb was aware of at least two white Brand Representatives at the store who were assigned shifts of up to 40 hours a week, while Ms. Grubb, despite her continued requests, was assigned no hours.

92.     Abercrombie has discriminated against Ms. Grubb on the basis of her race, color, and/or national origin by (a) constructively terminating her employment because she is not white and (b) assigning her fewer hours than similarly-situated white Brand Representatives.

93.     On or about August 18, 2003, Ms. Grubb filed a charge of discrimination with the EEOC.  Attached to this Complaint as Exhibit L, and incorporated by reference, is a copy of that charge.  On or about December 30, 2003, the EEOC issued Ms. Grubb a notice of right to sue.  Attached to this Complaint as Exhibit Y and incorporated by reference is a copy of that notice.

**David Culpepper**

94.     Plaintiff David Culpepper is a minority resident of Berkeley, California and a graduate student at the University of California at Berkeley.  He was denied positions as a Brand Representative at the Abercrombie store in the SF Shopping Center in San Francisco, California in June 2003, and at the SF Stonestown Galleria in San Francisco, California in March 2003 on account of his race or color.

95.     Mr. Culpepper applied to work as a Brand Representative at the SF Shopping Center store in late May 2002, September 2002, and early June 2003 by handing a written application to an Abercrombie sales associate or manager each time.  On the first visit, the Abercrombie employee stated that she would pass the application to the manager.  On the second and third visits, the managers there told him that the store was not hiring and that there were no positions available.  Mr. Culpepper also applied to work at the SF Stonestown Galleria store in June 2002, late November or early December 2002, and March 2003 by handing a written application to an Abercrombie sales associate or manager each time.  On the first and third visits, the Abercrombie employees there told him that the store was not hiring and that there were no positions available.  On the second visit, the Abercrombie employee stated that the store would contact him if they were interested.  During none of these six application attempts did any Abercrombie employee inform him of the existence of a group interview or ask about his qualifications.  Because Mr. Culpepper visited both locations frequently, he noticed many new white Brand Representatives working at both stores, several of whom informed him that they had been hired in recent weeks (during times immediately before and after each of his application attempts).  Mr. Culpepper was not hired nor was he ever contacted by Abercrombie.

96.     By the time of his first application to work at Abercrombie, in May 2002, Mr. Culpepper had substantial experience as a sales associate for comparable stores including Banana Republic, Aeropostale, and Instant (a boutique clothing store in New York City).  He was then a recent graduate of the University of California at Berkeley.

97.     In June 2002, within a few weeks of Mr. Culpepper's first application to the SF Shopping Center, four white male friends of his with no retail experience applied to that store and were all hired on the spot and scheduled for their first shifts.

1     98.     Abercrombie has discriminated against Mr. Culpepper on the basis of his

2     race, color, and/or national origin by denying him employment because he is not white.

3     99.     On or about August 18, 2003, Mr. Culpepper filed a charge of

4     discrimination with the EEOC.  Attached to this Complaint as Exhibit M, and incorporated by

5     reference, is a copy of that charge.  On or about December 30, 2003, the EEOC issued Mr.

6     Culpepper a notice of right to sue.  Attached to this Complaint as Exhibit Z and incorporated by

7     reference is a copy of that notice.

8     **Patrice Douglass**

9     100.    Plaintiff Patrice Douglass, an African American female, is a student at the

10    University of California, Santa Cruz.  She applied for a position as a Brand Representative at the

11    Abercrombie store in the Bay Street shopping area in Emeryville, California in or about May

12    2003.  She submitted a written application to a manager on duty and informed him of her

13    qualifications, including her prior retail experience.  She was qualified for the job, in part based

14    on that retail experience.  Abercrombie refused to hire Ms. Douglass despite knowing of her

15    qualifications, based on her race, color, and/or national origin.

16    101.    The manager informed Ms. Douglass that May was "early" to apply for

17    summer employment.  He also questioned Ms. Douglass why she had included two phone

18    numbers, when the "usual" applicant only listed one.

19    102.    One week later, Ms. Douglass's friend, who is white, requested an

20    application for summer employment as a Brand Representative at the same Abercrombie store.

21    An Abercrombie employee invited the friend to attend one of the group interviews that the store

22    held every Wednesday.  The friend did so and was hired.

23    103.    Abercrombie has discriminated against Ms. Douglass on the basis of her

24    race, color, and/or national origin by denying her employment because she is not white.

25    104.    On or about December 23, 2003, Ms. Douglass filed a charge of

26    discrimination with the EEOC.  Ms. Douglass received a copy of her Notice of Right to Sue from

27    the DFEH, dated December 23, 2003.  Attached to this Complaint as Exhibit N, and incorporated

28    by reference, are copies of that charge and that notice.  On or about December 30, 2003, the

1    EEOC issued Ms. Douglass a notice of right to sue.  Attached to this Complaint as Exhibit AA

2    and incorporated by reference is a copy of that notice.

3    **Robair Sherrod**

4            105.    Plaintiff Robair Sherrod, an African American male, is a student at

5    California State University at Dominguez Hills.  He applied for a position as a Brand

6    Representative at the Abercrombie store in the South Bay Galleria in Redondo Beach, California

7    in or around December 2002.  He submitted a written application and participated in two group

8    interviews.  He was qualified for the job, in part based on his prior retail experience.

9    Abercrombie refused to hire Mr. Sherrod despite knowing of his qualifications, based on his race,

10   color, and/or national origin.

11           106.    In or around January 2003, shortly after he had submitted his application,

12   Mr. Sherrod was invited to a group interview.  The manager who conducted the interview

13   informed Mr. Sherrod that the Company would contact him within a week regarding his

14   application.  Approximately one month later, a store employee called Mr. Sherrod to invite him to

15   a second group interview.  Again, the manager who conducted the interview informed Mr.

16   Sherrod that he would be called within a week regarding his application.  No store employee has

17   since contacted Mr. Sherrod regarding his application.

18           107.    Abercrombie has discriminated against Mr. Sherrod on the basis of his

19   race, color, and/or national origin by denying him employment because he is not white.

20           108.    On or about December 1, 2003, Mr. Sherrod filed a charge of

21   discrimination with the EEOC.  Mr. Sherrod received a copy of her Notice of Right to Sue from

22   the DFEH, dated December 30, 2003.  Attached to this Complaint as Exhibit O, and incorporated

23   by reference, are copies of that charge and that notice.  On or about December 30, 2003, the

24   EEOC issued Mr. Sherrod a notice of right to sue.  Attached to this Complaint as Exhibit BB and

25   incorporated by reference is a copy of that notice.

26           **GENERAL POLICIES OR PRACTICES OF DISCRIMINATION**

27           109.    The denials and abridgments of employment opportunities suffered by the

28   Representative Plaintiffs are part of a general policy or practice of discrimination on the basis of

race, color, and/or national origin in employment that has existed at Abercrombie throughout the

relevant time period.  These are not isolated examples of employment practices or individual

decisions.  On the contrary, these incidents are representative of A&F's systematic discrimination

against minorities and in favor of white applicants and employees, to create an overwhelmingly

white Brand Representative workforce.

110.    On September 13, 2001, the EEOC issued a Letter of Determination with

respect to the EEOC charge filed by Plaintiff Juancarlos Gómez-Montejano, stating,

> The preponderance of the evidence supports Charging Party's claim
> that he was denied a permanent position as a Brand Representative,
> denied an assignment and terminated because of his national origin.
> Moreover, evidence obtained during the course of the investigation
> revealed that *Latinos and Blacks, as a class, were denied
> permanent positions, denied assignments and treated in an unfair
> manner with regard to recruitment based on their race and national
> origin*, and that Respondent failed to maintain employment records
> as required by Title VII.  Therefore, I have concluded that the
> evidence is sufficient to establish a violation of the above-cited
> statute.

Attached hereto as Exhibit E (emphasis added).

111.    The EEOC sent this letter to Mr. Gómez-Montejano and to Abercrombie.

112.    The under-representation of minorities in Brand Representative positions

throughout Abercrombie's approximately 602 stores in the United States results from an

intentional policy and practice of discrimination on the basis of race, color, and/or national origin

in hiring, initial job assignment, weekly hours allocation, internal job transfer, inter-store transfer,

and termination.

113.    Abercrombie has pursued policies or practices on a continuing basis that

have denied or restricted job opportunities to qualified minority applicants and employees.

114.    Such discriminatory policies or practices include, without limitation:

a.    reliance on subjective, arbitrary, standardless, and unvalidated

criteria in making hiring decisions, focusing on whether applicants properly reflect the

predominantly white "A&F Look" and image rather than whether they would be responsible,

effective Brand Representatives who could perform their jobs well;

b.      reliance on subjective, arbitrary, standardless, and unvalidated criteria in making decisions in job assignments, weekly hour allocations, and ability to transfer between stores focusing on whether employees properly reflect the predominantly white "A&F Look" and image rather than whether they would be responsible, effective Brand Representatives who perform their jobs well;

c.      shunting minority applicants and Brand Representatives to stock room and overnight shift positions where they are out of the public eye;

d.      targeting white candidates for recruitment, both systemically (e.g., recruiting visits to college campuses and/or targeting of specific sororities and fraternities) and individually (e.g., inviting individual customers in the store to apply to become Brand Representatives), but avoiding, ignoring, discouraging or dissuading equally qualified minorities from applying;

e.      use of the "Look Book," the A&F Quarterly, and wall posters as guidelines for management to select Brand Representatives on the basis of their appearance – e.g., white – as opposed to their qualifications for the job;

f.      use of corporate "blitzes" to monitor and enforce stores' compliance with the "A&F Look" and to weed out minority Brand Representatives; and

g.      termination of employees based on race, color, and/or national origin without regard to their performance on the job.

**FIRST CLAIM FOR RELIEF**
**(42 U.S.C. § 2000e et seq.)**

115.    Plaintiffs incorporate paragraphs 1 through 114 as alleged above.

116.    This Claim is brought on behalf of all representative plaintiffs, except Mr. Ocampo, on behalf of themselves and the Class they represent.

117.    Abercrombie has maintained a system that is intentionally discriminatory, subjective, standardless, and arbitrary with respect to recruitment, hiring, job assignment, transfer, weekly hour allocation, and termination.  The system has an adverse disparate impact on minority applicants and employees.  This system is not and cannot be justified by business necessity, but

1    even if it could be so justified, less discriminatory alternatives exist that could equally serve any

2    alleged necessity.

3    118.    Abercrombie's discriminatory policies or practices described above have

4    denied minority applicants and employees employment, job assignments, job transfers, and

5    weekly hour allocations, resulting in the loss of past and future wages and other job benefits.

6    119.    As noted above, the EEOC has determined that "the evidence is sufficient

7    to establish" that Abercrombie has violated Title VII, because "Latinos and Blacks, as a class,

8    were denied permanent positions, denied assignments and treated in an unfair manner with regard

9    to recruitment based on their race and national origin." Exhibit E.

10   120.    The foregoing conduct constitutes illegal, intentional discrimination as

11   unjustified disparate impact prohibited by 42 U.S.C. § 2000e *et seq.*

12   121.    Plaintiffs request relief as hereinafter provided.

13   **SECOND CLAIM FOR RELIEF**
     **(42 U.S.C. § 1981)**

14

15   122.    Plaintiffs incorporate paragraphs 1 through 114 as alleged above.

16   123.    This claim is brought on behalf of all Plaintiffs and the Class they

17   represent.

18   124.    Abercrombie has maintained an intentionally discriminatory system with

19   respect to recruitment, hiring, job assignments, transfers, weekly hour allocations, and

20   termination.

21   125.    The foregoing conduct constitutes illegal intentional discrimination with

22   respect to the making, performance, modification, and termination of contracts prohibited by

23   42 U.S.C. § 1981.

24   126.    Plaintiffs request relief as hereinafter provided.

25   **THIRD CLAIM FOR RELIEF**
     **(California Fair Employment and Housing Act, Government Code § 12940 *et seq.*)**

26

27   127.    Plaintiffs incorporate paragraphs 1 through 114 as alleged above.

28

128.    This claim is brought on behalf of Eduardo Gonzalez, Encarnacion Gutierrez, Johan Montoya, Juancarlos Gómez-Montejano, Jennifer Lu, Austin Chu, Ivy Nguyen, Angeline Wu, Eric Fight, Carla Grubb, David Culpepper, Patrice Douglass, and Robair Sherrod and the subclass of California class members they represent.

129.    Plaintiffs Eduardo Gonzalez, Johan Montoya, Juancarlos Gómez-Montejano, Jennifer Lu, Austin Chu, and Angeline Wu have received copies of their Right to Sue letters from the DFEH.  The pendency of the EEOC investigations into Plaintiffs' charges tolled the time limits for filing civil actions pursuant to the Fair Employment and Housing Act. Plaintiffs have therefore timely complied with all prerequisites to suit.

130.    Plaintiffs request relief as hereinafter provided.

**FOURTH CLAIM FOR RELIEF**
**(42 U.S.C. § 2000e _et seq._)**

131.    Plaintiffs incorporate paragraphs 1 through 114 as alleged above.

132.    This Claim is brought on behalf of representative plaintiffs Nguyen and Wu, on behalf of themselves individually.

133.    Abercrombie has maintained a system that is intentionally discriminatory, subjective, standardless, and arbitrary with respect to recruitment, hiring, job assignment, transfer, weekly hour allocation, and termination.  The system has had an adverse disparate impact on plaintiffs Nguyen and Wu on the basis of their gender.  This system is not and cannot be justified by business necessity, but even if it could be so justified, less discriminatory alternatives exist that could equally serve any alleged necessity.

134.    Abercrombie's discriminatory policies or practices described above have denied plaintiffs Nguyen and Wu employment, job assignments, job transfers, and weekly hour allocations, resulting in the loss of past and future wages and other job benefits, due to their gender.

135.    The foregoing conduct constitutes illegal, intentional gender discrimination as unjustified disparate impact prohibited by 42 U.S.C. § 2000e _et seq._

136.    Plaintiffs request relief as hereinafter provided.

**FIFTH CLAIM FOR RELIEF**
**(California Fair Employment and Housing Act, Government Code § 12940 *et seq.*)**

137.    Plaintiffs incorporate paragraphs 1 through 114 as alleged above.

138.    This Claim is brought on behalf of representative plaintiffs Nguyen and Wu, on behalf of themselves individually.

139.    Abercrombie's actions with respect to plaintiffs Nguyen and Wu constitute gender discrimination in violation of FEHA.  Plaintiffs Nguyen and Wu have received copies of their Right to Sue letters from the DFEH.  The pendency of the EEOC investigations into their charges tolled the time limits for filing civil actions pursuant to the Fair Employment and Housing Act.  They have therefore timely complied with all prerequisites to suit.

140.    Plaintiffs request relief as hereinafter provided.

**ALLEGATIONS REGARDING RELIEF**

141.    Plaintiffs, and the class they seek to represent, have no plain, adequate, or complete remedy at law to redress the wrongs alleged herein, and the injunctive relief sought in this action is the only means of securing complete and adequate relief.  Plaintiffs, and the class they seek to represent, are now suffering and will continue to suffer irreparable injury from defendant's discriminatory acts and omissions.

142.    Abercrombie's actions have caused and continue to cause plaintiffs and all class members substantial losses in earnings, work experience, weekly hour allocations, and other employment benefits.

143.    In addition, representative plaintiffs and the class suffer and continue to suffer humiliation, embarrassment, and anguish, all to their damage in an amount according to proof.

144.    Abercrombie performed the acts herein alleged with malice or reckless indifference.  Plaintiffs and class members are thus entitled to recover punitive damages in an amount according to proof.

**PRAYER FOR RELIEF**

WHEREFORE, plaintiffs and the class pray for relief as follows:

145.   Certification of the case as a class action on behalf of the proposed class;

146.   Designation of Representative Plaintiffs Eduardo Gonzalez, Anthony Ocampo, Encarnacion Gutierrez, Johan Montoya, Juancarlos Gómez-Montejano, Jennifer Lu, Austin Chu, Ivy Nguyen, Angeline Wu, Eric Fight, Carla Grubb, David Culpepper, Patrice Douglass, and Robair Sherrod as representatives of the class;

147.   Designation of Representative Plaintiffs' counsel of record as class counsel;

148.   A declaratory judgment that the practices complained of herein are unlawful and violate 42 U.S.C. § 1981;

149.   A preliminary and permanent injunction against Abercrombie and its officers, agents, successors, employees, representatives, and any and all persons acting in concert with them, from engaging in each of the unlawful policies, practices, customs, and usages set forth herein;

150.   An order that Abercrombie institute and carry out policies, practices, and programs that provide equal employment opportunities for all minorities, and that it eradicate the effects of its past and present unlawful employment practices;

151.   An order restoring plaintiffs and class members to their rightful positions at Abercrombie, or in lieu of reinstatements, an order for front pay benefits;

152.   Back pay (including interest and benefits) for individual plaintiffs and class members;

153.   All damages sustained as a result of Abercrombie's conduct, including damages for emotional distress, humiliation, embarrassment, and anguish, according to proof;

154.   Exemplary and punitive damages in an amount commensurate with Abercrombie's ability to pay and to deter future conduct;

1    155.    Costs incurred herein, including reasonable attorneys' fees to the extent

2  allowable by law;

3    156.    Pre-judgment and post-judgment interest, as provided by law; and

4    157.    Such other and further legal and equitable relief as this Court deems

5  necessary, just, and proper.

6

7  Dated: June 10, 2004

8  Respectfully submitted,

9  Julie Su                                          Thomas A. Saenz
   Minah Park                                        Shaheena Ahmad Simons
   ASIAN PACIFIC AMERICAN LEGAL                      MEXICAN AMERICAN LEGAL DEFENSE
10     CENTER                                            AND EDUCATIONAL FUND
   1145 Wilshire Boulevard, 2nd Floor               634 South Spring Street
11 Los Angeles, CA  90017                            Los Angeles, CA  90014
   Telephone:  (213) 977-7500                        Telephone:  (213) 629-2512
12 Facsimile:  (213) 977-7595                        Facsimile:  (213) 629-0266

13 Kimberly West-Faulcon                             Bill Lann Lee
   NAACP LEGAL DEFENSE AND                           Kelly M. Dermody
14     EDUCATIONAL FUND, INC.                        Eve H. Cervantez
   1055 Wilshire Blvd., Suite 1480                  Jahan C. Sagafi
15 Los Angeles, CA 90017                             LIEFF, CABRASER, HEIMANN
   Telephone: (213) 975-0211                            & BERNSTEIN, LLP
16 Facsimile:  (213) 202-5773                        275 Battery Street, 30th Floor
                                                     San Francisco, CA  94111-3339
17                                                   Telephone:  (415) 956-1000
                                                     Facsimile:  (415) 956-1008
18

19 Sidney L. Gold                                    Bryan L. Clobes
   Traci M. Greenberg                                Melody Forrester
20 SIDNEY L. GOLD & ASSOCIATES, P.C.                 Jeffrey D. Lerner
   1835 Market Street, Suite 515                     MILLER FAUCHER AND CAFFERTY
21 Philadelphia, PA 19103                            One Logan Square, Suite 1700
   Telephone:  (215) 569-1999                        Philadelphia, PA 19103
22                                                   Telephone:  (215) 864-2800

23

24

25

26

27

28

1

Cleo Fields
RAINBOW/PUSH COALITION

2

930 East 50th Street
Chicago, IL 60615

3

Telephone:  (773) 373-3366

4

Joseph C. Kohn
Martin J. D'Urso
Diana Liberto
Hilary Cohen
KOHN, SWIFT & GRAF, P.C.
One South Broad Street, Suite 2100
Philadelphia, PA 19107
Telephone:  (215) 238-1700

5

6

James F. Keller
Zachary Gottesman
GOTTESMAN & ASSOCIATES

7

2121 URS Center
36 East 7th Street

8

Cincinnati, OH 45202
(513) 651-2121

9

10

By:    /s/ Bill Lann Lee
          Bill Lann Lee

11

*Attorneys for Plaintiffs*

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1

## DEMAND FOR JURY TRIAL

2

Plaintiffs hereby demand a trial by jury as to all issues so triable.

3 Dated: June 10, 2004

4 Respectfully submitted,

5 Julie Su                                          Thomas A. Saenz
  Minah Park                                        Shaheena Ahmad Simons
6 ASIAN PACIFIC AMERICAN LEGAL                      MEXICAN AMERICAN LEGAL DEFENSE
    CENTER                                            AND EDUCATIONAL FUND
7

8 Kimberly West-Faulcon                             Bill Lann Lee
  NAACP LEGAL DEFENSE AND                           Kelly M. Dermody
9   EDUCATIONAL FUND, INC.                          Eve H. Cervantez
                                                    Jahan C. Sagafi
10                                                  LIEFF, CABRASER, HEIMANN
                                                      & BERNSTEIN, LLP
11
  Sidney L. Gold                                    Bryan L. Clobes
12 Traci M. Greenberg                               Melody Forrester
   SIDNEY L. GOLD & ASSOCIATES, P.C.                Jeffrey D. Lerner
13                                                  MILLER FAUCHER AND CAFFERTY

14 Cleo Fields                                      Joseph C. Kohn
   RAINBOW/PUSH COALITION                           Martin J. D'Urso
15                                                  Diana Liberto
                                                    Hilary Cohen
16                                                  KOHN, SWIFT & GRAF, P.C.

17 James F. Keller
   Zachary Gottesman
18 GOTTESMAN & ASSOCIATES

19                              By:    /s/ Bill Lann Lee
                                       Bill Lann Lee
20
                                  *Attorneys for Plaintiffs*
21

22

23

24

25

26

27

28