1   Bill Lann Lee (SBN 108452)
Kelly M. Dermody (SBN 171716)
2   Eve H. Cervantez (SBN 164709)
Elizabeth A. Alexander (pro hac vice)
3   Jahan C. Sagafi (SBN 224887)
LIEFF, CABRASER, HEIMANN &
4   BERNSTEIN, LLP
275 Battery Street, 30th Floor
5   San Francisco, CA  94111-3339
Telephone:  (415) 956-1000
6   Facsimile:  (415) 956-1008

7   Thomas A. Saenz (SBN 159430)     Joseph C. Kohn
Shaheena Ahmad Simons (SBN 225520)  Martin J. D'Urso
8   MEXICAN AMERICAN LEGAL DEFENSE  Hilary Cohen
AND EDUCATIONAL FUND       KOHN, SWIFT & GRAF, P.C.
9   634 South Spring Street         One South Broad Street, Suite 2100
Los Angeles, CA  90014          Philadelphia, PA 19107
10  Telephone:  (213) 629-2512       Telephone:  (215) 238-1700
Facsimile:  (213) 629-0266       Facsimile:  (215) 238-1968
11

12  *Attorneys for Plaintiffs*

13  [Additional counsel listed on signature page]

14             UNITED STATES DISTRICT COURT
           NORTHERN DISTRICT OF CALIFORNIA
15         SAN FRANCISCO / OAKLAND DIVISION

16  EDUARDO GONZALEZ, ANTHONY     Case No.  03-2817 SI
    OCAMPO, ENCARNACION
17  GUTIERREZ, JOHAN MONTOYA,
    JUANCARLOS GÓMEZ-MONTEJANO,  **FOURTH AMENDED CLASS ACTION**
18  JENNIFER LU, AUSTIN CHU, IVY     **COMPLAINT FOR INJUNCTIVE AND**
    NGUYEN, ANGELINE WU, ERIC      **DECLARATORY RELIEF AND**
19  FIGHT, CARLA GRUBB, DAVID      **DAMAGES, FOR VIOLATIONS OF TITLE**
    CULPEPPER, PATRICE DOUGLASS,  **VII OF THE CIVIL RIGHTS ACT OF 1964,**
20  ROBAIR SHERROD, BRANDY HAWK,  **42 U.S.C. § 2000e; 42 U.S.C. § 1981; AND**
    and ANDRE STEELE on behalf of     **CALIFORNIA FAIR EMPLOYMENT AND**
21  themselves and all others similarly situated, **HOUSING ACT**

22           Plaintiffs,        **DEMAND FOR JURY TRIAL**

23      v.

24  ABERCROMBIE & FITCH STORES,
    INC., A&F CALIFORNIA, LLC, A&F
25  OHIO, INC., AND ABERCROMBIE &
    FITCH MANAGEMENT CO.
26
           Defendants.
27

28

Individual and Representative Plaintiffs Eduardo Gonzalez, Anthony Ocampo, Encarnacion Gutierrez, Johan Montoya, Juancarlos Gomez-Montejano, Jennifer Lu, Austin Chu, Ivy Nguyen, Angeline Wu, Eric Fight, Carla Grubb, David Culpepper, Patrice Douglass, Robair Sherrod, Brandy Hawk, and Andre Steele (collectively "Plaintiffs") on behalf of themselves and all others similarly situated, allege, upon personal knowledge as to themselves and information and belief as to other matters, as follows:

## INTRODUCTORY STATEMENT

1.     Defendants Abercrombie & Fitch Stores, Inc., A&F California, LLC, and A&F Ohio, Inc., and Abercrombie & Fitch Management Co. (hereinafter collectively identified as "Abercrombie," "A&F," or "the Company") are a national retail clothing seller that discriminates against minority individuals, including Latinos, Asian Americans, and African Americans (hereinafter, collectively, "minorities") on the basis of race, color, and/or national origin, with respect to hiring, firing, job assignment, compensation, promotion to in-store managerial positions, and other terms and conditions of employment by enforcing a nationwide corporate policy of preferring white employees for in-store sales and management positions, desirable job assignments, and favorable work schedules in its stores throughout the United States.

2.     Abercrombie recruits, hires, and maintains a disproportionately white sales force (called Brand Representatives) who act as salespeople and recruiters of other potential store employees, and a disproportionately white store manager workforce (comprising Managers-in-Training, Assistant Managers, Store Managers, and General Managers), who manage the day-to-day operations of the stores.

3.     Abercrombie systematically refuses to hire qualified minority applicants as Brand Representatives to work on the sales floor and store managers to manage the store, and discourages applications from minority applicants for such positions. To the extent that it hires minorities, it channels them to stock room and overnight shift positions and away from visible sales positions, keeping them out of the public eye. In addition, Abercrombie systematically fires qualified minority Brand Representatives and store managers in furtherance of its discriminatory policies or practices.

4.      Abercrombie implements its discriminatory employment policies and practices in part through a detailed and rigorous "Appearance Policy," which requires that all Brand Representatives must exhibit the "A&F Look." The "A&F Look" is a virtually all-white image that Abercrombie uses not only to market its clothing, but also to implement its discriminatory employment policies or practices.

5.      When people who do not fit the "A&F Look" inquire about employment, managers sometimes tell them that the store is not hiring, or may provide them with applications even though they have no intention of considering them for employment. If applicants who do not fit the "A&F Look" submit applications, managers and/or Brand Representatives acting at their direction sometimes throw them away without reviewing them.

6.      Abercrombie publishes and distributes to its employees a "Look Book" that explains the importance of the Appearance Policy and the "A&F Look," and that closely regulates the Brand Representatives' and store managers' appearance. The Company requires its managers to hire and continue to employ only Brand Representatives and store managers who fit within the narrow confines of the "Look Book," resulting in a disproportionately white Brand Representative workforce.

7.      Abercrombie also uses visual media to reinforce to managers responsible for recruitment, hiring, assignment, compensation, termination, and other terms and conditions of employment of Brand Representatives and store managers the importance of adhering to the virtually all-white A&F image in employment decisions. Each store prominently posts large photographs of models – virtually all of whom are white. In addition, the Company publishes and sells A&F Quarterly, a magazine/catalog featuring almost exclusively white models. Some stores also display A&F TV, a television program played on a loop featuring Brand Representatives who fit the "A&F Look." Again, almost every Brand Representative shown is white. Abercrombie corporate representatives and managers use these displays and publications to portray and promote the "A&F Look" to employees, customers, applicants, and potential applicants, to discourage and deter minority applicants, and to justify terminating minority employees.

8.      The Company rigorously maintains the "A&F Look" by careful scrutiny and monitoring of its stores by regional and district managers and corporate representatives. These managers and corporate representatives visit stores frequently to ensure, among other things, that the store is properly implementing the Company's discriminatory employment policies and practices. These visits are referred to as "blitzes."  When managers or corporate representatives discover that minority Brand Representatives or store managers have been hired, they have directed that these employees be fired, moved to the stock room or overnight shift, or have their hours "zeroed out," which is the equivalent of termination.

9.      The Company also scrutinizes and enforces compliance with the "A&F Look" by requiring all stores to submit a picture of roughly 10 of their Brand Representatives who fit the "Look" to headquarters each quarter. The corporate officials then select roughly 15 stores' pictures as exemplary models that perpetuate the Company's discriminatory employment policies and practices. They then disseminate these pictures to the roughly 700 A&F stores. The Brand Representatives in the pictures are almost invariably white. This practice and policy, like the others described above, constitutes an official directive to give preference to white Brand Representatives, store managers, and applicants, and to discriminate against minority Brand Representatives, store managers, and applicants.

10.     The A&F image is not limited to appearance; the Company accomplishes its discriminatory employment policies or practices by defining its desired "classic" and "cool" workforce as exclusively white. It seeks to hire Brand Representatives and store managers who convey a certain image. This A&F image is decidedly non-minority. In order to perpetuate the A&F image, Abercrombie identifies specific colleges from which each store should recruit its employees, even though neither the Brand Representative position nor the store manager positions require any of the skills or abilities acquired in college, much less in any specific college.  Abercrombie also encourages the recruitment and hiring of members of specified overwhelmingly white fraternities and sororities, and of students who participate in certain overwhelmingly white intercollegiate sports. However, the Company does not encourage recruitment from fraternities, sororities, or sports teams with significant minority populations. To

further reinforce to store managers the importance of hiring white students who fit the Abercrombie image, the Company requires weekly reports on the number of Brand Representatives who attend targeted colleges and who fit the emphasis on fraternity/sorority membership and athletic team involvement.

11.    This class action is accordingly brought by minority store employees and applicants for Brand Representative and Manager-in-Training positions on behalf of themselves individually and all minority applicants and employees against whom Abercrombie has discriminated on the basis of race, color, and/or national origin. Abercrombie has maintained and continues to maintain a pervasive policy or practice of discrimination based on race, color, and/or national origin in denying employment, desirable job assignments, job transfers, allocation of weekly hours, compensation, promotion to store management and other terms and conditions of employment to minorities in Abercrombie stores throughout the United States.

12.    This action seeks an end to these discriminatory policies or practices, an award of backpay and front pay, as well as compensatory damages, punitive damages, and injunctive relief, including rightful place relief for all class members.

## JURISDICTION, VENUE, AND INTRADISTRICT ASSIGNMENT

13.    This Court has jurisdiction over this action pursuant to 28 U.S.C. §§ 1331 and 1343.

14.    Venue is proper in this District pursuant to 28 U.S.C. § 1391(b).   Members of the Plaintiff class reside in California and throughout the United States. Defendant Abercrombie is a Delaware corporation licensed to do business in California. It has retail stores throughout California and this District.  Many of the acts complained of occurred in this State and this District and gave rise to the claims alleged.

15.    Intradistrict assignment is proper in the San Francisco/Oakland Division because (1) some of the events and omissions that give rise to the claims of Plaintiff Anthony Ocampo occurred in San Mateo County, (2) some of the events and omissions that give rise to the claims of Plaintiff David Culpepper occurred in San Francisco County, and (3) some of the events

1 and omissions that give rise to the claims of Plaintiff Patrice Douglass occurred in Alameda

2 County.

3 **PARTIES**

4       16.     Plaintiff Eduardo Gonzalez is a minority resident of Palo Alto, California,

5 where he is a student at Stanford University. He was denied a position as a Brand Representative

6 at the Abercrombie store in the Valley Fair Mall in Santa Clara, California in August 2002, on

7 account of his race, color, and/or national origin.

8       17.     Plaintiff Anthony Ocampo is a minority resident of Palo Alto, California,

9 where he is a student at Stanford University. He was denied a position as a Brand Representative

10 at the Abercrombie store in the Hillsdale Shopping Center in San Mateo, California, in or around

11 January 2000 on account of his race, color, and/or national origin. He was also denied a position

12 as a Brand Representative at the Abercrombie Store in the Glendale Galleria in Glendale,

13 California in June 2000 on account of his race, color, and/or national origin.

14       18.     Plaintiff Encarnacion Gutierrez is a minority resident of South San

15 Francisco, California.  He was denied a position as a Brand Representative at the Abercrombie

16 store in the Third Street Promenade in Santa Monica, California in June or July 2001, on account

17 of his race, color, and/or national origin.

18       19.     Plaintiff Johan Montoya is a minority resident of Goleta, California, where

19 he is a student at the University of California at Santa Barbara. He was denied a position as a

20 Brand Representative at the Abercrombie store in the Topanga Mall in Canoga Park, California in

21 August or September 2002 on account of his race, color, and/or national origin.

22       20.     Plaintiff Juancarlos Gomez-Montejano is a minority resident of Los

23 Angeles, California. He was employed as a Brand Representative at the Abercrombie store at the

24 Third Street Promenade in Santa Monica, California, from November 1998 to April 1999, when

25 he was terminated on account of his race, color, and/or national origin.

26       21.     Plaintiff Jennifer Lu is a minority resident of Irvine, California, where she

27 is a student at the University of California at Irvine. She was employed as a Brand

28 Representative in the Abercrombie store in the Crystal Court Mall in Costa Mesa, California,

1   from September 2000 to February 2003, when she was terminated on account of her race, color,

2   and/or national origin.

3           22.     Plaintiff Austin Chu is a minority resident of Irvine, California, where he is

4   a student at the University of California at Irvine. He was employed as a Brand Representative in

5   the Abercrombie store in the Crystal Court Mall in Costa Mesa, California from June 2001 to

6   March 2003, when he was constructively discharged on account of his race, color, and/or national

7   origin.

8           23.     Plaintiff Ivy Nguyen is a minority resident of Anaheim, California, where

9   she is a student at the University of California at Irvine. She was employed as a Brand

10  Representative in the Abercrombie store in the Crystal Court Mall in Costa Mesa, California,

11  from June 2002 to February 2003, when she was terminated on account of her race, color,

12  national origin, and/or gender.

13          24.     Plaintiff Angeline Wu is a minority resident of Irvine, California where she

14  is a student at the University of California at Irvine. She was employed as a Brand

15  Representative in the Abercrombie store in the Crystal Court Mall in Costa Mesa, California,

16  from August 2002 to February 2003, when she was terminated on account of her race, color,

17  national origin, and/or gender.

18          25.     Plaintiff Eric Fight is a minority resident of Venice, California. He was

19  employed as a Brand Representative in the Abercrombie store in the Third Street Promenade in

20  Santa Monica, California, from roughly May 2003 to June 2003, but was channeled to a stock

21  room role (a non-sales position) due to his race or color. He was constructively discharged in or

22  around June 2003 when he learned that he was not allowed to work on the sales floor due to his

23  race or color and that he had been misled by the manager with whom he had interviewed into

24  believing that there were no sales floor Brand Representative positions available.

25          26.     Plaintiff Carla Grubb is a minority resident of Bakersfield, California,

26  where she is a student at California State University at Bakersfield. She began working as a

27  Brand Representative in the Abercrombie store in the Bakersfield Valley Plaza Mall in

28

1   Bakersfield, California in November 2002. In or after January 2003, she was constructively

2   discharged on account of her race or color.

3              27.     Plaintiff David Culpepper is a minority resident of Berkeley, California,

4   where he is a graduate student at the University of California at Berkeley. He was denied

5   positions as a Brand Representative at the Abercrombie store in the SF Shopping Center in San

6   Francisco, California in June 2003, and at the SF Stonestown Galleria in San Francisco,

7   California in March 2003 on account of his race or color.

8              28.     Plaintiff Patrice Douglass is a minority resident of El Sobrante, California,

9   where she is a student at the University of California, Santa Cruz. She was denied a position as a

10  Brand Representative at the Abercrombie store in the Bay Street shopping area in Emeryville,

11  California in or about May 2003 on account of her race, color, and/or national origin.

12             29.     Plaintiff Robair Sherrod is a minority resident of Carson, California, where

13  he is a student at California State University at Dominguez Hills. He was denied a position as a

14  Brand Representative at the Abercrombie store at the South Bay Galleria in Redondo Beach,

15  California in or about December 2002.

16             30.     Plaintiff Brandy Hawk is a minority resident of Burlington, New Jersey,

17  where she is a student of the College of New Jersey. She was denied a position as a Brand

18  Representative at the Abercrombie store in Cherry Hill, New Jersey in or about May 2003.

19             31.     Plaintiff Andre Steele is a minority resident of Waukegan, Illinois, and is a

20  graduate of DePaul University. He was hired by Abercrombie as a Brand Representative in 1998

21  and then became an Assistant Manager in 1999. He was denied a promotion to Store Manager at

22  the Gurnee Mills Mall store on or about September 1, 2002.

23             32.     Defendant Abercrombie & Fitch Stores, Inc. is an Ohio corporation and a

24  wholly owned subsidiary of Abercrombie. Based on the representations of defendants, from July

25  1996 to August 2000, during which time it was a Delaware corporation, Abercrombie & Fitch

26  Stores, Inc. operated all California Abercrombie stores; from August 2000, when it became an

27  Ohio corporation, to May 2002, it operated all Abercrombie stores; and since May 2002, it has

28  operated all Abercrombie stores outside of California and Ohio.

33.     Defendant A&F California, LLC is an Ohio limited liability company and a wholly owned subsidiary of Abercrombie. Based on the representations of defendants, since May 2002, it has operated all Abercrombie stores in California.

34.     Defendant A&F Ohio, Inc. is an Ohio corporation and a wholly owned subsidiary of Abercrombie. Based on the representations of defendants, since May 2002, it operated all Abercrombie stores in Ohio.

35.     Defendant Abercrombie & Fitch Management Co., is an Ohio corporation. Based on the representations of defendants, it operates the Abercrombie corporate offices in Ohio.

36.     Defendants are a national retail clothing seller primarily marketing to teenagers and young adults. According to the Company, it took in $1.7 billion in revenue during fiscal year 2003, a 7% increase over the previous year. As of January 31, 2004, the Company operated 700 stores.

37.     Abercrombie operates stores (and/or departments within Abercrombie & Fitch stores) under three different names: "Abercrombie & Fitch" (the "Adult" store), "Hollister," and "A&F Kids." Although each type of store offers different product lines, they all follow the same human resources policies and practices, participate in the same discrimination, and are run by the same management. Applicants to and employees of each type of store are included in the proposed Class.

## CLASS ACTION ALLEGATIONS

38.     Plaintiffs bring this Class Action pursuant to Fed. R. Civ. P. 23(a), (b)(2), and (b)(3) on behalf of a class of: (a) applicants for Brand Representative and Manager-in-Training positions with Abercrombie who have been, continue to be, or in the future may be discouraged from applying or denied employment since February 24, 1999, and (b) all past, present, and future minority Abercrombie in-store hourly employees,   Managers-in-Training, Assistant Managers and Store Managers who have been, continue to be, or in the future denied desirable job assignments, job transfers, desirable hours, compensation, promotions to store management positions, and/or other terms and conditions of employment on the basis of their

1    race, color, and/or national origin, and/or who have been terminated on account of the policies or

2    practices complained of herein since February 24, 1999.

3         39.    Plaintiffs are members of the class they seek to represent.

4         40.    The members of the class identified herein are so numerous that joinder of

5    all members is impracticable. The number of class members is currently indeterminate, but is

6    certainly larger than can be addressed through joinder. As of March 26, 2004, Abercrombie had

7    approximately 30,200 employees. In addition, temporary employees are hired during peak

8    periods, such as the holiday season. Each of Abercrombie's roughly 700 stores employs very few

9    minority Brand Representatives and store managers, but each store, on average, annually receives

10   numerous applications from qualified minorities who are potential Brand Representatives and/or

11   store managers. Furthermore, as a result of Abercrombie's systematic discriminatory hiring

12   practices, an unknown number of minority applicants have also been deterred from applying.

13   Thus, although the precise number of qualified minority applicants who are not hired and/or who

14   are fired or otherwise discriminated against is currently unknown, it is far greater than can be

15   feasibly addressed through joinder.

16        41.    There are questions of law and fact common to the class, and these

17   questions predominate over any questions affecting only individual members. Common

18   questions include, among others: (1) whether Abercrombie's policies or practices discriminate

19   against minority employees and applicants; (2) whether Abercrombie's use of the "A&F Look"

20   and image as an employment policy or practice discriminates against minority applicants and

21   employees; (3) whether Abercrombie's policies and practices violate Title VII; (4) whether

22   Abercrombie's policies or practices violate 42 U.S.C. § 1981; and (4) whether compensatory and

23   punitive damages, injunctive relief, and other equitable remedies for the class are warranted.

24        42.    The representative Plaintiffs' claims are typical of the claims of the class.

25        43.    The representative Plaintiffs will fairly and adequately represent and

26   protect the interests of the members of the class. Plaintiffs have retained counsel competent and

27   experienced in complex class actions, employment discrimination litigation, and the intersection

28   thereof.

44.     Class certification is appropriate pursuant to Fed. R. Civ. P. 23(b)(2) because Abercrombie has acted and/or refused to act on grounds generally applicable to the class, making appropriate declaratory and injunctive relief with respect to Plaintiffs and the class as a whole. The class members are entitled to injunctive relief to end Abercrombie's common, uniform, and unfair racially discriminatory personnel policies and practices.

45.     Class certification is also appropriate pursuant to Fed. R. Civ. P. 23(b)(3) because common questions of fact and law predominate over any questions affecting only individual members of the class, and because a class action is superior to other available methods for the fair and efficient adjudication of this litigation. The class members have been damaged and are entitled to recovery as a result of Abercrombie's common, uniform, and unfair racially discriminatory personnel policies and practices. Abercrombie has computerized payroll and personnel data that will make calculation of damages for specific class members relatively simple. The propriety and amount of punitive damages are issues common to the class.

## CLAIMS OF REPRESENTATIVE PLAINTIFFS

**Eduardo Gonzalez**

46.     Plaintiff Eduardo Gonzalez, a Latino male, is a student at Stanford University.   He applied for a position as a Brand Representative at the Abercrombie store in the Valley Fair Mall in Santa Clara, California on August 7, 2002. An Abercrombie manager suggested that he apply to work in the stock room or on the overnight crew in a non-sales position.  Nevertheless, Mr. Gonzalez returned to the store for a group interview for the Brand Representative position on August 27, 2002.   Mr. Gonzalez was not hired as a Brand Representative.  Mr. Gonzalez was qualified for the job. Indeed, immediately following his Abercrombie interview, he crossed the hall within the same mall to apply for a job at Banana Republic, a similar retail clothing store that competes directly with Abercrombie for customers and employees. An employee of Banana Republic asked Mr. Gonzalez if he was interested in applying to work as a manager. He applied to work as a sales associate, and worked for Banana Republic in such a capacity through the academic year. Despite knowing of his qualifications, Abercrombie refused to hire Mr. Gonzalez based on his race, color, and/or national origin.

47.     Abercrombie has discriminated against Mr. Gonzalez on the basis of his race, color and/or national origin by denying him employment because he is not white.

48.     On or about April 25, 2003, Mr. Gonzalez filed a charge of discrimination with the Equal Employment Opportunity Commission ("EEOC"). Mr. Gonzalez received a copy of his Notice of Right to Sue from the California Department of Fair Employment and Housing ("DFEH"), dated April 29, 2003. Attached to this Complaint as Exhibit A and incorporated by reference are copies of that charge and that notice. On or about December 30, 2003, the EEOC issued Mr. Gonzalez a notice of right to sue. Attached to this Complaint as Exhibit P and incorporated by reference is a copy of that notice.

**Anthony Ocampo**

49.     Plaintiff Anthony Ocampo, a Filipino American male, is a student at Stanford University. From December 1999 to January 2000, he worked part time as a Brand Representative at the Abercrombie store in the Glendale Galleria in Glendale, California near his family's home.

50.     It is common practice at Abercrombie for college students to work at the Abercrombie near their family home during vacations, and then to transfer to a store near their college during the school year (or vice versa). Therefore, when Mr. Ocampo returned to Stanford, he attempted to apply for a position as Brand Representative at the Abercrombie store in the Hillsdale Shopping Center in San Mateo, California.   Mr. Ocampo was told that he would be contacted regarding a stock person position, but not for the position of Brand Representative. Mr. Ocampo never was contacted for any position with Abercrombie, and when he contacted the manager there, he was told that he would have to reapply.

51.     Later that year, when he returned home for summer vacation in June of 2000, Mr. Ocampo applied to work once again at the Glendale Galleria Abercrombie. He was told that there were "too many Filipinos" working at that location. He was not even given the opportunity to submit a written application.   Mr. Ocampo was qualified for the job of Brand Representative, in part based on his prior experience doing that exact job at the Abercrombie

store in the Glendale Galleria. Abercrombie refused to hire Mr. Ocampo, despite knowing of his qualifications, based on his race, color, and/or national origin.

52.     Abercrombie has discriminated against Mr. Ocampo on the basis of his race, color and/or national origin (a) by denying him employment because he is not white; and (b) by refusing to transfer him from one store to another on the same terms as white Brand Representatives.

**Encarnacion Gutierrez**

53.     Plaintiff Encarnacion Gutierrez, a Latino male, graduated from the University of California at Los Angeles in 2002 with a B.S. in Civil Engineering and from the University of California at Berkeley in 2003 with an M.S. in Structural Engineering. He applied to work as a Brand Representative at the Abercrombie store in the Third Street Promenade in Santa Monica, California in June or July 2001, and later returned for a group interview. Mr. Gutierrez was qualified for the job. Abercrombie refused to hire Mr. Gutierrez, despite knowing of his qualifications, based on his race, color, and/or national origin.

54.     During his initial visit to the store, Mr. Gutierrez observed that the staff was virtually exclusively white. The manager who conducted the group interview was white. He asked no questions regarding prior work experience or relevant skills. During the interview, the manager asked a Filipino-American applicant whether he spoke English even though the applicant had already answered several questions and demonstrated his fluency in English. Mr. Gutierrez saw the manager write "phil" next to the applicant's name.

55.     Abercrombie has discriminated against Mr. Gutierrez on the basis of his race, color, and/or national origin by denying him employment because he is not white.

56.     On or about May 21, 2002, Mr. Gutierrez filed a charge of discrimination with the EEOC. Attached to this Complaint as Exhibit B, and incorporated by reference, is a copy of that charge. On or about December 30, 2003, the EEOC issued Mr. Gutierrez a notice of right to sue.  Attached to this Complaint as Exhibit Q and incorporated by reference is a copy of that notice.

**Johan Montoya**

57.    Plaintiff Johan Montoya, a Latino male, is a student at the University of California at Santa Barbara. He applied for a position as a Brand Representative at the Abercrombie store in the Topanga Mall in Canoga Park, California in August or September 2002, participated in a group interview for the job and submitted a paper application. He was qualified for the job, in part based on his prior work experience as a sales associate at another retail establishment in the same mall. Abercrombie refused to hire Mr. Montoya despite knowing of his qualifications, based on his race, color, and/or national origin.

58.    Abercrombie has discriminated against Mr. Montoya on the basis of his race, color, and/or national origin by denying him employment because he is not white.

59.    On or about April 22, 2003, Mr. Montoya filed a charge of discrimination with the EEOC. Mr. Montoya received a copy of his Notice of Right to Sue from the DFEH, dated April 29, 2003. Attached to this Complaint as Exhibit C and incorporated by reference, are copies of that charge and that notice. On or about December 30, 2003, the EEOC issued Mr. Montoya a notice of right to sue. Attached to this Complaint as Exhibit R and incorporated by reference is a copy of that notice.

**Juancarlos Gomez-Montejano**

60.    Plaintiff Juancarlos Gomez-Montejano, a Latino male, worked as a Brand Representative at the Abercrombie store at the Third Street Promenade in Santa Monica, California from November 22, 1998 until August 1999, while he was a student at the University of California at Los Angeles. During that time, he regularly worked roughly 10-15 hours per week. After noticing that his work hours had been reduced, Mr. Gomez-Montejano requested his personnel file. In August 1999 he learned that Company records showed that, unbeknownst to him, he had been fired from his position. He had never been previously informed of this termination, nor was he advised of any reasons for the termination.

61.    In or around February or March 1999, Abercrombie representatives from Ohio corporate headquarters visited the store on a "blitz," and observed that there were photographs of each of the Brand Representatives posted in an employee area in the back. A

corporate official pointed to the pictures of four or five minority Brand Representatives, including Mr. Gomez-Montejano, and directed store management to "zero them out." This expression is used within the Company to signify that the manager assigning work shifts should begin assigning that person zero hours each week. In the following weeks, Mr. Gomez-Montejano continued to inform his manager that he was available to work many hours a week, just as he had throughout his tenure at Abercrombie; however, each week he received a schedule giving him zero hours. Eventually, he realized that this "zeroed out" schedule might be permanent. Therefore, he requested his personnel file in July 1999, and, after his second request, received a copy of a company document stating that he had been terminated.

62. Abercrombie has discriminated against Mr. Gomez-Montejano on the basis of his race, color, and/or national origin by (a) terminating his employment because he is not white; and (b) refusing to give him desirable hours/assignments on the same terms as white Brand Representatives.

63. On or about December 21, 1999, Mr. Gomez-Montejano filed a charge of discrimination with the EEOC. Attached to this Complaint as Exhibit D, and incorporated by reference, is a copy of that charge. After investigating, the EEOC issued a Letter of Determination, finding that Abercrombie had discriminated against Mr. Gomez-Montejano and against "Latinos and Blacks, as a class." Attached to this Complaint as Exhibit E, and incorporated by reference, is a copy of that letter. On or about December 21, 1999, the DFEH issued to Mr. Gomez-Montejano a Notice of Right to Sue. Attached to this Complaint as Exhibit F, and incorporated by reference, is a copy of that notice. On or about December 30, 2003, the EEOC issued Mr. Gomez-Montejano a notice of right to sue. Attached to this Complaint as Exhibit S and incorporated by reference is a copy of that notice.

**Jennifer Lu**

64. Plaintiff Jennifer Lu is an Asian American female and a student at the University of California at Irvine. She worked as a Brand Representative at the Abercrombie store in the Crystal Court Mall in Costa Mesa, California from September 2000 to February 2003.

1   She was entrusted with responsibilities that only the most trustworthy and more senior staff were

2   given.

3           65.     In or around January 2003, representatives from corporate and/or regional

4   headquarters visited the Crystal Court Mall store on an inspection tour, or "blitz." These

5   headquarters/regional representatives reiterated to the Store Manager and other managers the

6   importance of having a predominantly white Brand Representative workforce, with fewer

7   minorities. Specifically, corporate employees communicated this directive by pointing to a

8   picture of a white model hanging in the store, and making a statement to the effect of "This is the

9   'A&F Look' – you need to make your store look more like this." Soon after this "blitz," on or

10  about February 8, 2003, roughly five Asian American Brand Representatives, including Plaintiffs

11  Jennifer Lu, Austin Chu, Ivy Nguyen, and Angeline Wu were terminated and/or constructively

12  discharged, and one African American Brand Representative was transferred to a behind-the-

13  scenes stockroom position at another Abercrombie store. This action was not premised on any

14  legitimate business consideration, such as a lessened need for Brand Representatives or poor

15  work performance. The store hired several white Brand Representatives within two weeks of

16  firing Ms. Lu.

17          66.     On February 8, 2003, Ms. Lu learned that she had been fired. She

18  informed the Store Manager that she was willing to be flexible with shift assignments, and that if

19  the staffing needs picked up in the summer months or other peak shopping seasons, she would

20  like to be considered.  Mr. Richter told her that she was not needed at that time nor would she be

21  needed in the future.

22          67.     Abercrombie has discriminated against Ms. Lu on the basis of her race,

23  color, and/or national origin by (a) terminating her employment because she is not white; and

24  (b) assigning her fewer hours than similarly-situated white Brand Representatives.

25          68.     On or about April 22, 2003, Ms. Lu filed a charge of discrimination with

26  the EEOC. Ms. Lu received a copy of her Notice of Right to Sue from the DFEH, dated April 29,

27  2003.  Attached to this Complaint as Exhibit G and incorporated by reference, are copies of that

28  charge and that notice. On or about December 30, 2003, the EEOC issued Ms. Lu a notice of

right to sue.  Attached to this Complaint as Exhibit T and incorporated by reference is a copy of that notice.

**Austin Chu**

69.     Plaintiff Austin Chu is an Asian American male and a student at the University of California at Irvine. He worked as a Brand Representative at the Abercrombie store in the Crystal Court Mall in Costa Mesa, California from June 2001 to March 2003, when he was constructively discharged.

70.     Immediately after the January corporate "blitz" visit described herein in the preceding paragraphs, Mr. Chu's hours were reduced from the usual 10-15 hours per week he had worked during his year and a half tenure to roughly zero hours per week. This "zeroing out" began on or about February 8, 2003 and lasted until approximately March 26, 2003, during which six-week period Mr. Chu was assigned only one four-hour shift (in contrast to his usual 60-90 hours for such a six-week period), despite notifying his managers each week of his availability and interest in working the usual 10-15 hours per week.   Mr. Chu attempted to gain more hours by offering to fill in for those who were unavailable, and he was denied the opportunity to work more hours. Because he was not assigned any hours to work, Mr. Chu tendered his resignation on March 26, 2003. Mr. Chu was known as one of the most effective Brand Representatives in the store due to his gregarious nature.

71.     Abercrombie has discriminated against Mr. Chu on the basis of his race, color, and/or national origin by (a) constructively terminating his employment because he is not white; and (b) assigning him fewer hours than similarly-situated white Brand Representatives.

72.     On or about April 22, 2003, Mr. Chu filed a charge of discrimination with the EEOC. Mr. Chu received a copy of his Notice of Right to Sue from the DFEH, dated April 29, 2003. Attached to this Complaint as Exhibit H and incorporated by reference, are copies of that charge and that notice. On or about December 30, 2003, the EEOC issued Mr. Chu a notice of right to sue. Attached to this Complaint as Exhibit U and incorporated by reference is a copy of that notice.

**Ivy Nguyen**

73.     Plaintiff Ivy Nguyen is an Asian American female and a student at the University of California at Irvine. She worked as a Brand Representative in the Abercrombie store in the Crystal Court Mall in Costa Mesa, California from approximately June 2002 until she was fired sometime during February 2003, shortly after the corporate "blitz" described herein in the preceding paragraphs.

74.     Abercrombie maintained a target ratio for the number of male Brand Representatives relative to female Brand Representatives of 60:40. This policy was in writing on a board in the back of the store, designating the recruiting goal. In order to meet the target ratio, Brand Representatives were encouraged to recruit more men than women to work as Brand Representatives.

75.     Immediately after the corporate "blitz" described in paragraph 62, corporate representatives reiterated the 60:40 policy to management at the Crystal Court Mall store by indicating that there were too many women working in the store.

76.     Abercrombie has discriminated against Ms. Nguyen on the basis of her race, color, national origin, and/or gender by (a) terminating her employment because she is not white or male; and (b) assigning her fewer hours than similarly-situated white or male Brand Representatives.

77.     On or about June 16, 2003, Ms. Nguyen filed a charge of discrimination with the EEOC. Attached to this Complaint as Exhibit I and incorporated by reference, is a copy of that charge. On or about December 30, 2003, the EEOC issued Ms. Nguyen a notice of right to sue.  Attached to this Complaint as Exhibit V and incorporated by reference is a copy of that notice.

**Angeline Wu**

78.     Plaintiff Angeline Wu is an Asian American female and a student at the University of California at Irvine. She worked as a Brand Representative at the Abercrombie store in the Crystal Court Mall in Costa Mesa, California from August 2002 to February 2003.

79.     Ms. Wu worked approximately 5-10 hours a week, at least 2-3 shifts per week. Shortly after the corporate "blitz" described herein in the preceding paragraphs, Ms. Wu's hours were reduced and eventually "zeroed out." Ms. Wu was then terminated in February 2003.

80.     Abercrombie maintained a target ratio for the number of male Brand Representatives relative to female Brand Representatives of 60:40. This policy was in writing on a board in the back of the store, designating the recruiting goal. In order to meet the target ratio, Brand Representatives were encouraged to recruit more men than women to work as Brand Representatives.

81.     Immediately after the corporate "blitz" described in paragraph 62, corporate representatives reiterated the 60:40 policy to management at the Crystal Court Mall store by indicating that there were too many women working in the store.

82.     Abercrombie has discriminated against Ms. Wu on the basis of her race, color, national origin, and/or gender by (a) terminating her employment because she is not white or male; and (b) assigning her fewer hours than similarly-situated white or male Brand Representatives.

83.     On or about April 17, 2003, Ms. Wu filed a charge of discrimination with the EEOC. Ms. Wu received a copy of her Notice of Right to Sue from the DFEH, dated April 22, 2003. Attached to this Complaint as Exhibit J and incorporated by reference, are copies of that charge and that notice. On or about December 30, 2003, the EEOC issued Ms. Wu a notice of right to sue. Attached to this Complaint as Exhibit W and incorporated by reference is a copy of that notice.

**Eric Fight**

84.     Plaintiff Eric Fight is an African American male residing in Venice, California.  He worked as a Brand Representative in the stock room only (a non-sales position) at the Abercrombie store in the Third Street Promenade in Santa Monica, California, from roughly May 2003 to June 2003. He was constructively discharged in or around June 2003 when he learned that he was not allowed to work on the sales floor due to his race or color and that he had

1  been misled by the manager with whom he had interviewed into believing that there were no sales

2  floor Brand Representative positions available.

3       85.     In May 2003, Mr. Fight applied for a position as a Brand Representative at

4  the Abercrombie store in the Third Street Promenade in Santa Monica, California and participated

5  in a group interview for the job.  Mr. Fight informed the manager conducting the interview that he

6  would rather work as a floor Brand Representative because he had substantial experience in sales

7  and did not have any experience working in a stockroom. The manager told Mr. Fight that he

8  would call him with a hiring decision within a week. Mr. Fight was qualified for the floor Brand

9  Representative job because of his prior work experience as a sales representative for comparable

10  retail clothing stores, including the Gap, Urban Outfitters, and Miller's Outpost. Abercrombie

11  refused to hire Mr. Fight as a Brand Representative despite knowing of his qualifications for the

12  position, based on his race or color.

13       86.     A week later, not having heard from the store, Mr. Fight called the store to

14  inquire about the status of his application. The same manager told Mr. Fight that the store was

15  not hiring floor Brand Representatives. Roughly ten days later, the store's stock manager called

16  Mr. Fight and offered him a position in the stock room (a non-sales position).  Mr. Fight accepted

17  the position and began working at the store in June 2003, expecting that the store would soon be

18  hiring floor Brand Representatives again and that he could reapply for such a position then. Upon

19  beginning work at the Third Street Promenade store, Mr. Fight observed that the floor Brand

20  Representative staff was virtually exclusively white.

21       87.     In June 2003, on Mr. Fight's second day of work at Abercrombie, he met a

22  white floor Brand Representative who had just begun working at the store. Mr. Fight learned that

23  this new Brand Representative had recently been hired, and thus that the manager with whom he

24  had interviewed had deceived him about the availability of floor Brand Representative positions.

25  Mr. Fight concluded that the manager and the store would not consider him for floor Brand

26  Representative positions at that time or in the future due to his race or color.  Mr. Fight thus

27  realized that he had been constructively discharged.

28

88.     Approximately a week after his discharge, Mr. Fight was hired as a sales associate for the Levi's Store at the Third Street Promenade, a similar retail clothing store that competes with Abercrombie for customers and employees.

89.     Abercrombie has discriminated against Mr. Fight on the basis of his race, color, and/or national origin by denying him employment as a Brand Representative and channeling him to a stock room position because he is not white.

90.     On or about August 18, 2003, Mr. Fight filed a charge of discrimination with the EEOC. Attached to this Complaint as Exhibit K, and incorporated by reference, is a copy of that charge. On or about December 30, 2003, the EEOC issued Mr. Fight a notice of right to sue.  Attached to this Complaint as Exhibit X and incorporated by reference is a copy of that notice.

**Carla Grubb**

91.     Plaintiff Carla Grubb is an African American female and a student at California State University at Bakersfield. She worked as a Brand Representative at the Abercrombie store in the Bakersfield Valley Plaza Mall in Bakersfield, California from November 2002 to January 2003, when she was constructively discharged.

92.     From November 2002 to December 2002, Ms. Grubb worked as Brand Representative. Each week she requested daytime shifts. However, she was usually assigned to work night shifts, often starting approximately one hour before closing and continuing into the late night.  When Ms. Grubb began working for Abercrombie, she observed that she was the only African American employee at the store; besides one Latino male Brand Representative, all the other employees were white. She also noticed that white Brand Representatives were receiving daytime hours and floor time. Although she was officially a floor Brand Representative, Ms. Grubb spent the vast majority of her work time dusting and cleaning windows.

93.     In approximately late December 2002, Ms. Grubb notified a manager that she would not be available for shifts for the next few weeks, a practice that she had observed to be unremarkable among Brand Representatives in the store. The manager granted her request and stated that it would be "no problem." Upon returning to work roughly two weeks later, in January

2003, Ms. Grubb's hours had been reduced from the normal 15-20 hours per week to almost nothing. She was assigned one 4-hour shift during the month of January. From the seven-month period from the end of January to the present (August 2003), Ms. Grubb has been assigned no shifts, despite notifying her managers each week of her interest in working up to 30 hours a week, and indicating availability from roughly 8 am to 10 pm each day as well as requesting opportunities to sign up for overnight shifts.   Ms. Grubb has since learned that there was a corporate "blitz" of the store in early January 2003, which the store managers knew about in advance. The blitz involved a visit by Abercrombie corporate representatives, who took pictures of the Brand Representatives to gauge the store's compliance with the "A&F Look."

94.     In or around May 2003, Ms. Grubb asked her managers for an explanation as to why she was not being assigned shifts. She was informed that she could not return to work because the store was full of employees, although the store still considered her an Abercrombie employee. At the time Ms. Grubb was aware of at least two white Brand Representatives at the store who were assigned shifts of up to 40 hours a week, while Ms. Grubb, despite her continued requests, was assigned no hours.

95.     Abercrombie has discriminated against Ms. Grubb on the basis of her race, color, and/or national origin by (a) constructively terminating her employment because she is not white and (b) assigning her fewer hours than similarly-situated white Brand Representatives.

96.     On or about August 18, 2003, Ms. Grubb filed a charge of discrimination with the EEOC. Attached to this Complaint as Exhibit L, and incorporated by reference, is a copy of that charge. On or about December 30, 2003, the EEOC issued Ms. Grubb a notice of right to sue.  Attached to this Complaint as Exhibit Y and incorporated by reference is a copy of that notice.

**David Culpepper**

97.     Plaintiff David Culpepper is a minority resident of Berkeley, California and a graduate student at the University of California at Berkeley. He was denied positions as a Brand Representative at the Abercrombie store in the SF Shopping Center in San Francisco,

1    California in June 2003, and at the SF Stonestown Galleria in San Francisco, California in March

2    2003 on account of his race or color.

3              98.     Mr. Culpepper applied to work as a Brand Representative at the SF

4    Shopping Center store in late May 2002, September 2002, and early June 2003 by handing a

5    written application to an Abercrombie sales associate or manager each time. On the first visit, the

6    Abercrombie employee stated that she would pass the application to the manager. On the second

7    and third visits, the managers there told him that the store was not hiring and that there were no

8    positions available.  Mr. Culpepper also applied to work at the SF Stonestown Galleria store in

9    June 2002, late November or early December 2002, and March 2003 by handing a written

10   application to an Abercrombie sales associate or manager each time. On the first and third visits,

11   the Abercrombie employees there told him that the store was not hiring and that there were no

12   positions available.  On the second visit, the Abercrombie employee stated that the store would

13   contact him if they were interested. During none of these six application attempts did any

14   Abercrombie employee inform him of the existence of a group interview or ask about his

15   qualifications.  Because Mr. Culpepper visited both locations frequently, he noticed many new

16   white Brand Representatives working at both stores, several of whom informed him that they had

17   been hired in recent weeks (during times immediately before and after each of his application

18   attempts).  Mr. Culpepper was not hired nor was he ever contacted by Abercrombie.

19             99.     By the time of his first application to work at Abercrombie, in May 2002,

20   Mr. Culpepper had substantial experience as a sales associate for comparable stores including

21   Banana Republic, Aeropostale, and Instant (a boutique clothing store in New York City). He was

22   then a recent graduate of the University of California at Berkeley.

23             100.    In June 2002, within a few weeks of Mr. Culpepper's first application to

24   the SF Shopping Center, four white male friends of his with no retail experience applied to that

25   store and were all hired on the spot and scheduled for their first shifts.

26             101.    Abercrombie has discriminated against Mr. Culpepper on the basis of his

27   race, color, and/or national origin by denying him employment because he is not white.

28

102.     On or about August 18, 2003, Mr. Culpepper filed a charge of discrimination with the EEOC. Attached to this Complaint as Exhibit M, and incorporated by reference, is a copy of that charge. On or about December 30, 2003, the EEOC issued Mr. Culpepper a notice of right to sue. Attached to this Complaint as Exhibit Z and incorporated by reference is a copy of that notice.

**Patrice Douglass**

103.     Plaintiff Patrice Douglass, an African American female, is a student at the University of California, Santa Cruz. She applied for a position as a Brand Representative at the Abercrombie store in the Bay Street shopping area in Emeryville, California in or about May 2003. She submitted a written application to a manager on duty and informed him of her qualifications, including her prior retail experience. She was qualified for the job, in part based on that retail experience. Abercrombie refused to hire Ms. Douglass despite knowing of her qualifications, based on her race, color, and/or national origin.

104.     The manager informed Ms. Douglass that May was "early" to apply for summer employment. He also questioned Ms. Douglass why she had included two phone numbers, when the "usual" applicant only listed one.

105.     One week later, Ms. Douglass's friend, who is white, requested an application for summer employment as a Brand Representative at the same Abercrombie store. An Abercrombie employee invited the friend to attend one of the group interviews that the store held every Wednesday. The friend did so and was hired.

106.     Abercrombie has discriminated against Ms. Douglass on the basis of her race, color, and/or national origin by denying her employment because she is not white.

107.     On or about December 23, 2003, Ms. Douglass filed a charge of discrimination with the EEOC. Ms. Douglass received a copy of her Notice of Right to Sue from the DFEH, dated December 23, 2003. Attached to this Complaint as Exhibit N, and incorporated by reference, are copies of that charge and that notice. On or about December 30, 2003, the EEOC issued Ms. Douglass a notice of right to sue. Attached to this Complaint as Exhibit AA and incorporated by reference is a copy of that notice.

**Robair Sherrod**

108.    Plaintiff Robair Sherrod, an African American male, is a student at California State University at Dominguez Hills. He applied for a position as a Brand Representative at the Abercrombie store in the South Bay Galleria in Redondo Beach, California in or around December 2002. He submitted a written application and participated in two group interviews.  He was qualified for the job, in part based on his prior retail experience. Abercrombie refused to hire Mr. Sherrod despite knowing of his qualifications, based on his race, color, and/or national origin.

109.    In or around January 2003, shortly after he had submitted his application, Mr. Sherrod was invited to a group interview. The manager who conducted the interview informed Mr. Sherrod that the Company would contact him within a week regarding his application.  Approximately one month later, a store employee called Mr. Sherrod to invite him to a second group interview. Again, the manager who conducted the interview informed Mr. Sherrod that he would be called within a week regarding his application. No store employee has since contacted Mr. Sherrod regarding his application.

110.    Abercrombie has discriminated against Mr. Sherrod on the basis of his race, color, and/or national origin by denying him employment because he is not white.

111.    On or about December 1, 2003, Mr. Sherrod filed a charge of discrimination with the EEOC. Mr. Sherrod received a copy of her Notice of Right to Sue from the DFEH, dated December 30, 2003. Attached to this Complaint as Exhibit O, and incorporated by reference, are copies of that charge and that notice. On or about December 30, 2003, the EEOC issued Mr. Sherrod a notice of right to sue. Attached to this Complaint as Exhibit BB and incorporated by reference is a copy of that notice.

**Brandy Hawk**

112.    Plaintiff Brandy Hawk, an African American female, is a student of the College of New Jersey. She applied for a position as a Brand Representative at the Abercrombie store in the Cherry Hill mall in Cherry Hill, New Jersey in or about May 2003. She submitted a written application to an employee at the store, indicating that she was a full time college student,

varsity athlete, possessed comparable retail experience, and was willing to work flexible hours. She was qualified for the job, in part based on those qualities and that retail experience. Abercrombie refused to hire Ms. Hawk despite knowing of her qualifications, based on her race, color, and/or national origin.

113. Within a few days of submitting this application, Brandy Hawk was interviewed for the position by Keri Renfroe, an Assistant Manager at the store. During this interview, Ms. Renfroe informed Ms. Hawk that she would recommend Ms. Hawk for the Brand Representative position. However, Abercrombie never hired Ms. Hawk. Ms. Hawk subsequently learned that Ms. Renfroe's supervisor, Sherry Donchez, refused to hire Ms. Hawk to work on the sales floor because Ms. Donchez believed that Ms. Hawk did not have the "image" Abercrombie wanted to portray.

114. The store hired a white employee in Ms. Hawk's place.

115. Abercrombie has discriminated against Ms. Hawk on the basis of her race, color, and/or national origin by denying her employment because she is not white.

116. On or about July 17, 2003, Ms. Hawk filed a charge of discrimination with the EEOC. Attached to this Complaint as Exhibit CC and incorporated by reference is a copy of that charge.

**Andre Steele**

117. Plaintiff Andre Steele is a minority resident of Waukegan, Illinois, and a graduate of DePaul University. He was hired as a Brand Representative in December 1998 and became an Assistant Store Manager in fall 1999. After filing a change of discrimination in November 2001, Mr. Steele was involuntarily transferred from the Gurnee Mills Mall store to a location with a longer commute. On September 1, 2002, Abercrombie promoted a white Assistant Manager to Store Manager of the Gurnee Mills Mall store without considering Mr. Steele, who was equally qualified. Mr. Steele left Abercrombie in 2003.

118. During his years at Abercrombie, Mr. Steele observed that Abercrombie routinely discriminated against minority individuals with respect to hiring and promotion.

119.     On February 11, 2003, Mr. Stele filed a charge of discrimination with the EEOC alleging class wide discrimination and individual retaliation on the basis of race against Abercrombie. Attached to this Complaint as Exhibit DD and incorporated by reference is a copy of that charge. Attached hereto as Exhibit EE and incorporated by reference is a copy of the right issue letter Mr. Steele received for the EEOC on November 4, 2004.

### GENERAL POLICIES OR PRACTICES OF DISCRIMINATION

120.     The denials and abridgments of employment opportunities suffered by the Representative Plaintiffs are part of a general policy or practice of discrimination on the basis of race, color, and/or national origin in employment that has existed at Abercrombie since February 24, 2004. These are not isolated examples of employment practices or individual decisions. On the contrary, these incidents are representative of A&F's systematic discrimination against minorities and in favor of white applicants and employees, to create an overwhelmingly white Brand Representative and store manager workforce.

121.     On September 13, 2001, the EEOC issued a Letter of Determination with respect to the EEOC charge filed by Plaintiff Juancarlos Gomez-Montejano, stating,

> The preponderance of the evidence supports Charging Party's claim that he was denied a permanent position as a Brand Representative, denied an assignment and terminated because of his national origin. Moreover, evidence obtained during the course of the investigation revealed that *Latinos and Blacks, as a class, were denied permanent positions, denied assignments and treated in an unfair manner with regard to recruitment based on their race and national origin,* and that Respondent failed to maintain employment records as required by Title VII. Therefore, I have concluded that the evidence is sufficient to establish a violation of the above-cited statute.

Attached hereto as Exhibit E (emphasis added).

122.     The EEOC sent this letter to Mr. Gomez-Montejano and to Abercrombie.

123.     The EEOC issued additional Letters of Determination on September 30, 2004 and November 1, 2004. Attached to this Complaint as Exhibits FF to OO and incorporated by reference are copies of those letters.

124.     The under-representation of minorities in Brand Representative and store manager positions throughout Abercrombie's approximately 700 stores in the United States

1    results from an intentional policy and practice of discrimination on the basis of race, color, and/or

2    national origin in hiring, initial job assignment, weekly hours allocation, internal job transfer,

3    inter-store transfer, and termination.

4              125.    Abercrombie has pursued policies or practices on a continuing basis that

5    have denied or restricted job opportunities to qualified minority applicants and employees.

6              126.    Such discriminatory policies or practices include, without limitation:

7                      a.      reliance on subjective, arbitrary, standardless, and unvalidated

8    criteria in making hiring decisions, focusing on whether applicants properly reflect the

9    predominantly white "A&F Look" and image rather than whether they would be responsible,

10   effective Brand Representatives and store managers who could perform their jobs well;

11                     b.      reliance on subjective, arbitrary, standardless, and unvalidated

12   criteria in making decisions in job assignments, weekly hour allocations, and ability to transfer

13   between stores focusing on whether employees properly reflect the predominantly white "A&F

14   Look" and image rather than whether they would be responsible, effective Brand Representatives

15   and store managers who perform their jobs well;

16                     c.      shunting minority applicants and Brand Representatives to stock

17   room and overnight shift positions where they are out of the public eye;

18                     d.      targeting white candidates for recruitment, both systemically  (e.g.,

19   recruiting visits to college campuses and/or targeting of specific sororities and fraternities) and

20   individually  e(.,  inviting individual customers in the store to apply to become Brand

21   Representatives and Managers-in-Training), but avoiding, ignoring, discouraging or dissuading

22   equally qualified minorities from applying;

23                     e.      use of the "Look Book," the A&F Quarterly, and wall posters as

24   guidelines for management to select Brand Representatives on the basis of their appearance – e.g.,

25   white – as opposed to their qualifications for the job;

26                     f.      use of corporate "blitzes" to monitor and enforce stores'

27   compliance with the "A&F Look" and to weed out minority Brand Representatives and store

28   managers;

1      g.      denying minority Managers-in-Training and other store managers

2   promotion to store management; and

3          h.      termination of employees based on race, color, and/or national origin

4   without regard to their performance on the job.

5                          **FIRST CLAIM FOR RELIEF**
                          **(42 U.S.C. § 2000e *et seq.*)**
6

7          127.    Plaintiffs incorporate paragraphs 1 through 126 as alleged above.

8          128.    This Claim is brought by all representative Plaintiffs, except Mr. Ocampo

9   and Ms. Hawk, on behalf of themselves and the Class they represent.

10         129.    Abercrombie has maintained a system that is intentionally discriminatory,

11  subjective, standardless, and arbitrary with respect to recruitment, hiring, job assignment,

12  promotion, transfer, weekly hour allocation, and termination. The system has an adverse

13  disparate impact on minority applicants and employees. This system is not and cannot be

14  justified by business necessity, but even if it could be so justified, less discriminatory alternatives

15  exist that could equally serve any alleged necessity.

16         130.    Abercrombie's discriminatory policies or practices described above have

17  denied minority applicants and employees employment, job assignments, promotions, job

18  transfers, and weekly hour allocations, resulting in the loss of past and future wages and other job

19  benefits.

20         131.    As noted above, the EEOC has determined that "the evidence is sufficient

21  to establish" that Abercrombie has violated Title VII, because "Latinos and Blacks, as a class,

22  were denied permanent positions, denied assignments and treated in an unfair manner with regard

23  to recruitment based on their race and national origin." Exhibit E.

24         132.    The foregoing conduct constitutes illegal, intentional discrimination as

25  unjustified disparate impact prohibited by 42 U.S.C. § 2000e  *et seq.*

26         133.    Plaintiffs request relief as hereinafter provided.

27

28

**SECOND CLAIM FOR RELIEF**
**(42 U.S.C. § 1981)**

134.    Plaintiffs incorporate paragraphs 1 through 126 as alleged above.

135.    This claim is brought by all representative Plaintiffs on behalf of themselves and the Class they represent.

136.    Abercrombie has maintained an intentionally discriminatory system with respect to recruitment, hiring, job assignments, promotions, transfers, weekly hour allocations, and termination.

137.    The foregoing conduct constitutes illegal intentional discrimination with respect to the making, performance, modification, and termination of contracts prohibited by 42 U.S.C. § 1981.

138.    Plaintiffs request relief as hereinafter provided.

**THIRD CLAIM FOR RELIEF**
**(California Fair Employment and Housing Act, Government Code § 12940 _et seq._)**

139.    Plaintiffs incorporate paragraphs 1 through 126 as alleged above.

140.    This claim is brought by all representative Plaintiffs except Mr. Ocampo, Ms. Hawk, and Mr. Steele on behalf of themselves and the subclass of California class members they represent.

141.    Plaintiffs Eduardo Gonzalez, Johan Montoya, Juancarlos Gomez-Montejano, Jennifer Lu, Austin Chu, Angeline Wu and Andre Steele have received copies of their Right to Sue letters from the DFEH. The pendency of the EEOC investigations into Plaintiffs' charges tolled the time limits for filing civil actions pursuant to the Fair Employment and Housing Act. Plaintiffs have therefore timely complied with all prerequisites to suit.

142.    Plaintiffs request relief as hereinafter provided.

**FOURTH CLAIM FOR RELIEF**
**(42 U.S.C. § 2000e _et seq._)**

143.    Plaintiffs incorporate paragraphs 1 through 126 as alleged above.

144.     This Claim is brought by representative Plaintiffs Nguyen and Wu on behalf of themselves individually.

145.     Abercrombie has maintained a system that is intentionally discriminatory, subjective, standardless, and arbitrary with respect to recruitment, hiring, job assignment, transfer, weekly hour allocation, and termination. The system has had an adverse disparate impact on Plaintiffs Nguyen and Wu on the basis of their gender. This system is not and cannot be justified by business necessity, but even if it could be so justified, less discriminatory alternatives exist that could equally serve any alleged necessity.

146.     Abercrombie's discriminatory policies or practices described above have denied Plaintiffs Nguyen and Wu employment, job assignments, job transfers, and weekly hour allocations, resulting in the loss of past and future wages and other job benefits, due to their gender.

147.     The foregoing conduct constitutes illegal, intentional gender discrimination as unjustified disparate impact prohibited by 42 U.S.C. § 2000e  *et seq.*

148.     Plaintiffs request relief as hereinafter provided.

**FIFTH CLAIM FOR RELIEF**
**(California Fair Employment and Housing Act, Government Code § 12940*et seq.*)**

149.     Plaintiffs incorporate paragraphs 1 through 126 as alleged above.

150.     This Claim is brought by representative Plaintiffs Nguyen and Wu on behalf of themselves individually.

151.     Abercrombie's actions with respect to Plaintiffs Nguyen and Wu constitute gender discrimination in violation of FEHA. Plaintiffs Nguyen and Wu have received copies of their Right to Sue letters from the DFEH. The pendency of the EEOC investigations into their charges tolled the time limits for filing civil actions pursuant to the Fair Employment and Housing Act. They have therefore timely complied with all prerequisites to suit.

152.     Plaintiffs request relief as hereinafter provided.

## **ALLEGATIONS REGARDING RELIEF**

153.     Plaintiffs, and the class they seek to represent, have no plain, adequate, or complete remedy at law to redress the wrongs alleged herein, and the injunctive relief sought in this action is the only means of securing complete and adequate relief. Plaintiffs, and the class they seek to represent, are now suffering and will continue to suffer irreparable injury from defendant's discriminatory acts and omissions.

154.     Abercrombie's actions have caused and continue to cause plaintiffs and all class members substantial losses in earnings, work experience, weekly hour allocations, and other employment benefits.

155.     In addition, representative plaintiffs and the class suffer and continue to suffer humiliation, embarrassment, and anguish, all to their damage in an amount according to proof.

156.     Abercrombie performed the acts herein alleged with malice or reckless indifference. Plaintiffs and class members are thus entitled to recover punitive damages in an amount according to proof.

## **PRAYER FOR RELIEF**

WHEREFORE, plaintiffs and the class pray for relief as follows:

157.     Certification of the case as a class action on behalf of the proposed class;

158.     Designation of Representative Plaintiffs as representatives of the class;

159.     Designation of Representative Plaintiffs' counsel of record as class counsel;

160.     A declaratory judgment that the practices complained of herein are unlawful and violate 42 U.S.C. § 1981;

161.     A preliminary and permanent injunction against Abercrombie and its officers, agents, successors, employees, representatives, and any and all persons acting in concert with them, from engaging in each of the unlawful policies, practices, customs, and usages set forth herein;

162.     An order that Abercrombie institute and carry out policies, practices, and programs that provide equal employment opportunities for all minorities, and that it eradicate the effects of its past and present unlawful employment practices;

163.     An order restoring plaintiffs and class members to their rightful positions at Abercrombie, or, in lieu of reinstatements, an order for front pay benefits;

164.     Back pay (including interest and benefits) for individual plaintiffs and class members;

165.     All damages sustained as a result of Abercrombie's conduct, including damages for emotional distress, humiliation, embarrassment, and anguish, according to proof;

166.     Exemplary and punitive damages in an amount commensurate with Abercrombie's ability to pay and to deter future conduct;

167.     Costs incurred herein, including reasonable attorneys' fees to the extent allowable by law;

168.     Pre-judgment and post-judgment interest, as provided by law; and

169.      Such other and further legal and equitable relief as this Court deems necessary, just, and proper.

Dated: November 8, 2004

Respectfully submitted,

| | |
|---|---|
| Thomas A. Saenz | Bill Lann Lee |
| Shaheena Ahmad Simons | Kelly M. Dermody |
| MEXICAN AMERICAN LEGAL DEFENSE | Eve H. Cervantez |
|    AND EDUCATIONAL FUND | Jahan C. Sagafi |
| 634 South Spring Street | LIEFF, CABRASER, HEIMANN |
| Los Angeles, CA 90014 |    & BERNSTEIN, LLP |
| Telephone: (213) 629-2512 | 275 Battery Street, 30th Floor |
| Facsimile: (213) 629-0266 | San Francisco, CA 94111-3339 |
| | Telephone: (415) 956-1000 |
| | Facsimile: (415) 956-1008 |

Julie Su
Minah Park
ASIAN PACIFIC AMERICAN LEGAL
    CENTER
1145 Wilshire Boulevard, 2nd Floor
Los Angeles, CA 90017
Telephone: (213) 977-7500
Facsimile: (213) 977-7595

Kimberly West-Faulcon
NAACP LEGAL DEFENSE AND
    EDUCATIONAL FUND, INC.
1055 Wilshire Blvd., Suite 1480
Los Angeles, CA 90017
Telephone: (213) 975-0211
Facsimile: (213) 202-5773

Sidney L. Gold
Traci M. Greenberg
SIDNEY L. GOLD & ASSOCIATES, P.C.
1835 Market Street, Suite 515
Philadelphia, PA 19103
Telephone: (215) 569-1999

Cleo Fields
RAINBOW/PUSH COALITION
930 East 50th Street
Chicago, IL 60615
Telephone: (773) 373-3366

James F. Keller
Zachary Gottesman
GOTTESMAN & ASSOCIATES
2121 URS Center
36 East 7th Street
Cincinnati, OH 45202
(513) 651-2121

Joseph C. Kohn
Martin J. D'Urso
Diana Liberto
Hilary Cohen
KOHN, SWIFT & GRAF, P.C.
One South Broad Street, Suite 2100
Philadelphia, PA 19107
Telephone: (215) 238-1700

Bryan L. Clobes
Melody Forrester
Jeffrey D. Lerner
MILLER FAUCHER AND CAFFERTY
One Logan Square, Suite 1700
Philadelphia, PA 19103
Telephone: (215) 864-2800

By:     */s/ Bill Lann Lee*
            Bill Lann Lee

*Attorneys for Plaintiffs*

1

## DEMAND FOR JURY TRIAL

2
Plaintiffs hereby demand a trial by jury as to all issues so triable.

3
Dated: November 8, 2004

4
Respectfully submitted,

5
Julie Su                                          Thomas A. Saenz
Minah Park                                        Shaheena Ahmad Simons
6
ASIAN PACIFIC AMERICAN LEGAL                      MEXICAN AMERICAN LEGAL DEFENSE
   CENTER                                            AND EDUCATIONAL FUND
7

8
Kimberly West-Faulcon                             Bill Lann Lee
NAACP LEGAL DEFENSE AND                           Kelly M. Dermody
   EDUCATIONAL FUND, INC.                         Eve H. Cervantez
9                                                 Jahan C. Sagafi
                                                  LIEFF, CABRASER, HEIMANN
10                                                   & BERNSTEIN, LLP

11
Sidney L. Gold                                    Bryan L. Clobes
Traci M. Greenberg                                Melody Forrester
12
SIDNEY L. GOLD & ASSOCIATES, P.C.                 Jeffrey D. Lerner
                                                  MILLER FAUCHER AND CAFFERTY
13

14
Cleo Fields                                       Joseph C. Kohn
RAINBOW/PUSH COALITION                            Martin J. D'Urso
                                                  Diana Liberto
15                                                Hilary Cohen
                                                  KOHN, SWIFT & GRAF, P.C.
16

17
James F. Keller
Zachary Gottesman
GOTTESMAN & ASSOCIATES
18

19
                         By:      /s/ Bill Lann Lee
                                    Bill Lann Lee
20

                                 *Attorneys for Plaintiffs*
21

22

23

24

25

26

27

28

358281.1                                    - 34 -          FOURTH AMENDED CLASS ACTION COMPLAINT