Kelly M. Dermody (SBN 171716)
Jahan C. Sagafi (SBN 224887)
LIEFF, CABRASER, HEIMANN &
BERNSTEIN, LLP
275 Battery Street, 30th Floor
San Francisco, CA  94111-3339
Telephone:  (415) 956-1000
Facsimile:  (415) 956-1008
Email: kdermody@lchb.com
Email: jsagafi@lchb.com

John C. Hendrickson (IL SBN 1187589)
Gregory M. Gochanour (IL SBN 6210804)
EQUAL EMPLOYMENT OPPORTUNITY
COMMISSION
500 West Madison Street, Suite 2800
Chicago, IL 60661
Telephone: (312) 886-9124
Facsimile: (312) 353-8555
Email:  gregory.gochanour@eeoc.gov

Bill Lann Lee (SBN 108452)
LEWIS, FEINBERG, LEE, RENAKER &
JACKSON, P.C.
1330 Broadway, Suite 1800
Oakland, CA 94612-2509
Telephone: (510) 839-6824
Facsimile: (510) 839-7839
Email: blee@lewisfeinberg.com

Jack W. Lee (SBN 071626)
MINAMI & TAMAKI LLP
360 Post Street, 8th Floor
San Francisco, CA 94108
Telephone:  (415) 788-9000
Facsimile:  (415) 398-3887
Email:  jlee@minamitamaki.com

*Lead Counsel and the EEOC, on behalf of the Plaintiff Class Members and EEOC*

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| EDUARDO GONZALEZ, ANTHONY OCAMPO, ENCARNACION GUTIERREZ, JOHAN MONTOYA, JUANCARLOS GÓMEZ-MONTEJANO, JENNIFER LU, AUSTIN CHU, IVY NGUYEN, ANGELINE WU, ERIC FIGHT, CARLA GRUBB, DAVID CULPEPPER, PATRICE DOUGLASS, and ROBAIR SHERROD, BRANDY HAWK and ANDRE STEELE, on behalf of themselves and all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>ABERCROMBIE & FITCH STORES, INC., A&F CALIFORNIA, LLC, A&F OHIO, INC., and ABERCROMBIE & FITCH MANAGEMENT CO.,<br><br>Defendants. | Case Nos.    03-2817 SI,<br>04-4730 SI, and<br>04-4731<br><br>**MEMORANDUM IN SUPPORT OF LEAD COUNSEL AND EEOC'S APPEAL OF SPECIAL MASTER'S DECISION REGARDING ABERCROMBIE'S MOTION TO DISMISS DISPUTE RESOLUTION AND ENFORCEMENT PROCEEDINGS**<br><br>**Before Judge Susan Illston** |
| ELIZABETH WEST and JENNIFER LU,<br><br>Plaintiffs,<br><br>v. | |

1  ABERCROMBIE & FITCH STORES, INC., A&F
   CALIFORNIA, LLC, A&F OHIO, INC., and
2  ABERCROMBIE & FITCH MANAGEMENT
   CO.,
3
                    Defendants.
4

5  EQUAL EMPLOYMENT OPPORTUNITY
   COMMISSION,
6
          v.
7
   ABERCROMBIE & FITCH STORES, INC., A&F
8  CALIFORNIA, LLC, A&F OHIO, INC., and
   ABERCROMBIE & FITCH MANAGEMENT
9  CO.

10                  Defendants.

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# TABLE OF CONTENTS

**Page**

I.     JURISDICTION ................................................................................................. 1

II.    BACKGROUND ............................................................................................... 2

     A.    The Decree Requires Marketing To Be Diverse. ........................................ 2

     B.    The Monitor Has Found That Abercrombie Failed to Satisfy the Marketing Diversity Requirement For Both of the First Two Years of the Decree, But the Parties Have Not Been Able to Develop a Means to Achieve Compliance .................................................................. 4

     C.    Procedural Background Leading To The Special Master's Decision ......... 5

III.    ARGUMENT ..................................................................................................... 6

     A.    Abercrombie's Obligation To Reflect Diversity In Its Marketing Is Not Limited Or Qualified In Any Respect And Is Subject To The Review And Assessment Of The Monitor For Compliance ...................... 6

     B.    Plaintiffs May Bring This Issue of "Implementation of the Relief Provided" By The Decree To The Attention of the Court Or Special Master ........................................................................................................ 8

IV.    CONCLUSION ................................................................................................. 9

The EEOC and Lead Counsel (collectively, "Plaintiffs") jointly move for an order overturning the Special Master's decision regarding Abercrombie's Motion To Dismiss Dispute Resolution And Enforcement Proceedings (the "Special Master's Decision").  The Special Master has ruled that Plaintiffs may not seek enforcement of the Decree's marketing diversity requirement.  However, the Decree provides a mechanism for the enforcement of this requirement, which Plaintiffs have followed.  Furthermore, to have meaning, the requirement must be enforceable.  Therefore, by this motion, Plaintiffs seek an order reversing the Special Master's Decision and allowing Plaintiffs to move forward with their efforts to enforce the marketing diversity requirement.

**I.      JURISDICTION**

The Consent Decree (hereafter the "Decree") authorizes the Court to provide Plaintiffs the relief sought by this appeal: "This Court shall retain jurisdiction of these civil actions during the duration of the Decree solely for the purpose of entering all orders, authorized hereunder, that may be necessary to implement the relief provided."  Decree, § V.  The Decree includes a marketing diversity requirement:  "As a company committed to achieving diversity in its store associates, as reflected in the other terms of this Decree, Abercrombie will reflect diversity, as reflected by the major racial/ethnic minority populations of the United States, in its marketing materials (taken as a whole)."  Decree, § X.C.1.  More generally, the Decree also enjoins Abercrombie from "enacting, maintaining or implementing any policy or procedure that discriminates against" minorities on the basis of race or national origin or women on the basis of gender.  Decree, §§ X.A.1. & 2.

Based on the Monitor's repeated findings that Abercrombie's marketing is not diverse and the Court's subsequent instruction to the parties to seek compliance with the marketing diversity requirement, Plaintiffs initiated proceedings through which the Special Master or Court could resolve the dispute between the Monitor and Abercrombie regarding whether Abercrombie has complied with the marketing diversity requirement.  Negotiations during the fall and winter culminated in a motion by Abercrombie on March 12, 2008, seeking to

end this dispute resolution process (the "Motion To Dismiss").  On May 6, 2008, the Special

Master granted Abercrombie's Motion to Dismiss.[1]

Plaintiffs believe the Special Master "wrongly interpreted [and] applied" the

Decree.[2]   Therefore, Plaintiffs respectfully request that the Court overturn the Special Master's

Decision and enter an Order (1) declaring that the Monitor's use of census numbers to measure

compliance with the marketing diversity requirement is appropriate and (2) ordering the parties to

meet and confer with the Monitor regarding what steps Abercrombie should take to ensure future

compliance with the marketing diversity requirement.[3]

## II.   BACKGROUND

### A.   The Decree Requires Marketing To Be Diverse.

The Decree contains a straightforward and unambiguous marketing diversity

requirement: "As a company committed to achieving diversity in its store associates, as reflected

in the other terms of this Decree, Abercrombie will reflect diversity, as reflected by the major

racial/ethnic minority populations of the United States, in its marketing materials (taken as a

whole)."  (Decree, § X.C.1., p. 19 (the "marketing diversity requirement").)  There is no

limitation anywhere in the Decree on Abercrombie's obligation to comply with this requirement.

Simply put, Abercrombie must comply with it.  But there are limitations on when Lead Counsel

and the EEOC may assert that Abercrombie has not satisfied the requirement.  Set out below for

ease of reference is the entirety of the Marketing section of the Decree (Section X.C.), along with

Section X.B.4., which is also at issue in Abercrombie's Motion To Dismiss.

§ X.C.   Marketing.

1.   Abercrombie believes that the artistic aspect of its marketing
materials is a critical factor driving the success of Abercrombie and
its brand. As a company committed to achieving diversity in its
store associates, as reflected in the other terms of this Decree,
Abercrombie will reflect diversity, as reflected by the major

---

[1]   Attached are the Special Master's Decision and its Decision denying Plaintiffs' Motion for Reconsideration and/or Clarification.

[2]   Under Section X.B.7., the Special Master's Decision "shall be affirmed unless the Court determines that the Special Master made clearly erroneous findings of fact or wrongly interpreted or applied the Consent Decree."

[3]   If the parties cannot agree, then the Court should order appropriate relief under Section X.B.5.

racial/ethnic minority populations of the United States, in its marketing materials (taken as a whole). Lead Counsel and/or the EEOC may assert that Abercrombie has not met its commitment under this paragraph for the following purposes only:

a.   In the event that, at the end of the twenty-four (24) month period following the Approval Date, the Applicant Rate for any Minority group is lower than such group's interim Benchmark for the fourth six-month period, Lead Counsel and/or the EEOC may assert that this was caused by a chilling of applicant flow caused in part by not meeting the commitment in paragraph 1 of this Section. Any such assertion, and Abercrombie's response thereto, may be considered by the Special Master. If the Special Master accepts the assertion of Lead Counsel and/or the EEOC, then the sole remedy shall be that the applicable interim Benchmark shall remain in effect unless and until the applicable Applicant Rate exceeds the applicable interim Benchmark.

b.   In the event that Abercrombie seeks to obtain early termination of this Decree, under Section VI.B. hereof, and in the event that Lead Counsel and/or the EEOC seeks to challenge such early termination, Lead Counsel and/or the EEOC may assert that Abercrombie has not met its commitment in paragraph 1 of this Section. Any such assertion, and Abercrombie's response thereto, may be considered by the Special Master and/or the Court, along with Abercrombie's meeting or failing to meet other provisions of the Decree, in deciding whether to grant Abercrombie's request for early termination of the Decree.

2.    Nothing in this Section shall limit the scope of the Monitor's discretion under Section XVI.A.2. of this Decree in evaluating compliance (including barriers to compliance) with any of the objectives of the Decree. However, nothing in this Section or otherwise in this Decree shall be deemed to provide Lead Counsel, the EEOC, the Monitor, the Special Master, or the Court with the authority or ability to contest, challenge, alter, or seek to alter Abercrombie's marketing materials or the selection of photographs or models therefor.

3.    Marketing materials include specifically, but not exclusively: quarterly magazines and similar materials, shopping bags, store posters and video, website, A&F TV, and purchased advertising.

§ X.B.  Dispute Resolution and Enforcement Procedures.

. . . 4.   Lead Counsel, EEOC or Abercrombie shall have the right to initiate steps to resolve any dispute or issue of compliance regarding any provision of the Decree subject to limitations and standards set forth in the Decree. . . .

**B.**   **The Monitor Has Found That Abercrombie Failed to Satisfy the Marketing Diversity Requirement For Both of the First Two Years of the Decree, But the Parties Have Not Been Able to Develop a Means to Achieve Compliance**

At the close of the first year of the Decree, the Monitor concluded that Abercrombie had failed to satisfy the marketing diversity requirement based on a comparison with the general population census statistics of the United States.  Abercrombie disputed this conclusion.  At the first status conference, the Court encouraged Abercrombie to comply with the marketing diversity requirement.  The Court expressed concern about the low level of diversity in the marketing material, stating: "Marketing in this company's arsenal of tools is different from maybe some other companies', and it relies heavily on the visual presentation of models."  Trans. at 24:11-14.  The Court also observed that in regards to the demographics of the models depicted in marketing materials: "I would just think that's one of the easiest things in the world to change.  You just hire those people, you know, to take their position.  That has to be a really simple thing to do."  *Id.* at 35:23-25.  Little has changed, however.[4]

On June 25, 2007, Plaintiffs wrote to Abercrombie requesting information regarding the marketing in anticipation of the second annual status conference before Judge Illston.  On July 5, 2007, Abercrombie replied that Plaintiffs are not entitled to marketing data. (The argument made in that letter is replicated in Abercrombie's pending Motion To Dismiss.) On August 15, 2007, Plaintiffs explained the basis for their position.  On August 22, 2007, Abercrombie responded by providing the sought-after information.

At the close of the second year of the Decree, the Monitor again found that Abercrombie had failed to meet the marketing diversity requirement.  *See Executive Summary of Court Approved Monitor's Second Annual Compliance Report* at 1-2.  At the second status conference, the Court reiterated its concern about inadequate diversity in marketing, remarked that increasing the diversity should not be difficult, and urged the parties to work with the Mediator to try to resolve the dispute over Abercrombie's compliance with the marketing diversity requirement.

---

[4] In fact, perhaps the most relevant change during the past several years has been the change in the store sales associate position title from "Brand Representative" to "Model."  Plaintiffs are concerned that this change reinforces the significance of the marketing material as a hiring guide.

The parties met in Chicago on October 23, 2007, under the Mediator's supervision, to discuss the issues.  Beforehand, the parties presented the Mediator with short summaries of their positions.  After the session, under the Mediator's guidance, the parties agreed that Plaintiffs would refrain from bringing a formal motion regarding the marketing, to allow Abercrombie time to formulate a compromise proposal to achieve compliance.  On December 3, 2007, Abercrombie "report[ed] on its continuing compliance" with the Decree but did not formulate a proposal.

**C.    Procedural Background Leading To The Special Master's Decision**

On December 10, 2007, Plaintiffs gave formal notice of their intent to move for an order requiring Abercrombie to comply with the marketing provision in the Decree, incorporating by reference the findings contained in the Monitor's second annual report, in compliance with § X.B.4.a. of the Decree (the "Initiating Letter").   On December 27, 2007, Abercrombie responded to the Initiating Letter, summarizing the arguments they had set forth in their July 5 letter, in compliance with § X.B.4.b. of the Decree.

Based on their October 2007 agreement, the meet and confer requirements of § X.B.4.c. were waived.  This left the parties free to conduct discovery under § X.B.4.d. and/or bring a motion under § X.B.4.e.  A hearing in early March 2008 was anticipated.

On February 28, 2008, Plaintiffs provided the Special Master and Abercrombie with discovery requests:  eleven interrogatories and two document requests.  On February 29, 2008, the Special Master instructed the parties to meet and confer to agree on a schedule for discovery, briefing, and a hearing.  On March 4, 2008, Plaintiffs proposed a schedule for resolution of the dispute:

| | |
|---|---|
| April 11, 2008 | Discovery to be completed |
| April 24, 2008 | Plaintiffs' motion to be submitted |
| May 9, 2008 | Abercrombie's response to be submitted |
| May 16, 2008 | Hearing before the Special Master |

Abercrombie did not respond to the proposed schedule.

On March 12, 2008, Abercrombie submitted a Motion to Dismiss (as well as Motion to Stay Discovery).  In its Motion, Abercrombie took the position that Section X.C.1 (a)

MEMORANDUM ISO APPEAL OF SPECIAL MASTER'S DECISION REGARDING ABERCROMBIE'S MOTION TO DISMISS

and (b) were the sole means of remedying non-compliance with the marketing diversity

requirement.  In essence, Abercrombie's Motion sought a declaratory judgment that the Special

Master or the Court has no authority under Section V of the Decree to "enter[] all orders,

authorized hereunder, that may be necessary to implement the relief provided" with respect to the

marketing diversity requirement.  Decree, § V.  Abercrombie's Motion and the Special Master's

Decision adopting it are not supported by the language of the Decree and the Court should

overturn the Special Master's Decision and deny Abercrombie's Motion.

## III.   ARGUMENT

### A.   Abercrombie's Obligation To Reflect Diversity In Its Marketing Is Not Limited Or Qualified In Any Respect And Is Subject To The Review And Assessment Of The Monitor For Compliance

The marketing diversity requirement is not limited or qualified anywhere in the

Decree.  It sets forth a mandate, and there is no condition under which Abercrombie is released

from the requirement during the term of the Decree.  As Abercrombie notes, the Decree limits the

circumstances under which Plaintiffs can independently assert that Abercrombie violated the

requirement.  Decree, § X.C.1 (a)-(b).  But these limitations on Plaintiffs do not create limitations

or qualifications on Abercrombie's obligation to comply with the marketing diversity requirement

or limit the Court's power and authority to enforce the requirement pursuant to its retained

jurisdiction "to implement the relief provided."  Thus, Abercrombie's compliance remains subject

to the Monitor's (and Special Master's and Court's) jurisdiction and review throughout the term

of the Decree without regard to whether the events described in subparagraphs (a) and/or (b) are

at issue.  This fact is explicitly noted in Section X.C.2:  "Nothing in this Section shall limit the

scope of the Monitor's discretion under Section XVI.A.2. of this Decree in evaluating compliance

(including barriers to compliance) with any of the objectives of the Decree."

In both his first and second annual compliance reports, the Court-Monitor found

that Abercrombie was not in compliance with the marketing diversity requirement.  In response to

each report, Abercrombie has disputed the Monitor's conclusions on this issue.  Plaintiffs'

Initiating Letter initiated proceedings to have the Special Master resolve the conflict between the

1  Court appointed Monitor and Abercrombie on this issue and to provide clarification regarding

2  how Abercrombie's compliance with the marketing diversity requirement is to be measured.[5]

3          Plaintiffs respectfully submit that the Special Master erred by interpreting the

4  limitations on Lead Counsel and the EEOC in Section X.C.1 (a) and (b) in a way that strips the

5  Court of its inherent power to enforce its own order.  Section X.C.1 places limitations on the

6  remedies Lead Counsel and the EEOC may seek when they believe Abercrombie has not satisfied

7  the marketing diversity requirement, but these limitations do not apply to the Court.  When the

8  parties agreed to limit or prohibit everyone, including the Court, from taking certain actions, such

9  as micromanaging aesthetic aspects of Abercrombie's marketing under Section X.C.2., the Court

10  was specifically identified.  By contrast, the Court is not identified in X.C.1 as being limited in

11  the remedies it can impose.  Plaintiffs believe it was error for the Special Master to apply the

12  limitations of X.C.1 (a) and (b) to the Court when they plainly only apply to Lead Counsel and

13  the EEOC.  Plaintiffs did not agree to, and there is no evidence that the Court intended to enter,

14  an order that would deprive the Court of its broader Section V. authority to ensure compliance

15  with all aspects of the Decree, including the marketing diversity requirement.

16          Under Abercrombie's and the Special Master's interpretation, the marketing

17  diversity requirement could be deleted from the Decree at this point without any consequence.

18  By way of illustration, under this interpretation, if one deleted the marketing diversity

19  requirement and changed the second sentence of Section C.1. (which now reads "Lead Counsel

20  and/or the EEOC may assert that Abercrombie *has not met its commitment under this paragraph*

21  *for the following purposes only*") (emphasis added) to instead read, "the EEOC and/or Lead

22  Counsel may assert a lack of diversity in Abercrombie's marketing for the following purposes

23  only," the effect would be exactly the same.  This interpretation makes the *commitment* by

24  Abercrombie to reflect diversity in its marketing totally illusory.  It reduces diversity in marketing

25  to a mere factor that the Special Master or Court can consider, and even then, only when the

26  EEOC and/or Lead Counsel are seeking the limited relief identified in C.1.(a) or (b).  Plaintiffs

27

28  [5]  Plaintiffs sought discovery focused on ascertaining the basis for Abercrombie's disagreement
with the Monitor's Report regarding compliance with Section X.C.1., but the Special Master
stayed the discovery pending the resolution of Abercrombie's motion to dismiss.

respectfully assert that the Special Master's interpretation is incorrect. The Decree does not refer to the marketing diversity requirement as a mere "factor," to be considered or discussed only under the circumscribed conditions of C.1 (a) or (b). The Decree states that "Abercrombie *will* reflect diversity" and refers to this as Abercrombie's "*commitment*" under the Decree. Decree, § X.C.1. (emphasis added).

By adopting Abercrombie's interpretation of Section X.C., the Special Master's Decision renders the marketing diversity requirement meaningless. While the language of the marketing diversity requirement is clear, under the Special Master's Decision, no one – not even the Court – has the authority to actually require Abercrombie to live up the marketing diversity requirement. According to the Special Master's Decision and Abercrombie's interpretation, the last sentence of Section X.C.2., which limits the parties and the Court from micromanaging aesthetic aspects of the marketing by selecting or prohibiting particular models, photos, layouts, etc., should be interpreted to completely nullify the marketing diversity requirement. The effect of the Special Master's Decision and Abercrombie's interpretation is to insert into the list of prohibitions contained in the last sentence of Section X.C.2., a prohibition against the Court requiring that Abercrombie reflect diversity in its marketing materials. But no such language exists in Section X.C.2, or anywhere else in the Decree. And for good reason. It would directly contradict and nullify another term of the Decree, the marketing diversity requirement. Plaintiffs respectfully submit it was error for the Special Master to interpret the relatively ambiguous language of Section X.C.2 as a nullification of the clear mandate of the marketing diversity requirement of Section X.C.1.

### B. Plaintiffs May Bring This Issue of "Implementation of the Relief Provided" By The Decree To The Attention of the Court Or Special Master

Plaintiffs believe the Special Master erred by ruling that Plaintiffs may not bring this issue of compliance to the Special Master or Court. Plaintiffs have "the right to initiate steps to resolve any dispute or issue of compliance regarding any provision of the Decree subject to limitations and standards set forth in the Decree." Decree, § X.B.4. The dispute Plaintiffs seek to initiate steps to resolve is between the Court-appointed Monitor and Abercrombie on the issue of

Abercrombie's compliance with § X.C.1.  Plaintiffs' Initiating Letter relies solely on the findings of the Monitor contained in his Reports and makes no independent assertions regarding Abercrombie's compliance with § X.C.1.  As discussed above, there is no limitation on Abercrombie's obligation to comply with the requirements of the marketing diversity requirement, and, likewise, there is no limitation on the authority of the Monitor to review and assess Abercrombie's compliance therewith.  Moreover, the Monitor's findings with respect to Abercrombie's noncompliance are not limited in use or application to the circumstances described in § X.C.1(a)-(b).

The Special Master adopted Abercrombie's interpretation that Section X.C.1. of the Decree prohibits Plaintiffs from initiating this proceeding.  The language of Section X.C.1. is not as broad as the Special Master and Abercrombie suggest.[6]  Its limitation on Plaintiffs only relates to when *Plaintiffs* "may assert that Abercrombie has not met its commitment under this paragraph."  It does not limit the circumstances under which the *Monitor* may assert that Abercrombie has not met its commitment under § X.C.1.  The action that Abercrombie seeks to prevent the EEOC and Lead Counsel from initiating is based upon the assertion of the Court appointed Monitor (not an independent assertion of Plaintiffs) that Abercrombie has not satisfied the marketing diversity requirement.[7]

## IV.    <u>CONCLUSION</u>

For the reasons set forth above, Plaintiffs respectfully request that the Court overturn the Special Master's Decision and enter an Order declaring that the Monitor's use of census numbers to measure compliance with the marketing diversity requirement is appropriate and further order the parties to meet and confer with the Monitor regarding what steps Abercrombie should take to ensure future compliance with the marketing diversity requirement.

---

[6]  Reliance on the "subject to limitations and standards set forth in the Decree" language in Section X.B.4. merely begs the fundamental question of what the limitations and standards are.

[7] Regardless, as described above, the Court has inherent supervisory power over the parties, and as confirmed in Section V., which refers to the Court's authority to "enter[] all orders, authorized hereunder, that may be necessary to implement the relief provided."

1                                      Respectfully submitted,

2    Dated:  May 20, 2008              By:  ___/s/ Jahan C. Sagafi___

3                                      Kelly M. Dermody (SBN 171716)
                                       Jahan C. Sagafi (SBN 224887)
4                                      LIEFF, CABRASER, HEIMANN & BERNSTEIN, LLP
                                       275 Battery Street, 30th Floor
5                                      San Francisco, CA  94111-3339
                                       Telephone: (415) 956-1000
6                                      Facsimile:  (415) 956-1008
                                       Email: kdermody@lchb.com
7                                      Email: jsagafi@lchb.com

8                                      By:  ___/s/ Bill Lann Lee___

9
                                       Bill Lann Lee (SBN 108452)
10                                     LEWIS, FEINBERG, LEE, RENAKER & JACKSON, P.C.
                                       1330 Broadway, Suite 1800
11                                     Oakland, CA 94612-2509
                                       Telephone: (510) 839-6824
12                                     Facsimile: (510) 839-7839
                                       Email: blee@lewisfeinberg.com
13
                                       By:  _____/s/ Jack Lee_____
14                                     Jack W. Lee (SBN 071626)
                                       MINAMI & TAMAKI LLP
15                                     360 Post Street, 8th Floor
                                       San Francisco, CA 94108
16                                     Telephone:  (415) 788-9000
                                       Facsimile:  (415) 398-3887
17                                     Email:  jlee@minamitamaki.com

18                                     *Lead Counsel*
                                       *Attorneys for Plaintiff Class members*
19

20                                     By:  ___/s/ Gregory Gochanour___

21                                     John C. Hendrickson (IL SBN 1187589)
                                       Gregory M. Gochanour (IL SBN 6210804)
22                                     EQUAL EMPLOYMENT OPPORTUNITY COMMISSION
                                       500 West Madison Street, Suite 2800
23                                     Chicago, IL 60661
                                       Telephone: (312) 886-9124
24                                     Facsimile: (312) 353-8555
                                       Email:  gregory.gochanour@eeoc.gov

25

26

27

28