Bill Lann Lee (SBN 108452)
LEWIS, FEINBERG, LEE, RENAKER & JACKSON, P.C.
476 9th Street
Oakland, CA 94607
Telephone: (510) 839-6824
Facsimile: (510) 839-7839

John C. Hendrickson (IL SBN 1187589)
Gregory M. Gochanour (IL SBN 6210804)
U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION
500 West Madison Street, Suite 2800
Chicago, IL 60661

Kelly M. Dermody (SBN 171716)
Jahan C. Sagafi (SBN 224887)
LIEFF, CABRASER, HEIMANN & BERNSTEIN, LLP
275 Battery Street, 30th Floor
San Francisco, CA 94111-3339
Telephone: (415) 956-1000
Facsimile: (415) 956-1008

Jack W. Lee (SBN 071626)
MINAMI TAMAKI LLP
360 Post Street, 8th Floor
San Francisco, CA 94108
Telephone: (415) 788-9000
Facsimile: (415) 398-3887

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA, SAN FRANCISCO DIVISION

| | |
|---|---|
| EDUARDO GONZALEZ, et al., on behalf of themselves and all others similarly situated, Plaintiffs, <br><br> v. <br><br> ABERCROMBIE & FITCH STORES, INC., et al., Defendants. | Case Nos. 03-2817 SI, 04-4730 and 04-4731 <br><br> **MOTION TO EXTEND THE CONSENT DECREE** <br><br> Date: April 8, 2011 <br> Time: 9:00 a.m. <br> Dept: Courtroom 10, 19th Floor <br> Judge: Hon. Susan Illston |
| ELIZABETH WEST, et al., on behalf of themselves and all others similarly situated, Plaintiffs, <br><br> v. <br><br> ABERCROMBIE & FITCH STORES, INC., et al., Defendants. | |
| EQUAL EMPLOYMENT OPPORTUNITY COMMISSION, Plaintiffs, <br><br> v. <br><br> ABERCROMBIE & FITCH STORES, INC., et al., Defendants. | |

**REDACTED COPY**

MINAMI TAMAKI, LLP
360 Post Street, 8th Floor
San Francisco, CA 94108
Tel. (415) 788-9000
Fax (415) 398-3887

PLAINTIFFS' MOTION TO EXTEND THE CONSENT DECREE
914589.1

To all parties and their attorneys of record:  Please take notice that on April 8, 2011 at 9:00 a.m., or as soon thereafter as the Court's schedule permits, the EEOC and Lead Counsel (collectively, "Plaintiffs") will move this Court for relief as described herein.  Plaintiffs' motion will be based on these points and authorities, the declaration filed herewith, all pleadings and papers on file in this action, and such oral and documentary evidence that may be introduced at the hearing on this motion.

## I.  INTRODUCTION

Plaintiffs ask the Court to allow the parties and Court-appointed Monitor Fred Alvarez, Esq., an opportunity to write the final chapter of this six-year Consent Decree saga.  Plaintiffs seek a limited extension of the Consent Decree, now scheduled to end on April 14, 2011, for two purposes:  (1) to allow the parties time to resolve Plaintiffs' pending enforcement action regarding Abercrombie & Fitch Stores, Inc.'s ("Abercrombie" or "Defendant") compliance with the core terms of the Decree, and (2) to allow the Monitor the opportunity to file his sixth and final Annual Report to the Court, evaluating Abercrombie's compliance during the sixth year of the Decree (ending April 2011), and for the Court to hold a hearing concerning the Report.

First, the parties are currently litigating an enforcement proceeding before Special Master Hunter Hughes on an expedited schedule. The Special Master's decision on this Motion will be issued on or around April 11, 2011, three days before the current date for the expiration of the Decree.  Because the Special Master's decision will likely be appealed by one or both parties to this Court as a matter of right under the Decree, a brief extension of the Consent Decree expiration date is necessary to afford the Court the opportunity to hear and decide the compliance issues currently pending before the Special Master.

Second, an extension is warranted to allow the Court-appointed Monitor to submit his Sixth Annual Compliance Report to the Court and to allow the Court to hold a hearing regarding the Report.  The Monitor's Report is expected, per usual procedure, to evaluate Abercrombie's compliance with the Decree for the preceding year (here, the sixth year, which is May 2010 – April 2011).  Under the parties' usual schedule, Abercrombie will need approximately two months to

MINAMI TAMAKI, LLP
360 Post Street, 8th Floor
San Francisco, CA  94108
Tel. (415) 788-9000
Fax (415) 398-3887

submit its report to the Monitor after the end of the sixth year (April 30, 2011), and the Monitor will need another two months to write his report. Traditionally, the Monitor has submitted his report to the parties (and then the Court) in approximately August or September each year. Plaintiffs ask the Court to require Abercrombie to submit the usual report to the Monitor by June 30, 2011 and allow the Monitor to issue the Sixth Annual Compliance Report on Abercrombie's overall compliance status by August 31, 2011. Plaintiffs also propose that the Court schedule a status conference to evaluate Abercrombie's compliance with the terms of the Consent Decree after the submission of the Sixth Annual Compliance Report. A status conference is particularly appropriate because the last status conference on December 15, 2010 did not go forward because of the pendency of the enforcement proceeding.

## II.    PROCEDURAL BACKGROUND

In 2003 onward, Plaintiffs filed three class actions alleging that Abercrombie maintained discriminatory employment policies and practices against African American, Latino, Asian American, and female applicants and employees in violation of Title VII of the Civil Rights Act of 1964 and the California Fair Employment and Housing Act ("FEHA").

In 2004, the parties agreed to the entry of a Consent Decree, as a full settlement of these actions. The Decree, which was approved by this Court on April 14, 2005, stated that "[t]he provisions of this Decree shall remain in effect for a period of six years (72 months)." Consent Decree, § VI.B. The Consent Decree is thus set to expire on April 14, 2011.

The Consent Decree defined the scope and timing of the corrective work to be undertaken by Abercrombie to ensure equal employment opportunity for people of color and women applying to, and working within, its stores. The Decree also requires Abercrombie to provide Semi-Annual Progress Reports to the Monitor and Plaintiffs on Abercrombie's compliance with the Decree's requirements. Consent Decree, § XV.C.2. These Reports are to include information regarding Abercrombie's offer, hiring, and promotional data by store, state, and division, as well as Abercrombie's recruiting and marketing efforts. Consent Decree, § XV.

//

MINAMI TAMAKI, LLP
360 Post Street, 8th Floor
San Francisco, CA 94108
Tel. (415) 788-9000
Fax (415) 398-3887

- 3 -
PLAINTIFFS' MOTION TO EXTEND THE CONSENT DECREE
914589.1

With mutual agreement of the parties, the Court appointed Fred Alvarez as the Monitor. The Consent Decree requires Abercrombie and Plaintiffs to confer with the Monitor every six months to review the Semi-Annual Progress Reports. Consent Decree, § XV.F.

The Decree also provides that the Monitor will prepare an Annual Compliance Report on the status of implementation, Defendant's compliance with the terms and objectives of the Decree, and an "Executive Summary" of the Annual Compliance Report. Consent Decree, § XVI.A. The Decree states that the Monitor shall provide the parties with copies of the Report and Executive Summary within 90 days of the anniversary of the date of the Decree. Consent Decree § XVI.A.4. The Monitor has submitted five Annual Compliance Reports since the beginning of the Consent Decree, and the Court has held four status conferences to consider the reports. At the fifth status conference in fall 2010, the Court did not hear the parties on the Fifth Compliance Report because of the pendency of the enforcement proceeding.

Throughout the duration of the Consent Decree, Abercrombie has submitted Semi-Annual Progress Reports at the end of June and the end of December. Defendant's final Semi-Annual Progress Report would thus be expected around the end of June 2011, which is after the scheduled end of the Consent Decree on April 14, 2011. Declaration of Bill Lann Lee in Support of Plaintiffs' Motion to Extend the Consent Decree ("Lee Dec."), ¶ 20.

On February 18, 2011, the Monitor contacted the parties and requested their views on how the Monitor should conclude his duties. Specifically, the Monitor inquired as to whether he should prepare and issue the Sixth Annual Compliance Report covering the 11th and 12th Reporting Periods (i.e., May 2010 – April 2011). The Monitor noted that such a Report would necessarily be prepared and issued after the scheduled end of the Decree period. On February 24, 2011, Plaintiffs stated that they had no objection to the preparation of the Sixth Annual Compliance Report, and that a final compliance meeting with the Monitor and Court hearing would be appropriate. On March 1, 2011, Abercrombie objected to Plaintiffs' suggestions and to any further work by the Monitor after April 14, 2011. Specifically, Abercrombie objected to the preparation of the Sixth Annual Compliance Report, and communicated that it did not intend to prepare and

MINAMI TAMAKI, LLP
360 Post Street, 8th Floor
San Francisco, CA 94108
Tel. (415) 788-9000
Fax (415) 398-3887

- 4 -
PLAINTIFFS' MOTION TO EXTEND THE CONSENT DECREE
914589.1

submit the 12th Semi-Annual Report to the Monitor. Until this March 1, 2011 e-mail, Plaintiffs were unaware of Abercrombie's intention not to fulfill any of its obligations under the Decree after April 14, 2011. Lee Dec., ¶ 19, Exh. 11.

**i. The Monitor's Reports Have Consistently Revealed That Abercrombie's Selection Procedures Have a Statistically Significant Disparity on African Americans and Latinos**



PLAINTIFFS' MOTION TO EXTEND THE CONSENT DECREE

[Lines 1–8 redacted]

The Monitor has also regularly found that Abercrombie failed to meet most Hiring Benchmarks set for the Model position for African Americans, African American females, and Latinos. *See* Lee Dec., Exh. 6-10.

**ii. Status of Abercrombie's Motion for Resolution of Enforcement Proceedings**

Plaintiffs initiated enforcement proceedings against Defendant on August 28, 2009. This enforcement proceeding was based on grounds that Defendant had continually failed to meet the Benchmarks set out by the Decree. After the initiation of the enforcement proceedings, the parties met and conferred in an effort to resolve the matter. As part of this process, Abercrombie produced some data and documents to Plaintiffs. Plaintiffs sent a settlement proposal to Abercrombie on June 25, 2010 in a good faith attempt to resolve the enforcement proceedings. Abercrombie rejected Plaintiff's proposal on July 13, 2010, and further stated that the parties were at an impasse.

On August 6, 2010, Plaintiffs filed a motion for leave to serve discovery regarding the selection of African Americans, African American female, and Latino applicants at Defendant's stores. The discovery -- Requests for Admission, Interrogatories and Document Requests -- was focused on two subjects: (a) the adverse effect of Abercrombie's selection procedures, and (b) the validity and reliability of the selection procedures and consideration of alternative selection devices. On August 16, 2010, Abercrombie responded that it did not object to Plaintiffs serving this discovery and requested an extension of time to respond. Plaintiffs agreed. Lee Dec., ¶ 12. On

MINAMI TAMAKI, LLP
360 Post Street, 8th Floor
San Francisco, CA 94108
Tel. (415) 788-9000
Fax (415) 398-3887

- 6 -
PLAINTIFFS' MOTION TO EXTEND THE CONSENT DECREE
914589.1

October 4, 2010, Abercrombie served written objections and answers.  On October 8, 2010, Abercrombie produced documents.  Lee Dec., ¶ 13.

On October 28, 2010, Plaintiffs sent Abercrombie a Rule 37 letter (the "Rule 37 letter") regarding its responses.  The Rule 37 letter stated that Abercrombie had failed to substantively answer much of Plaintiffs' discovery requests. For example, Plaintiffs' Requests for Admission included several requests seeking admissions regarding the applicant rates, hire rates and statistical significance of the differences all based on the Monitor's Reports.  Abercrombie refused to answer this discovery or to otherwise explain its basis for denying that differences in its applicant rate and hire rate are statistically significant. Similarly, Abercrombie refused to provide responses to requests and interrogatories regarding the adverse effect of its selection procedures, the validity and reliability of the selection procedures and any consideration of alternatives.  Lee Dec., ¶ 14.

On November 10, 2010, the parties participated in a meet and confer telephone conference, and, on November 16, 2010, Plaintiffs sent a letter summarizing the call and making proposals for resolving differences.  Abercrombie indicated that it would provide a declaration from industrial psychologist Dr. Kathleen Lundquist, but otherwise did not respond to Plaintiffs' proposals for resolution of the discovery disputes.  Lee Dec., ¶ 15.

On January 6, 2011, Abercrombie e-mailed the declarations of Dr. Lundquist and another expert, Bernard Siskind, and provided a flash drive with the underlying data the next day. Abercrombie's counsel stated that the declarations and flash drive resolved any discovery dispute between the parties.  Lee Dec., ¶ 16.

The following day, January 7, 2011, Abercrombie filed a Motion for Resolution of Enforcement Proceedings.  In support of its Motion, Abercrombie submitted the reports by the two experts served the day before, along with supporting documents.  Lee Dec., ¶ 17.

The parties engaged in meet and confer sessions in order to set out a briefing schedule for the Motion for Resolution of Enforcement Proceedings, and sent proposed schedules to the Special Master.  On February 10, the Special Master set a briefing schedule on the Motion, as well as deadlines for the parties to complete expert discovery. Pursuant to the schedule established by the

MINAMI TAMAKI, LLP
360 Post Street, 8th Floor
San Francisco, CA  94108
Tel. (415) 788-9000
Fax (415) 398-3887

- 7 -

PLAINTIFFS' MOTION TO EXTEND THE CONSENT DECREE

914589.1

Special Master, Plaintiffs have submitted the expert reports of Sheldon Zedeck and Louis Lanier. The Special Master will hold a hearing on the Motion on April 1, 2011. The Special Master expects to issue a substantive ruling on Defendant's Motion on April 11, 2011, three days prior to the end of the Consent Decree. Lee Dec., ¶ 18.

Plaintiffs anticipate that, regardless of the outcome of the Special Master's ruling, one or more of the parties will file an appeal of the Special Master's decision pursuant to Section X.B.7 of the Consent Decree. However, such an appeal could not be heard prior to the contemplated expiration of the Consent Decree on April 14, 2011. In order to avoid such a scenario, Plaintiffs contacted Defendants on February 28, 2011 and requested that Defendant stipulate to the extension of the Consent Decree until after any ruling by the Court on any appeals of the Special Master's order on the Motion for Resolution. On March 1, 2011, Defendant declined to stipulate to an extension. On March 15, 2011, Defendants declined Plaintiffs' request to stipulate to an Order Shortening Time for the briefing and hearing schedule for this Motion to Extend the Consent Decree. Lee Dec., ¶ 21.

### III.   ARGUMENT

**i. The Consent Decree Allows Plaintiff to Seek a Modification of the Decree**

In determining whether a consent decree may be modified, the Court should look first to the terms of the decree. *Labor/Community Strategy Center v. Los Angeles County Metropolitan Transportation Auth.*, 564 F.3d 1115, 1120-21 (9th Cir. 2009) (citing *United States v. Asarco Inc.*, 430 F.3d 972, 980 (9th Cir. 2005) ("A consent decree, like a contract, must be discerned within its four corners")). Section IX.B.2 of the Consent Decree provides that any party may seek modification of the Decree under the following conditions:

> In the event that changed or other circumstances make a modification of the Decree necessary to ensure its purposes are fully effectuated, but good faith negotiations seeking such modifications are unsuccessful, any party to the Decree shall have the right to move the Court to modify this Decree. Such motion shall be granted only upon the movant proving to the Court by clear and convincing evidence that changed or other circumstances make such modification necessary.

//

MINAMI TAMAKI, LLP
360 Post Street, 8th Floor
San Francisco, CA 94108
Tel. (415) 788-9000
Fax (415) 398-3887

- 8 -
PLAINTIFFS' MOTION TO EXTEND THE CONSENT DECREE
914589.1

Consent Decree § IX.B.2.  As stated above, Plaintiffs' good faith attempts to stipulate to an extension of the Consent Decree were unsuccessful.  Plaintiffs thus have no option but to bring this matter to the Court at this time pursuant to §§ IX.B.2 and X.B.5 of the Decree.  Plaintiffs have provided Abercrombie with actual notice of this request for immediate action.

Section § X.B.5 of the Consent Decree allows Lead Counsel and/or the EEOC to "promptly bring[] an issue directly before the Court when exigent facts or circumstances require immediate Court action to prevent a serious violation of the terms of this Decree, which otherwise would be without meaningful remedy."  Absent immediate Court action, the Plaintiffs will not be able to appeal any decision by the Special Master on the Motion for Resolution of Enforcement Proceedings.  Further, without an extension of the Decree, the Monitor and this Court will not have an opportunity to review and assess Defendant's compliance during the last scheduled year of the Decree.  Allowing the expiration of the Decree at this time would thus prejudice Plaintiffs and run counter to the stated purposes of the Decree.  Consent Decree § II.  For the foregoing reasons, the imminent expiration of the Consent Decree is clearly an exigent circumstance permitting the Court's immediate review.

### ii. The Court Should Modify the Consent Decree to Allow for Review and Assessment of Defendant's Compliance with the Decree

Based on the Monitor's consistent findings, as well as the parties' expert reports, Plaintiffs contend that Abercrombie has failed to comply with the terms of the Consent Decree with respect to the model selection procedure. The Monitor's Fifth Compliance Report called upon Defendant Abercrombie to consider modifying the model procedure.  As stated above, the parties are currently litigating fundamental issues regarding Abercrombie's compliance with regard to its procedures for hiring members of the protected groups for the Model position, and expect that the Special Master will issue a decision regarding Defendant's selection procedures by April 11, 2011.  Plaintiffs respectfully request a modification of the Consent Decree to 1) extend the Decree until after decisions on any appeals filed regarding the motion pending before the Special Master; 2) allow the Monitor to prepare and submit the Sixth Annual Compliance Report in or around August 2011; and

MINAMI TAMAKI, LLP
360 Post Street, 8th Floor
San Francisco, CA  94108
Tel. (415) 788-9000
Fax (415) 398-3887

3) schedule a status conference to review the results of the Monitor's Report on Abercrombie's compliance. As explained below, the Court has the inherent authority to modify the Consent Decree, Abercrombie's noncompliance provides grounds to modify the Decree, and Plaintiff's requested relief is necessary in order to ensure that the Decree's purposes are fully effectuated.

### a. The Court has Inherent Power to Modify the Consent Decree

Because a consent decree is a court-approved order, the Court has broad equitable discretion to enforce the obligations of the decree. *See Rufo v. Inmates of Suffolk County Jail*, 502 U.S. 367, 381 (1992); *Pyramid Lake Tribe of Indians v. Hodel*, 878 F.2d 1215, 1216 (9th Cir. 1989) ("A court charged with administering a decree entered by it or its predecessor has broad authority to alter or modify the decree."). As the U.S. Supreme Court has held, courts have continuing supervision over, and thus authority to modify, consent decrees. *See System Fed'n No. 91, Railwayy Employees' Dep't, AFL-CIO, v. Wright,* 364 U.S. 642, 647 (1961). Regardless of the terms of the Decree agreed upon by the parties, the Court has "continuing authority and discretion" to ensure compliance until Abercrombie has fulfilled its express obligations. *See EEOC v. Local 580, International Association of Bridge, Structural and Ornamental Ironworkers*, 925 F.2d 588, 593 (2d Cir. 1991). This includes the inherent power to extend the Consent Decree and allow for full review of Abercrombie's compliance.

### b. Noncompliance is a Significant Change in Circumstances that Warrants Modification of a Consent Decree

Modification of the Consent Decree is warranted by the express terms of the Decree. As stated at Section IX.B.2, a modification of the Decree is appropriate upon clear and convincing evidence that "changed or other circumstances make such modification necessary."

The Ninth Circuit has held that failure to substantially comply with the terms of a consent decree constitutes a changed circumstance that makes modification of a consent decree appropriate. *See Labor/Community Strategy Center v. Los Angeles County Metropolitan Transportation Auth.*, 564 F.3d 1115, 1120-21 (9th Cir. 2009) (citing *Thompson v. U.S. Dep't of Hous. & Urban Dev.*, 404 F.3d 821, 828-29 (4th Cir. 2005); *David C. Leavitt,* 242 F.3d 1206, 1212 (10th Cir. 2001);

MINAMI TAMAKI, LLP
360 Post Street, 8th Floor
San Francisco, CA 94108
Tel. (415) 788-9000
Fax (415) 398-3887

- 10 -

PLAINTIFFS' MOTION TO EXTEND THE CONSENT DECREE

914589.1

*Holland v. N.J. Dep't of Corr.*, 246 F.3d 267, 283-284 (3d Cir. 2001); *Vanguards of Cleveland v. City of Cleveland*, 23 F.3d 1013, 1019-20 (6th Cir. 1994)).

Modification is appropriate in this matter because the Monitor's reports suggest that Abercrombie has failed to comply with the express terms of the Consent Decree. As detailed in Section III, *supra,* the Monitor has consistently found that the selection procedures for the Model position have a statistically significant adverse effect on the hiring of African American (particularly African American female) and Latino applicants for employment.

### c. The Court Should Modify the Consent Decree by Granting A Limited Extension of the Decree

If the Court deems that modification of the Consent Decree is appropriate, the Court is empowered to extend the Consent Decree. As the Ninth Circuit held in *Labor/Community Strategy Center*, an extension of the length of the consent decree constitutes an appropriate modification when the consent decree contains an express expiration date. *Labor/Community Strategy Center*, 564 F.3d at 1120 (citing *Thompson v. U.S. Dep't of Hous. & Urban Dev.*, 404 F.3d 821, 824 (4th Cir. 2005). It is well established that "the broad remedial power contained within the modification and compliance enforcement powers can be used to extend a consent decree." *Holland v. N.J. Dep't of Corr.*, 246 F.3d 267, 282-83 (3d Cir. 2001) (citing *Chrysler Corp v. United States*, 316 U.S. 556 (1942); *United States v. Local 359, United Seafood Workers,* 55 F.3d 64, 69 (2d Cir. 1995)); *see also Thompson v. U.S. Dep't of Hous. & Urban Dev.*, 404 F.3d at 829 (noting that "[a] court's ability to modify a consent decree . . . springs from the court's inherent equitable power over its own judgments").

Other courts have extended consent decrees on grounds that defendant failed to comply with the decree. For example, in *Thompson v. U.S. Dep't of Hous. & Urban Dev.*, 404 F.3d 821 (4th Cir. 2005), the Fifth Circuit held that the district court did not abuse its discretion in extending the length of a consent decree that had been set to expire on a fixed date. The defendant housing agency had failed to make available specified units of housing within six and a half years of the approval of the consent decree. *Id.* at 825. The Fifth Circuit affirmed the district court's conclusion that the

**MINAMI TAMAKI, LLP**
360 Post Street, 8th Floor
San Francisco, CA 94108
Tel. (415) 788-9000
Fax (415) 398-3887

- 11 -

PLAINTIFFS' MOTION TO EXTEND THE CONSENT DECREE

914589.1

non-compliance amounted to a change of circumstance sufficient to warrant modification of the consent decree. *Id.*

The Court's limited extension of the Consent Decree is necessary in this matter, pursuant to Section IX.B.2 of the Decree. If the Court does not extend the Decree, there will be no opportunity for the parties to appeal any decision of the Special Master regarding the enforcement proceedings, and thus no opportunity to properly evaluate whether Defendant has complied with the terms of the Decree. The Monitor's consistent findings that Abercrombie's policies continue to have an adverse effect on Plaintiffs provide the requisite clear and convincing evidence that an extension of the Decree is necessary. Without an extension of the Decree, Abercrombie will be allowed to ignore the relevant findings of the monitor and extinguish the Decree without abiding by its stated requirements. Continued judicial oversight is necessary to fulfill the Consent Decree's stated purpose of ensuring equal employment opportunity for African Americans, Asian Americans, Latinos and women applying to, and working within, Abercrombie's stores.

### d. The Court Should Allow the Monitor to Submit the Sixth Annual Compliance Report

In addition to an extension of the Consent Decree, Plaintiffs request an order allowing the Monitor to submit the Sixth Annual Compliance Report to the Court and the parties. The Consent Decree provides that the Monitor will prepare an Annual Compliance Report on the status of implementation and Defendant's compliance with the terms and objectives of the Decree, as well as an "Executive Summary" of the Annual Compliance Report. Consent Decree, § XVI.A.

The Consent Decree states that the Monitor shall prepare an Annual Compliance Report within 90 days of the anniversary date of the Decree. Consent Decree § XVI.A.4. As stated *supra*, Plaintiffs attempted in good faith to reach an agreement allowing the Monitor to prepare and submit the Sixth Annual Compliance Report, but were met with an objection by Abercrombie.

Nothing in Section XVI allows the parties to escape their obligation to cooperate with the Monitor regarding his preparation of the Report for the 11th and 12th Reporting Periods. Defendant's objection to this Report violates Section XVI of the Decree and thereby threatens to

MINAMI TAMAKI, LLP
360 Post Street, 8th Floor
San Francisco, CA 94108
Tel. (415) 788-9000
Fax (415) 398-3887

- 12 -

PLAINTIFFS' MOTION TO EXTEND THE CONSENT DECREE

914589.1

deny the Monitor, the Court, and the parties the opportunity to evaluate Abercrombie's compliance during the crucial final year of the Consent Decree. The submission of the Sixth Annual Compliance Report is particularly important because the Court was not able to consider the Fifth Annual Compliance report because of the pendency of the enforcement proceeding. Moreover, as detailed in Section III, *supra*, the Monitor has consistently reported to the Court that Defendant's selection procedures for the Model position have a statistically significant adverse effect on African American (particularly African American female) and Latino applicants. Submission of the Sixth Annual Compliance Report is necessary in order to fulfill the Consent Decree's stated purpose of providing finality to the resolution of all claims asserted by the Plaintiffs. *See* Consent Decree, § II.G.

Abercrombie apparently intends to argue that, because the Consent Decree is set to expire on April 14, 2011, it is not required to prepare its 12th Semi-Annual Progress Report and submit it to the Monitor. Abercrombie's argument fails because April 14, 2011 merely marks the end of Abercrombie's duty to implement the initiatives in the Decree. It does *not* relieve Abercrombie of its obligations to report its compliance during the final six months of the Decree. Further, the Decree explicitly states that the Monitor shall complete Annual Compliance Reports and Executive Summaries within 90 days of the anniversary date of the Decree. Consent Decree § XVI.A.4. The expiration of the Decree does not alter this requirement, and Abercrombie remains responsible for providing information to the Monitor that will allow him to complete the Sixth Annual Compliance Report in a timely manner. Without a completed Sixth Annual Compliance Report, the Court will be left without any information regarding Abercrombie's compliance after approximately April 2010, a full year before the scheduled expiration of the Consent Decree.

Given the Court's broad equitable discretion to enforce the Decree, allowing the Monitor to prepare and submit this Report is well within the Court's inherent power under *Rufo*. *See* 502 U.S. at 381. Allowing the Monitor to prepare and submit this Report is particularly appropriate because it would allow the Monitor to complete the specific duties contemplated by the Decree and set out in Section XVI.

MINAMI TAMAKI, LLP
360 Post Street, 8th Floor
San Francisco, CA 94108
Tel. (415) 788-9000
Fax (415) 398-3887

- 13 -
PLAINTIFFS' MOTION TO EXTEND THE CONSENT DECREE
914589.1

For the foregoing reasons, Plaintiffs seek an order requiring Abercrombie to provide the Monitor with access to relevant Abercrombie data, including but not limited to, the Twelfth Semi-Annual Progress Report no later than June 30, 2011. The Monitor should then be allowed to complete the Sixth Annual Compliance Report on or about August 31, 2011.

### e. The Court Should Schedule a Status Conference with the Parties

Finally, Plaintiffs request that the Court hold a status conference with the parties after the submission of the Sixth Annual Compliance Report in order to review the Monitor's findings. The Decree requires the parties to conduct a conference with the Court on an annual basis to provide a status update on the implementation of the Decree. Consent Decree § XV.G.1.

As is the case with the Monitor's Annual Compliance Reports, the status conferences with the Court are an integral part of the enforcement of the Decree. For the reasons stated *supra*, the Consent Decree period should not conclude without the Court having an opportunity to review Abercrombie's compliance at the end of the Decree period. A conference with the Court is particularly important because the Court was not able to proceed with its last fall 2010 status conference because of the pendency of the enforcement proceeding.

Plaintiffs thus request that the Court exercise its broad equitable authority to ensure compliance with the decree, and schedule an annual status conference on September 23, 2011, or as soon afterwards as the Court is available.

### IV.   CONCLUSION

For the foregoing reasons, Plaintiffs request that the Consent Decree grant a limited extension until after the Court rules on any appeals of the Special Master's order on the pending Motion for Resolution of the Enforcement Proceedings. Further, the Monitor should be allowed to prepare and submit the Sixth Annual Compliance Report covering the 11th and 12th reporting periods contemplated by the Consent Decree. Finally, Plaintiffs propose that the Court schedule a status conference with the parties after the Monitor's submission of the Sixth Annual Compliance Report.

//

MINAMI TAMAKI, LLP
360 Post Street, 8th Floor
San Francisco, CA  94108
Tel. (415) 788-9000
Fax (415) 398-3887

- 14 -

PLAINTIFFS' MOTION TO EXTEND THE CONSENT DECREE

914589.1

Dated: March 15, 2011                                    Respectfully Submitted,

                                                         By:    /s/ Bill Lann Lee
                                                                Bill Lann Lee
                                                                Attorney for Plaintiffs

**MINAMI TAMAKI, LLP**
360 Post Street, 8th Floor
San Francisco, CA 94108
Tel. (415) 788-9000
Fax (415) 398-3887

- 15 -

PLAINTIFFS' MOTION TO EXTEND THE CONSENT DECREE

914589.1