1  Bill Lann Lee (SBN 108452)
   LEWIS, FEINBERG, LEE, RENAKER &
2  JACKSON, P.C.
   476 9th Street
3  Oakland, CA 94607
   Telephone: (510) 839-6824
4  Facsimile: (510) 839-7839

Kelly M. Dermody (SBN 171716)
Jahan C. Sagafi (SBN 224887)
LIEFF, CABRASER, HEIMANN &
BERNSTEIN, LLP
275 Battery Street, 30th Floor
San Francisco, CA  94111-3339
Telephone:  (415) 956-1000
Facsimile:  (415) 956-1008

5

6  John C. Hendrickson (IL SBN 1187589)
   Gregory M. Gochanour (IL SBN 6210804)
7  U.S. EQUAL EMPLOYMENT
   OPPORTUNITY COMMISSION
8  500 West Madison Street, Suite 2800
   Chicago, IL 60661

Jack W. Lee (SBN 071626)
MINAMI TAMAKI LLP
360 Post Street, 8th Floor
San Francisco, CA 94108
Telephone:  (415) 788-9000
Facsimile:  (415) 398-3887

9  *Attorneys for Plaintiffs*

10            **UNITED STATES DISTRICT COURT**

11    **NORTHERN DISTRICT OF CALIFORNIA, SAN FRANCISCO DIVISION**

12

13  EDUARDO GONZALEZ, et al., on behalf of
    themselves and all others similarly situated,
14                    Plaintiffs,

Case Nos.  03-2817 SI, 04-4730 and
04-4731

15            v.

16  ABERCROMBIE & FITCH STORES, INC., et al.,
                    Defendants.
17

**DECLARATION OF BILL LANN
LEE IN SUPPORT OF
PLAINTIFFS' MOTION TO
EXTEND THE CONSENT DECREE**

Date:    April 8, 2011
Time:    9:00 a.m.
Dept:    Courtroom 10, 19th Floor
Judge:  Hon. Susan Illston

18  ELIZABETH WEST, et al., on behalf of
19  themselves and all others similarly situated,
                    Plaintiffs,
20

21            v.

22  ABERCROMBIE & FITCH STORES, INC., et al.,
                    Defendants.

23  EQUAL EMPLOYMENT OPPORTUNITY
    COMMISSION,
24                    Plaintiffs,

25            v.

26  ABERCROMBIE & FITCH STORES, INC., et al.,
                    Defendants.

27                    **REDACTED COPY**

28

MINAMI TAMAKI, LLP
360 Post Street, 8th Floor
San Francisco, CA 94108
Tel. (415) 788-9000
Fax (415) 398-3887

1    I, Bill Lann Lee, declare:

2        1. I am a shareholder with the law firm of Lewis, Feinberg, Lee, Renaker & Jackson, P.C.,

3    and lead counsel for the Plaintiffs in the above-captioned action.  This declaration is submitted in

4    support of Plaintiffs' Motion to Extend the Consent Decree.  I make this declaration based on my

5    own personal knowledge and, if called as a witness, I could testify competently as to the matters set

6    forth herein.

7        2. Attached hereto as Exhibit 1 is a true and correct copy of an excerpt from the Court-

8    Appointed Monitor's First Annual Compliance Report.

9        3. Attached hereto as Exhibit 2 is a true and correct copy of an excerpt from the Court-

10   Appointed Monitor's Second Annual Compliance Report.

11       4. Attached hereto as Exhibit 3 is a true and correct copy of an excerpt from the Court-

12   Appointed Monitor's Third Annual Compliance Report.

13       5. Attached hereto as Exhibit 4 is a true and correct copy of an excerpt from the Court-

14   Appointed Monitor's Fourth Annual Compliance Report.

15       6. Attached hereto as Exhibit 5 are true and correct copies of excerpts from the Court-

16   Appointed Monitor's Fifth Annual Compliance Report.

17       7. Attached hereto as Exhibit 6 is a true and correct copy of the Executive Summary of

18   Court-Appointed Monitor's First Annual Compliance Report.

19       8. Attached hereto as Exhibit 7 is a true and correct copy of the Executive Summary of

20   Court-Appointed Monitor's Second Annual Compliance Report.

21       9. Attached hereto as Exhibit 8 is a true and correct copy of the Executive Summary of

22   Court-Appointed Monitor's Third Annual Compliance Report.

23       10.  Attached hereto as Exhibit 9 is a true and correct copy of the Executive Summary of

24   Court-Appointed Monitor's Fourth Annual Compliance Report.

25       11.  Attached hereto as Exhibit 10 are true and correct copies of the Executive Summary of

26   Court-Appointed Monitor's Fifth Annual Compliance Report.

27       12. On August 6, 2010, Plaintiffs filed a motion for leave to serve discovery regarding the

28   selection of African Americans, African American female, and Latino applicants at Defendant's

MINAMI TAMAKI LLP
360 Post Street, 8th Floor
San Francisco, CA  94108
Tel. (415) 788-9000
Fax (415) 398-3887

- 2 -

DECLARATION IN SUPPORT OF PLAINTIFFS' MOTION TO EXTEND THE CONSENT DECREE

stores. The discovery -- Requests for Admission, Interrogatories and Document Requests -- was focused on two subjects: (a) the adverse effect of Abercrombie's selection procedures, and (b) the validity and reliability of the selection procedures and consideration of alternative selection devices. On August 16, 2010, Abercrombie responded that it did not object to Plaintiffs serving this discovery and requested an extension of time to respond. Plaintiffs agreed.

13. On October 4, 2010, Abercrombie served written objections and answers. On October 8, 2010, Abercrombie produced documents.

14. On October 28, 2010, Plaintiffs sent Abercrombie a Rule 37 letter (the "Rule 37 letter") regarding its responses. The Rule 37 letter stated that Abercrombie had failed to substantively answer much of Plaintiffs' discovery requests. For example, Plaintiffs' Requests for Admission included several requests seeking admissions regarding the applicant rates, hire rates and statistical significance of the differences all based on the Monitor's Reports. Abercrombie refused to answer this discovery or to otherwise explain its basis for denying that differences in its applicant rate and hire rate are statistically significant. Similarly, Abercrombie refused to provide responses to requests and interrogatories regarding the adverse effect of its selection procedures, the validity and reliability of the selection procedures and any consideration of alternatives.

15. On November 10, 2010, the parties participated in a meet and confer telephone conference, and, on November 16, 2010, Plaintiffs sent a letter summarizing the call and making proposals for resolving differences. Abercrombie indicated that it would provide a declaration from industrial psychologist Dr. Kathleen Lundquist, but otherwise did not respond to Plaintiffs' proposals for resolution of the discovery disputes.

16. On January 6, 2011, Abercrombie e-mailed the declarations of Dr. Lundquist and another expert, Bernard Siskin, and provided a flash drive with the underlying data the next day. Abercrombie's counsel stated that the declarations and flash drive resolved any discovery dispute between the parties.

17. The following day, January 7, 2011, Abercrombie filed a Motion for Resolution of Enforcement Proceedings. In support of its Motion, Abercrombie submitted the reports by the two experts served the day before, along with supporting documents.

MINAMI TAMAKI, LLP
360 Post Street, 8th Floor
San Francisco, CA 94108
Tel. (415) 788-9000
Fax (415) 398-3887

- 3 -

18. The parties engaged in meet and confer sessions in order to set out a briefing schedule for the Motion for Resolution of Enforcement Proceedings, and sent proposed schedules to the Special Master.  On February 10, the Special Master set a briefing schedule on the Motion, as well as deadlines for the parties to complete expert discovery.  Pursuant to the schedule established by the Special Master, Plaintiffs have submitted the expert reports of Sheldon Zedeck and Louis Lanier.  The Special Master will hold a hearing on the Motion on April 1, 2011.  The Special Master expects to issue a substantive ruling on Defendant's Motion on April 11, 2011, three days prior to the end of the Consent Decree.

19. On February 18, 2011, the Monitor contacted the parties and requested their views on how the Monitor should conclude his duties.  Specifically, the Monitor inquired as to whether he should prepare and issue the Sixth Annual Compliance Report covering the 11th and 12th Reporting Periods (i.e., May 2010 – April 2011).  The Monitor noted that such a Report would necessarily be prepared and issued after the scheduled end of the Decree period.  On February 24, 2011, Plaintiffs stated that they had no objection to the preparation of the Sixth Annual Compliance Report, and that a final compliance meeting with the Monitor and Court hearing would be appropriate.  On March 1, 2011, Abercrombie objected to Plaintiffs' suggestions and to any further work by the Monitor after April 14, 2011.  Specifically, Abercrombie objected to the preparation of the Sixth Annual Compliance Report, and communicated that it did not intend to prepare and submit the 12th Semi-Annual Report to the Monitor.  Plaintiffs were unaware of Abercrombie's intention not to fulfill any of its obligations under the Decree after April 14, 2011 until this March 1, 2011 e-mail.  Attached hereto as Exhibit 11 is a true and correct copy of the e-mail correspondence between the Monitor and the parties regarding the Sixth Annual Compliance Report.

20. Throughout the duration of the Consent Decree, Abercrombie has submitted Semi-Annual Progress Reports at the end of June and the end of December.  Defendant's final Semi-Annual Progress Report would thus be expected around the end of June 2011, which is after the scheduled end of the Consent Decree on April 14, 2011.

MINAMI TAMAKI, LLP
360 Post Street, 8th Floor
San Francisco, CA 94108
Tel: (415) 788-9000
Fax: (415) 398-3887

- 4 -

DECLARATION IN SUPPORT OF PLAINTIFFS' MOTION TO EXTEND THE CONSENT DECREE

1    21. Plaintiffs contacted Defendants on February 28, 2011 and requested that Defendant

2  stipulate to the extension of the Consent Decree until after any ruling by the Court on any appeals

3  of the Special Master's order on the Motion for Resolution.  On March 1, 2011, Defendant declined

4  to stipulate to an extension.  On March 15, 2011, Defendants declined Plaintiffs' request to

5  stipulate to an Order Shortening Time for the briefing and hearing schedule for this Motion to

6  Extend the Consent Decree

7

8    I declare, under penalty of perjury and the laws of the State of California, that the foregoing

9  is true and correct.

10    Executed this 15th day of March, 2011, at Oakland, California.

11

12

13  Bill Lann Lee
   Attorney for Plaintiffs

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

MINAMI TAMAKI, LLP
360 Post Street, 8th Floor
San Francisco, CA 94108
Tel. (415) 788-9000
Fax (415) 398-3887

DECLARATION IN SUPPORT OF PLAINTIFFS' MOTION TO EXTEND THE CONSENT DECREE

# EXHIBIT 1

Filed Under Seal

# EXHIBIT 2

## Filed Under Seal

# EXHIBIT 3

## Filed Under Seal

# EXHIBIT 4

## Filed Under Seal

# EXHIBIT 5

Filed Under Seal

# EXHIBIT 6

1   Fred W. Alvarez, State Bar No. 068115
    WILSON SONSINI GOODRICH & ROSATI
2   650 Page Mill Road
    Palo Alto, CA 94304-1050
3   Telephone: (650) 493-9300
    Facsimile: (650) 493-6811
4
    Court-Appointed Monitor
5
                    UNITED STATES DISTRICT COURT
6
                  NORTHERN DISTRICT OF CALIFORNIA
7

| | |
|---|---|
| 8   EDUARDO GONZALEZ, ANTHONY<br>OCAMPO, ENCARNACION GUTIERREZ,<br>9   JOHAN MONTOYA, JUANCARLOS GÓMEZ-<br>MONTEJANO, JENNIFER LU, AUSTIN CHU,<br>IVY NGUYEN, ANGELINE WU, ERIC FIGHT,<br>10   CARLA GRUBB, DAVID CULPEPPER,<br>PATRICE DOUGLASS, and ROBAIR<br>11   SHERROD, BRANDY HAWK and ANDRE<br>STEELE, on behalf of themselves and all others,<br>12<br>                Plaintiffs,<br>13<br>          v.<br>14<br>15   ABERCROMBIE & FITCH STORES, INC.,<br>A&F CALIFORNIA, LLC, A&F OHIO, INC.,<br>and ABERCROMBIE & FITCH<br>16   MANAGEMENT CO.,<br>17                Defendants. | CASE NOS.: 03-2817 SI, 04-4730 and<br>04-4731<br><br>**EXECUTIVE SUMMARY OF<br>COURT-APPOINTED MONITOR'S<br>FIRST ANNUAL COMPLIANCE<br>REPORT** |

18   ELIZABETH WEST and JENNIFER LU,                        )

19                Plaintiffs,                               )

20          v.                                             )

21   ABERCROMBIE & FITCH STORES, INC.,                     )
     A&F CALIFORNIA, LLC, A&F OHIO, INC.,                  )
22   and ABERCROMBIE & FITCH                               )
     MANAGEMENT CO.,                                       )
23                                                         )
                 Defendants.                               )
24   EQUAL EMPLOYMENT OPPORTUNITY                          )
     COMMISSION,                                           )
25                                                         )
            v.                                             )
26                                                         )
     ABERCROMBIE & FITCH STORES, INC.,                     )
27   A&F CALIFORNIA, LLC, A&F OHIO, INC.,                  )
     and ABERCROMBIE & FITCH                               )
28   MANAGEMENT CO.,                                       )
                                                           )
                 Defendants.                               )

EXECUTIVE SUMMARY OF COURT-
APPOINTED MONITOR'S FIRST ANNUAL
COMPLIANCE REPORT

## I.    REQUIREMENTS OF CONSENT DECREE

The Consent Decree provides for the preparation of an Executive Summary of the Court-Appointed Monitor's Annual Compliance Report. The Executive Summary should set forth "the substance of the Monitor's findings" with respect to Abercrombie's[1] compliance with the requirements of the Consent Decree for the applicable period. The Consent Decree goes on to describe the Executive Summary as follows: "The parties contemplate that the Executive Summary will reflect the Monitor's general findings in areas such as, but not limited to, training, recruitment, creation of job analyses and descriptions, and attainment of Benchmarks, all as more specifically covered by the Report, and the parties also contemplate that the Executive Summary will not include specific findings as to, inter alia, the numbers of applications, hires, promotions, or specific occurrences or events. By way of example, the Executive Summary's discussion of the Company's training could generally set out the Monitor's findings relative to whether the Company had or had not met its overall training objectives under the Decree over the subject reporting period, and, if not, a general statement of matters with respect to which there had been non-compliance and any steps the Company is to take to resolve such matters." What follows is the Monitor's Executive Summary, with topics listed in the order presented in the Consent Decree.

## II.   SUBSTANCE OF MONITOR'S FINDINGS REGARDING MARKETING

The Monitor found that Abercrombie's marketing materials, taken as a whole, had not yet achieved the breadth of diversity required by the Consent Decree. The Consent Decree requires that Abercrombie's marketing materials "reflect diversity, as reflected by the major racial/ethnic minority populations of the United States." Generally, the Company's marketing materials reflected some diversity with respect to African Americans, but did not reflect Latino or Asian

---

[1] This Executive Summary incorporates herein by reference the definition of "Abercrombie" contained in the Consent Decree: "'Abercrombie' or the 'Company' means Abercrombie & Fitch Stores, Inc.; A&F California, LLC; A&F Ohio, Inc; and Abercrombie & Fitch Management Co., as well as each of their parents, subsidiaries, affiliates, officers, directors, agents, management, successors and assigns and those in active concert or participation with them, or any of them. The terms of [the Consent] Decree cover all stores operated by Abercrombie whether under the name Abercrombie & Fitch, Hollister, abercrombie, or any other concept operated by Abercrombie."

1    American models to the degree necessary to warrant a finding of generally reflecting diversity.

2    Indeed, of the approximately 100 employees interviewed by the Monitor, the most frequent

3    observation made by store personnel was that the images used in the Company's marketing

4    materials were not diverse.

5         To achieve full compliance with this obligation, Abercrombie should redouble its efforts

6    to include African American, Asian American, and Latino images in the full range of marketing

7    materials so that those materials, taken as a whole, reflect diversity.

8    **III.   SUBSTANCE OF MONITOR'S FINDINGS REGARDING CREATION OF
        OFFICE OF DIVERSITY**

9

10        The Monitor found that Abercrombie met the Consent Decree's overall objectives with

11   regard to the creation of the Office of Diversity.  Abercrombie selected a highly qualified and

12   skilled individual to serve as its Vice President of Diversity and to lead its Office of Diversity.

13   The Office of Diversity has at its disposal the resources necessary to discharge the Office of

14   Diversity's duties and make compliance with the Consent Decree's objectives possible.

15   Abercrombie has provided the Office of Diversity and its Vice President with sufficient access to

16   executive management and other departments within the Company.

17   **IV.   SUBSTANCE OF MONITOR'S FINDINGS REGARDING NOTICE AND
        POSTING**

18

19        The Monitor found that Abercrombie met most of the Notice and Posting requirements as

20   set forth in the Consent Decree.  The vast majority of Abercrombie stores have Exhibit B Notices

21   posted.  A small percentage of Abercrombie stores do not have Exhibit B Notices posted or have

22   Exhibit B Notices posted in locations not readily visible.  Abercrombie should ensure that all

23   Exhibit B Notices are posted in readily visible locations, as required by the Consent Decree.

24        The HR 411 Bulletin republished the Exhibit B Notice every four (4) months, as required

25   by the Consent Decree.  The Associate Handbooks for each brand were revised to include a

26   statement that informs employees that Abercrombie entered into a Consent Decree, that the

27   Company agreed to undertake actions demonstrating its commitment to diversity and equal

28

1   employment opportunity, that each store posted an Exhibit B Notice, and that a summary of the

2   Consent Decree was available on a particular website, all as required by the Consent Decree.

3   **V.     SUBSTANCE OF MONITOR'S FINDINGS REGARDING EEO AND DIVERSITY
        TRAINING**

4

5       The Monitor found that Abercrombie developed EEO and Diversity Training programs,

6   as required by the Consent Decree.  However, Abercrombie did not provide the training to all

7   managerial, home office, or human resources employees within the required time period.

8   Abercrombie did not develop a system to adequately track whether and when all incumbent,

9   newly hired, or recently promoted managerial, home office, and human resources employees

10  received the training.  Abercrombie has committed to the Monitor that it would develop systems

11  to track training for managerial, home office, and human resources employees.  Going forward,

12  Abercrombie must provide confirmation that the Company provided EEO and Diversity Training

13  to all managerial, home office, and human resources employees within the time periods and in

14  the manner specified by the Consent Decree.

15  **VI.    SUBSTANCE OF MONITOR'S FINDINGS REGARDING INTERNAL
        COMPLAINT PROCEDURE**

16

17      The Monitor found that Abercrombie developed and implemented the Internal Complaint

18  Procedure, as required by the Consent Decree.  The Monitor also found that the Internal

19  Complaint Procedure was adequately publicized through the Exhibit B Notices and the Associate

20  Handbooks.  Although the Company developed a process to collect each incoming complaint,

21  the Company did not respond promptly to every complaint received, as required by the Consent

22  Decree.  To remedy this problem, Abercrombie has refined its complaint collection process to

23  ensure that the process allows for prompt responses to each complaint.  Additional attention to

24  prompt responses should be a priority in the upcoming compliance period.  The Monitor also

25  found that Abercrombie adequately tracked complaints once an investigation was initiated.

26  Moreover, the Monitor found that investigations were conducted in a timely manner once

27  assigned for investigation.  With respect to the Company's resolution of complaints received via

28  the Internal Complaint Procedure, the Monitor found that complaints were generally resolved to

EXECUTIVE SUMMARY OF COURT-            -3-
APPOINTED MONITOR'S FIRST ANNUAL
COMPLIANCE REPORT

1   the complainant's satisfaction. The Monitor found that Abercrombie instituted policies to

2   maintain records regarding the resolution of complaints received through the Internal Complaint

3   Procedure, as required by the Consent Decree.

4   **VII.   SUBSTANCE OF MONITOR'S FINDINGS REGARDING PERFORMANCE EVALUATIONS**

6       The Monitor found that Abercrombie adequately revised its Performance Evaluation

7   forms for store management employees, as required by the Consent Decree.

8   **VIII.  SUBSTANCE OF MONITOR'S FINDINGS REGARDING JOB ANALYSIS AND JOB CRITERIA**

10       The Monitor found that Abercrombie developed written job analyses and job-related

11   criteria for each in-store position, as required by the Consent Decree.

12   **IX.    SUBSTANCE OF MONITOR'S FINDINGS REGARDING RECRUITMENT AND HIRING**

14       The Monitor found that Abercrombie generally complied with the terms of the Consent

15   Decree with respect to the development of a Recruitment and Hiring Protocol to recruit and hire

16   for all hourly, in-store positions and the Manager-in-Training position. Abercrombie's

17   Recruitment and Hiring Protocol, however, does not contain an affirmative requirement that

18   Abercrombie seek qualified African American, Asian American, and Latino applicants of both

19   genders.

20       Abercrombie did not comply with the Consent Decree's requirement that all involved

21   staff be trained within sixty (60) days of the adoption of the Recruitment and Hiring Protocol.

22   While Abercrombie provided training in the Recruitment and Hiring Protocol to District

23   Managers and most Store Managers within the prescribed time period, Abercrombie has not yet

24   trained all Store Managers and has not yet provided training to any Assistant Managers or

25   Managers-in-Training. Abercrombie must promptly train all involved staff, including all Store

26   Managers, Assistant Managers, and Managers-in-Training, to be in compliance with the

27   requirements of the Consent Decree.

28

1   Abercrombie makes non-managerial job descriptions available so that potential

2 applicants are made aware of the differences among positions, as required by the Consent

3 Decree.

4 **X. SUBSTANCE OF MONITOR'S FINDINGS REGARDING MANAGERIAL**
    **PROMOTIONS**

5

6   Abercrombie promoted the targeted numbers of African American, Asian American,

7 Latino, and female managers to most managerial positions. However, Abercrombie did not

8 promote sufficient numbers of African American Assistant Managers to the Store

9 Manager/General Manager positions. To comply with the requirements of the Consent Decree,

10 Abercrombie must renew its efforts to promote African American managers "in a proportion that

11 is no less than the specific group's proportion of the available feeder pool."

12 **XI. SUBSTANCE OF MONITOR'S FINDINGS REGARDING DIVERSITY**
    **RECRUITERS**

13

14   The Monitor found that Abercrombie hired the agreed-upon number of Diversity

15 Recruiters, and that Abercrombie based an adequate number of those Diversity Recruiters in

16 major metropolitan areas, as required by the Consent Decree. Abercrombie was also charged

17 with using Best Efforts[2] to ensure that its Diversity Recruiters reflect diversity in race/national

18 origin and gender. More than half of the Company's Diversity Recruiters are female. Although

19 a significant percentage of the Diversity Recruiters are African American, the percentages of

20 Asian Americans and Latinos are too small to warrant a finding that the Diversity Recruiters

21 generally reflect diversity. Abercrombie should redouble its efforts to ensure that the Diversity

22 Recruiters hired reflect diversity in race and national origin.

23

24

25

26

27

28

---

[2] This Executive Summary incorporates herein by reference the definition of "Best Efforts" contained in the Consent Decree: "'Best Efforts' means implementing and adequately funding a plan reasonably designed to comply with all the specific objectives to which the best efforts are directed."

1     The Consent Decree also states that "Abercrombie will ... charge[] [its Diversity

2  Recruiters] with recruiting Minority[3] applicants, including female applicants of each Minority,

3  who meet Minimal Eligibility Requirements into in-store positions." The Recruiter job

4  description does not include the word "diversity" in its job title, nor does it specifically charge

5  the Diversity Recruiters with recruiting African American, Asian American, and Latino

6  candidates of both genders. While the Diversity Recruiters may be orally instructed to recruit

7  qualified Minority applicants, Abercrombie should take all steps necessary to ensure that the

8  Diversity Recruiters are charged pursuant to the terms of the Consent Decree.

9     Finally, the Consent Decree states that Abercrombie "will consider both external and

10 internal candidates" for the Diversity Recruiter position. Thus far, all of the Diversity Recruiters

11 hired have been internal candidates. Indeed, the Recruiter job description states that a candidate

12 must currently be at least a Store Manager at Abercrombie. For the upcoming compliance

13 period, Abercrombie should undertake an external recruiting effort when hiring any additional

14 Diversity Recruiters and/or filling any vacant Diversity Recruiter positions. Alternatively,

15 Abercrombie should seek modification of this provision from Lead Counsel and the EEOC if the

16 Company believes that objectives of this provision are being attained by alternative means.

17 **XII.    SUBSTANCE OF MONITOR'S FINDINGS REGARDING ADVERTISEMENTS**

18     The Monitor found that Abercrombie did not sufficiently advertise for in-store

19 employment opportunities in periodicals or other media that targeted African Americans, Asian

20 Americans, and/or Latinos of both genders, as called for in the Consent Decree. Abercrombie

21 should increase its efforts to place advertisements for in-store employment opportunities in

22 periodicals or other media that target these Minority Groups, or seek modification of this

23 provision should Abercrombie be able to convince Lead Counsel and the EEOC that the

24 objectives of this provision are being attained by other efforts.

25

26

27     [3] This Executive Summary incorporates herein by reference the definition of "Minority"
contained in the Consent Decree: "'Minority' means all African Americans, Asian Americans,
28 and Latinos. 'Minority Group' means each of these three groups."

EXECUTIVE SUMMARY OF COURT-                    -6-
APPOINTED MONITOR'S FIRST ANNUAL
COMPLIANCE REPORT

XIII.   **SUBSTANCE OF MONITOR'S FINDINGS REGARDING RECRUITING EVENTS**

The Monitor found that Abercrombie generally satisfied the requirement that the Company attend Minority job fairs and recruiting events that are attended by African American, Asian American, and Latino individuals of both genders.

XIV.   **SUBSTANCE OF MONITOR'S FINDINGS REGARDING DIVERSITY CONSULTANT**

The Monitor found that Abercrombie utilized a Diversity Consultant to conduct diversity and inclusion training for "all field-based managers and selected home office personnel." Abercrombie did not utilize a Diversity Consultant to aid in identifying sources of qualified African American, Asian American, and Latino candidates of both genders, as called for in the Consent Decree. Abercrombie should utilize a Diversity Consultant to aid in identifying sources of qualified Minority candidates, or seek modification of this provision should Abercrombie be able to convince Lead Counsel and the EEOC that the objectives of this provision are being attained by other efforts.

XV.   **SUBSTANCE OF MONITOR'S FINDINGS REGARDING DOCUMENTATION**

The Monitor found that Abercrombie generally complied with the Consent Decree's requirement that the Company provide documentation regarding its placement of advertisements for in-store opportunities. However, Abercrombie did not provide information regarding the size of the advertisements and, in some instances, the target audience of the publication in which the advertisements were placed. To comply with the requirements of the Consent Decree, Abercrombie should provide documentation regarding all advertisements for in-store opportunities. Such documentation should include the publication in which the advertisement was placed, the publication's target audience, and the size, time, and duration of the advertisement.

The Monitor found that Abercrombie did not comply with the Consent Decree's requirement that the Company provide documentation regarding the Diversity Recruiters' attendance at job fairs and recruiting events targeted towards African Americans, Asian

1 | Americans, and Latinos. Abercrombie should provide, at a minimum, documentation setting

2 | forth descriptions of all job fairs or recruiting events attended, including the places, dates, and

3 | target audiences.

4 | **XVI. SUBSTANCE OF MONITOR'S FINDINGS REGARDING HIRING BENCHMARKS**

5 |

6 | The Monitor found that Abercrombie complied with the requirements of the Consent

7 | Decree in terms of implementing and establishing Hiring Benchmark rates for each six-month

8 | compliance period.

9 | The Company met all Company-wide Hiring Benchmarks set for the first six-month

10 | period. However, in the second six-month period, Abercrombie did not meet most Company-

11 | wide Hiring Benchmarks. With respect to the second six-month period's Hiring Benchmarks for

12 | the Brand Representative position, Abercrombie met the Hiring Benchmark set for women.

13 | Abercrombie did not meet the second-six month period's Brand Representative Hiring

14 | Benchmarks set for Asian Americans, African Americans, Latinos, or African American women.

15 | With respect to the second six-month period's Hiring Benchmarks for the Manager-in-Training

16 | position, Abercrombie met the Hiring Benchmarks set for African Americans and women.

17 | Abercrombie did not meet the second-six month period's Manager-in-Training Hiring

18 | Benchmarks set for Asian Americans or Latinos. Abercrombie has developed a plan to achieve

19 | all of its upcoming Benchmarks. The effectiveness of that plan will be assessed during the next

20 | compliance period.

21 | **XVII. SUBSTANCE OF MONITOR'S FINDINGS REGARDING REPORTING, RECORDKEEPING, AND COMPLIANCE MEETINGS**

22 |

23 | The Monitor found that Abercrombie generally complied with the reporting,

24 | recordkeeping, and compliance meeting requirements set forth in the Consent Decree. The

25 | Company timely provided all reports required under the terms of the Consent Decree. The

26 | Company also instituted policies regarding the preservation of documents as required by the

27 | Consent Decree. The Company engaged in compliance meetings pursuant to the terms of the

28 | Consent Decree.

## XVIII. SUBSTANCE OF MONITOR'S FINDINGS REGARDING CONTENTS OF SEMI-ANNUAL PROGRESS REPORTS

Abercrombie submitted Semi-Annual Progress Reports in a timely fashion. The Monitor found that the Semi-Annual Progress Reports included most of the materials and information required pursuant to the Consent Decree. Going forward, the Company should address the following areas in its Semi-Annual Progress Reports:

(1)     An analysis of the hiring shortfalls in the Company's divisions of less than 80% of the Company-wide rates;

(2)     Confirmations from all of the District Managers that the Exhibit B Notices were posted;

(3)     Copies of all recruitment materials with an indication as to whether the image depicts a former or current Abercrombie associate;

(4)     An analysis of the Diversity VP's activities with respect to the Internal Complaint Procedure;

(5)     An analysis of the Diversity VP's activities with respect to Advertisements;

(6)     An analysis of the Diversity VP's activities with respect to the use of a Diversity Consultant;

(7)     An analysis of the Diversity VP's activities with respect to providing EEO and Diversity Training to all necessary associates;

(8)     Documentation of the Diversity Recruiters' recruiting efforts;

(9)     Copies of all purchased advertising;

(10)    Copies of all images used on the Company's websites; and

(11)    Copies of any videos (e.g., A&F "New Faces" videos or operations videos).

Dated: August 25, 2006                         Fred W. Alvarez


By: _____
Fred W. Alvarez
WILSON SONSINI GOODRICH & ROSATI
Professional Corporation

Court-Appointed Monitor

# EXHIBIT 7

1   Fred W. Alvarez, State Bar No. 068115
    WILSON SONSINI GOODRICH & ROSATI
2   650 Page Mill Road
    Palo Alto, CA  94304-1050
3   Telephone:  (650) 493-9300
    Facsimile:  (650) 493-6811
4
    Court-Appointed Monitor
5
                UNITED STATES DISTRICT COURT
6
             NORTHERN DISTRICT OF CALIFORNIA
7

| | |
|---|---|
| 8 EDUARDO GONZALEZ, ANTHONY OCAMPO, ENCARNACION GUTIERREZ, JOHAN MONTOYA, JUANCARLOS GÓMEZ-MONTEJANO, JENNIFER LU, AUSTIN CHU, IVY NGUYEN, ANGELINE WU, ERIC FIGHT, CARLA GRUBB, DAVID CULPEPPER, PATRICE DOUGLASS, and ROBAIR SHERROD, BRANDY HAWK and ANDRE STEELE, on behalf of themselves and all others, | CASE NOS.: 03-2817 SI, 04-4730 and 04-4731 **EXECUTIVE SUMMARY OF COURT-APPOINTED MONITOR'S SECOND ANNUAL COMPLIANCE REPORT** |

8   EDUARDO GONZALEZ, ANTHONY              )   CASE NOS.:  03-2817 SI, 04-4730 and
    OCAMPO, ENCARNACION GUTIERREZ,         )   04-4731
9   JOHAN MONTOYA, JUANCARLOS GÓMEZ-       )
    MONTEJANO, JENNIFER LU, AUSTIN CHU,    )   **EXECUTIVE SUMMARY OF**
    IVY NGUYEN, ANGELINE WU, ERIC FIGHT,   )   **COURT-APPOINTED MONITOR'S**
10  CARLA GRUBB, DAVID CULPEPPER,          )   **SECOND ANNUAL COMPLIANCE**
    PATRICE DOUGLASS, and ROBAIR           )   **REPORT**
11  SHERROD, BRANDY HAWK and ANDRE         )
    STEELE, on behalf of themselves and all others, )
12                                         )
                  Plaintiffs,              )
13                                         )
             v.                            )
14                                         )
    ABERCROMBIE & FITCH STORES, INC.,      )
15  A&F CALIFORNIA, LLC, A&F OHIO, INC.,   )
    and ABERCROMBIE & FITCH               )
16  MANAGEMENT CO.,                        )
                                           )
17  _____Defendants._____            )
    ELIZABETH WEST and JENNIFER LU,        )
18                                         )
                  Plaintiffs,              )
19                                         )
             v.                            )
20                                         )
    ABERCROMBIE & FITCH STORES, INC.,      )
21  A&F CALIFORNIA, LLC, A&F OHIO, INC.,   )
    and ABERCROMBIE & FITCH               )
22  MANAGEMENT CO.,                        )
                                           )
23  _____Defendants._____            )
    EQUAL EMPLOYMENT OPPORTUNITY           )
24  COMMISSION,                            )
                                           )
25           v.                            )
                                           )
26  ABERCROMBIE & FITCH STORES, INC.,      )
    A&F CALIFORNIA, LLC, A&F OHIO, INC.,   )
27  and ABERCROMBIE & FITCH               )
    MANAGEMENT CO.,                        )
28                                         )
    _____Defendants._____            )

EXECUTIVE SUMMARY OF COURT-
APPOINTED MONITOR'S SECOND
ANNUAL COMPLIANCE REPORT

## I.   REQUIREMENTS OF CONSENT DECREE

The Consent Decree provides for the preparation of an Executive Summary of the Court-Appointed Monitor's Annual Compliance Report. The Executive Summary should set forth "the substance of the Monitor's findings" with respect to Abercrombie's[1] compliance with the requirements of the Consent Decree for the applicable period. The Consent Decree goes on to describe the Executive Summary as follows: "The parties contemplate that the Executive Summary will reflect the Monitor's general findings in areas such as, but not limited to, training, recruitment, . . . and attainment of Benchmarks, all as more specifically covered by the Report, and the parties also contemplate that the Executive Summary will not include specific findings as to, inter alia, the numbers of applications, hires, promotions, or specific occurrences or events. By way of example, the Executive Summary's discussion of the Company's training could generally set out the Monitor's findings relative to whether the Company had or had not met its overall training objectives under the Decree over the subject reporting period, and, if not, a general statement of matters with respect to which there had been non-compliance and any steps the Company is to take to resolve such matters." What follows is the Monitor's Executive Summary of the Second Annual Compliance Report, with topics listed in the order presented in the Consent Decree. This Executive Summary does not discuss any of Abercrombie's obligations limited to the first year following the Approval Date of the Decree.

## II.   SUBSTANCE OF MONITOR'S FINDINGS REGARDING MARKETING

The Consent Decree requires that Abercrombie's marketing materials "reflect diversity, as reflected by the major racial/ethnic minority populations of the United States." The Monitor found that Abercrombie's marketing materials during the Second Compliance Period,[2] taken as a

---

[1] This Executive Summary incorporates herein by reference the definition of "Abercrombie" contained in the Consent Decree: "'Abercrombie' or the 'Company' means Abercrombie & Fitch Stores, Inc.; A&F California, LLC; A&F Ohio, Inc.; and Abercrombie & Fitch Management Co., as well as each of their parents, subsidiaries, affiliates, officers, directors, agents, management, successors and assigns and those in active concert or participation with them, or any of them. The terms of [the Consent] Decree cover all stores operated by Abercrombie whether under the name Abercrombie & Fitch, Hollister, abercrombie, or any other concept operated by Abercrombie."

[2] The Second Compliance Period extends from May 2006 to April 2007.

EXECUTIVE SUMMARY OF COURT-                    -1-
APPOINTED MONITOR'S SECOND
ANNUAL COMPLIANCE REPORT

1    whole, did not reflect diversity. When the Monitor compared the apparent race/ethnicity of

2    individuals appearing in Abercrombie's marketing materials to the U.S. Census figures regarding

3    the major racial/ethnic minority populations of the United States, Abercrombie's marketing

4    materials were considerably less diverse. In particular, images of individuals whose apparent

5    race/ethnicity was Asian American or Latino were almost entirely absent from Abercrombie's

6    marketing materials.

7    　　　To achieve compliance with this obligation, Abercrombie should strive to include African

8    American, Asian American, and Latino images in the full range of marketing materials so that

9    those materials, taken as a whole, reflect diversity.

10   **III.    SUBSTANCE OF MONITOR'S FINDINGS REGARDING NOTICE AND
             POSTING**

11

12   　　　The Monitor found that Abercrombie generally achieved compliance with the Consent

13   Decree's requirements regarding the posting of Exhibit B Notices. In addition, Abercrombie

14   published the Exhibit B Notice every four (4) months in the HR 411 Bulletin, as required by the

15   Consent Decree.

16   **IV.    SUBSTANCE OF MONITOR'S FINDINGS REGARDING EEO AND DIVERSITY
             TRAINING**

17

18   　　　The majority of Abercrombie's Managers-in-Training, Assistant Managers, Store

19   Managers, and General Managers, as well as District Managers and Regional Managers, have

20   received EEO and Diversity Training. However, Abercrombie has not yet demonstrated whether

21   its District Managers, Regional Managers, and in-store managers were trained within the time

22   periods required by the Consent Decree. The great majority of Abercrombie's Home Office

23   Employees received EEO and Diversity Training within the time periods prescribed by the

24   Consent Decree. Abercrombie did not have any training obligations with respect to Human

25   Resources Associates in the Second Compliance Period. On a going-forward basis, Abercrombie

26   should ensure that it implements adequate systems to identify which employees are due for

27   training under the Consent Decree, and that those employees are timely trained.

28

EXECUTIVE SUMMARY OF COURT-            -2-
APPOINTED MONITOR'S SECOND
ANNUAL COMPLIANCE REPORT

## V.   SUBSTANCE OF MONITOR'S FINDINGS REGARDING INTERNAL COMPLAINT PROCEDURE

The Monitor found that, in general, Abercrombie complied with the Consent Decree's requirements that it (1) commence and resolve investigations in a timely manner; (2) interview relevant witnesses; (3) communicate the results of investigations to complainants; and (4) keep written records of the investigatory steps taken. The Monitor also found that Abercrombie continued to adequately publicize the Internal Complaint Procedure through the Exhibit B Notices and the Associate Handbooks.

## VI.   SUBSTANCE OF MONITOR'S FINDINGS REGARDING RECRUITMENT AND HIRING

In the First Annual Compliance Report, the Monitor reported that Abercrombie did not comply with the Consent Decree's requirements that "all involved staff" receive training in the Company's Recruitment and Hiring Protocol and that they do so within prescribed time periods. Abercrombie also did not achieve compliance with these requirements during the Second Compliance Period. Abercrombie must promptly train all involved staff, including all District Managers, General Managers, Store Managers, Assistant Managers, and Managers-in-Training, to be in compliance with the terms of the Consent Decree.

In the First Annual Compliance Report, the Monitor reported that Abercrombie's Recruitment and Hiring Protocol did not contain an affirmative requirement that Abercrombie seek qualified African American, Asian American, and Latino applicants of both genders, as required by the Consent Decree. Abercrombie has since revised the Protocol to comply with this portion of the Decree.

## VII.   SUBSTANCE OF MONITOR'S FINDINGS REGARDING MANAGERIAL PROMOTIONS

Abercrombie promoted the targeted numbers of African American, Asian American, Latino, and female managers to most managerial positions. However, Abercrombie did not promote sufficient numbers of African American Assistant Managers to the Store

EXECUTIVE SUMMARY OF COURT-          -3-
APPOINTED MONITOR'S SECOND
ANNUAL COMPLIANCE REPORT

1    Manager/General Manager positions during the fourth six-month period.  To comply with the

2    requirements of the Consent Decree, Abercrombie must renew its efforts to promote African

3    American managers "in a proportion that is no less than the specific group's proportion of the

4    available feeder pool."

5    **VIII.   SUBSTANCE OF MONITOR'S FINDINGS REGARDING RECRUITERS**

6        The Monitor found that Abercrombie employed the agreed-upon number of Recruiters

7    and that Abercrombie based an adequate number of those Recruiters in major metropolitan areas,

8    as required by the Consent Decree.  Abercrombie was also charged with using Best Efforts[3] to

9    ensure that its Recruiters reflect diversity in race/national origin and gender.  More than half of

10    the Company's Recruiters are female, and a significant percentage are African American.

11    Abercrombie has also increased its percentage of Asian American Recruiters.  However, the

12    percentage of Latino and Asian American Recruiters remains too low to warrant a finding that

13    the Recruiters generally reflect diversity with respect to race.  The Monitor encourages

14    Abercrombie to continue its efforts to increase the overall diversity of its Recruiters.

15        The Consent Decree requires that Abercrombie consider both external and internal

16    candidates for the Recruiter position.  Although the Recruiter job description no longer provides

17    that a candidate must currently be employed by Abercrombie in a management-level position,

18    the Company has not yet hired an external candidate.  For the upcoming compliance period,

19    Abercrombie should expand its external recruiting efforts when seeking additional Recruiters

20    and/or filling vacant Recruiter positions.  Alternatively, Abercrombie should seek modification

21    of this requirement from Lead Counsel and the EEOC if the Company believes that the

22    objectives of the Recruiter provision are being attained.

23        In compliance with the Consent Decree, Abercrombie revised the job description for the

24    Recruiter position to include an affirmative directive that the Recruiters recruit African

25    Americans, Asian Americans, and Latinos of both genders.

26

27      [3] This Executive Summary incorporates herein by reference the definition of "Best Efforts"
contained in the Consent Decree:  "'Best Efforts' means implementing and adequately funding a

28    plan reasonably designed to comply with all the specific objectives to which the best efforts are
directed."

EXECUTIVE SUMMARY OF COURT-      -4-
APPOINTED MONITOR'S SECOND
ANNUAL COMPLIANCE REPORT

1  **IX.    SUBSTANCE OF MONITOR'S FINDINGS REGARDING ADVERTISEMENTS**

2          The Monitor found that Abercrombie generally complied with the Consent Decree's

3  requirement that the Company place advertisements for in-store employment opportunities in

4  periodicals that targeted African Americans, Asian Americans, and/or Latinos of both genders.

5  In the third six-month period, the majority of the advertisements did not advertise for in-store

6  employment, as required by the Consent Decree. However, in the fourth six-month period, all of

7  the advertisements expressly advertised for in-store opportunities.

8  **X.     SUBSTANCE OF MONITOR'S FINDINGS REGARDING RECRUITING
         EVENTS**

9

10         The Monitor found that Abercrombie satisfied the requirement that the Company attend

11  Minority[4] job fairs and recruiting events that are attended by African American, Asian American,

12  and Latino individuals of both genders.

13  **XI.    SUBSTANCE OF MONITOR'S FINDINGS REGARDING DIVERSITY
         CONSULTANT**

14

15         The Monitor found that Abercrombie utilized a Diversity Consultant to conduct diversity

16  and inclusion training and to aid in identifying sources of qualified Minority candidates, as

17  required by the Consent Decree.

18  **XII.   SUBSTANCE OF MONITOR'S FINDINGS REGARDING DOCUMENTATION**

19         The Monitor found that Abercrombie complied with the Consent Decree's requirement

20  that the Company provide documentation regarding the placement of advertisements for in-store

21  opportunities and the Recruiters' attendance at job fairs and recruiting events targeted towards

22  African Americans, Asian Americans, and Latinos.

23

24

25

26  _____

27  [4] This Executive Summary incorporates herein by reference the definition of "Minority"
     contained in the Consent Decree: "'Minority' means all African Americans, Asian Americans,

28  and Latinos."

EXECUTIVE SUMMARY OF COURT-            -5-
APPOINTED MONITOR'S SECOND
ANNUAL COMPLIANCE REPORT

## XIII.  SUBSTANCE OF MONITOR'S FINDINGS REGARDING HIRING BENCHMARKS

The Monitor found that Abercrombie complied with the requirements of the Consent Decree in terms of implementing and establishing Hiring Benchmark rates for the third and fourth six-month compliance periods.

However, Abercrombie did not meet most Company-wide Hiring Benchmarks set for the Second Compliance Period.  Table 1, below, summarizes Abercrombie's performance with respect to the Benchmarks for the Model position in the third and fourth six-month periods.

**Table 1**
**Model – Achievement of Third and Fourth Period Benchmarks**

|  | Third Period | Fourth Period |
|---|---|---|
| African American | Missed | Missed |
| Asian American | Missed | Missed |
| Latino | Missed | Missed |
| African American Female | Missed | Missed |
| Female | Met | Met |

Table 2, below, summarizes Abercrombie's performance with respect to the Benchmarks for the Manager-in-Training position in the third and fourth six-month periods.

**Table 2**
**MIT – Achievement of Third and Fourth Period Benchmarks**

|  | Third Period | Fourth Period |
|---|---|---|
| African American | Met | Missed |
| Asian American | Missed | Met |
| Latino | Missed | Missed |
| Female | Met | Met |

## XIV.  SUBSTANCE OF MONITOR'S FINDINGS REGARDING REPORTING AND COMPLIANCE MEETINGS

The Monitor found that Abercrombie complied with the reporting and compliance meeting requirements set forth in the Consent Decree.  The Company timely provided all reports required under the terms of the Consent Decree and engaged in compliance meetings pursuant to the terms of the Consent Decree.

XV.   **SUBSTANCE OF MONITOR'S FINDINGS REGARDING CONTENTS OF SEMI-ANNUAL PROGRESS REPORTS**

Abercrombie submitted Semi-Annual Progress Reports in a timely fashion, which it supplemented with additional materials.  The Monitor found that the Semi-Annual Progress Reports generally included the materials and information required pursuant to the Consent Decree.

Dated:  August 31, 2007                              Fred W. Alvarez


By: _____
Fred W. Alvarez
WILSON SONSINI GOODRICH & ROSATI
Professional Corporation

Court-Appointed Monitor

# EXHIBIT 8

1   Fred W. Alvarez, State Bar No. 068115
    WILSON SONSINI GOODRICH & ROSATI
2   650 Page Mill Road
    Palo Alto, CA 94304-1050
3   Telephone: (650) 493-9300
    Facsimile: (650) 493-6811
4
    Court-Appointed Monitor
5
                        UNITED STATES DISTRICT COURT
6
                       NORTHERN DISTRICT OF CALIFORNIA
7
8   EDUARDO GONZALEZ, ANTHONY          )   CASE NOS.: 03-2817 SI, 04-4730 and
    OCAMPO, ENCARNACION GUTIERREZ,     )   04-4731
9   JOHAN MONTOYA, JUANCARLOS GÓMEZ-   )
    MONTEJANO, JENNIFER LU, AUSTIN CHU, )  **EXECUTIVE SUMMARY OF**
10  IVY NGUYEN, ANGELINE WU, ERIC FIGHT, ) **COURT-APPOINTED MONITOR'S**
    CARLA GRUBB, DAVID CULPEPPER,       )  **THIRD ANNUAL COMPLIANCE**
11  PATRICE DOUGLASS, and ROBAIR        )  **REPORT**
    SHERROD, BRANDY HAWK and ANDRE      )
12  STEELE, on behalf of themselves and all others, )
                                        )
13                Plaintiffs,           )
                                        )
14        v.                            )
                                        )
15  ABERCROMBIE & FITCH STORES, INC.,   )
    A&F CALIFORNIA, LLC, A&F OHIO, INC., )
16  and ABERCROMBIE & FITCH            )
    MANAGEMENT CO.,                     )
17                                      )
                  Defendants.           )
18  ELIZABETH WEST and JENNIFER LU,     )
                                        )
19                Plaintiffs,           )
                                        )
20        v.                            )
                                        )
21  ABERCROMBIE & FITCH STORES, INC.,   )
    A&F CALIFORNIA, LLC, A&F OHIO, INC., )
22  and ABERCROMBIE & FITCH            )
    MANAGEMENT CO.,                     )
23                                      )
                  Defendants.           )
24  EQUAL EMPLOYMENT OPPORTUNITY        )
    COMMISSION,                         )
25                                      )
          v.                            )
26                                      )
    ABERCROMBIE & FITCH STORES, INC.,   )
27  A&F CALIFORNIA, LLC, A&F OHIO, INC., )
    and ABERCROMBIE & FITCH            )
28  MANAGEMENT CO.,                     )
                                        )
                  Defendants.           )

EXECUTIVE SUMMARY OF COURT-
APPOINTED MONITOR'S THIRD ANNUAL
COMPLIANCE REPORT

## I.   REQUIREMENTS OF CONSENT DECREE

The Consent Decree provides for the preparation of an Executive Summary of the Court-Appointed Monitor's Annual Compliance Report.  The Executive Summary should set forth "the substance of the Monitor's findings" with respect to Abercrombie's[1] compliance with the requirements of the Consent Decree for the applicable period.  The Consent Decree goes on to describe the Executive Summary as follows:  "The parties contemplate that the Executive Summary will reflect the Monitor's general findings in areas such as, but not limited to, training, recruitment, . . . and attainment of Benchmarks, all as more specifically covered by the Report, and the parties also contemplate that the Executive Summary will not include specific findings as to, inter alia, the numbers of applications, hires, promotions, or specific occurrences or events. By way of example, the Executive Summary's discussion of the Company's training could generally set out the Monitor's findings relative to whether the Company had or had not met its overall training objectives under the Decree over the subject reporting period, and, if not, a general statement of matters with respect to which there had been non-compliance and any steps the Company is to take to resolve such matters."  What follows is the Monitor's Executive Summary of the Third Annual Compliance Report.  This Executive Summary does not discuss any of Abercrombie's obligations limited to the first year following the Approval Date of the Decree.

## II.   SUBSTANCE OF MONITOR'S FINDINGS REGARDING MARKETING

The Consent Decree requires that Abercrombie's marketing materials, taken as a whole, "reflect diversity, as reflected by the major racial/ethnic minority populations of the United

---

[1] This Executive Summary incorporates herein by reference the definition of "Abercrombie" contained in the Consent Decree:  "'Abercrombie' or the 'Company' means Abercrombie & Fitch Stores, Inc.; A&F California, LLC; A&F Ohio, Inc.; and Abercrombie & Fitch Management Co., as well as each of their parents, subsidiaries, affiliates, officers, directors, agents, management, successors and assigns and those in active concert or participation with them, or any of them.  The terms of [the Consent] Decree cover all stores operated by Abercrombie whether under the name Abercrombie & Fitch, Hollister, abercrombie, or any other concept operated by Abercrombie."

EXECUTIVE SUMMARY OF COURT-                    -1-
APPOINTED MONITOR'S THIRD ANNUAL
COMPLIANCE REPORT

1    States." The Monitor found that Abercrombie's marketing materials during the Third

2    Compliance Period,[2] taken as a whole, did not reflect diversity.

3         Abercrombie has improved the representation of Asian Americans in its marketing. The

4    representation of African Americans and Asian Americans was at a level generally reflective of

5    their respective representation in the United States population, although diversity was not

6    uniform among the Abercrombie brands. Latinos remained generally underrepresented in

7    Abercrombie's marketing materials and across the brands. To achieve compliance with this

8    obligation, Abercrombie should continue to include African Americans and Asian Americans at

9    representative levels, and strive to include Latinos, in the full range of marketing materials,

10   including in the more prominent in-store locations, so that those materials, taken as a whole,

11   reflect diversity.

12   **III.    SUBSTANCE OF MONITOR'S FINDINGS REGARDING NOTICE AND**

13   **        POSTING**

14        The Monitor found that a majority of stores posted Exhibit B Notices. Abercrombie did

15   not, however, provide confirmation by District Managers that the Exhibit B Notices were posted,

16   as expressly required by the Consent Decree. Abercrombie should seek modification of this

17   requirement from Lead Counsel and the EEOC if the Company believes that the objectives of the

18   posting and confirmation requirements can be attained by other means.

19        The Consent Decree also requires that Abercrombie publish the Exhibit B Notice every

20   four months in its HR 411 Bulletin. Abercrombie's HR 411 Bulletins containing Exhibit B

21   Notices were not published every four months, with five months elapsing between the June 2007

22   and November 2007 publication dates, and six months elapsing between the November 2007 and

23   May 2008 publication dates.

24

25

26

27   _____

28        [2] The Third Compliance Period extends from May 2007 to April 2008.

EXECUTIVE SUMMARY OF COURT-              -2-
APPOINTED MONITOR'S THIRD ANNUAL
COMPLIANCE REPORT

IV.     **SUBSTANCE OF MONITOR'S FINDINGS REGARDING EEO AND DIVERSITY TRAINING**

The Monitor found that almost all managers, Salaried Exempt Employees, and Human Resources Associates required to be trained under the Consent Decree received EEO and Diversity Training in the Third Compliance Period. A majority of in-store managers and Human Resources Associates were trained within the time periods required by the Consent Decree. A minority of Salaried Exempt Employees were trained within the time periods prescribed by the Consent Decree. Abercrombie did not provide sufficient data for the Monitor to make a conclusion as to the proportion of Regional Managers and District Managers trained within the applicable time periods. On a going-forward basis, Abercrombie should ensure that it implements adequate systems to identify all employees who are due for training under the Consent Decree, and that those employees are timely trained.

V.     **SUBSTANCE OF MONITOR'S FINDINGS REGARDING INTERNAL COMPLAINT PROCEDURE**

The Monitor found that, in general, Abercrombie complied with the Consent Decree's requirements that it (1) commence and resolve investigations in a timely manner; (2) interview relevant witnesses; (3) communicate the results of investigations to complainants; and (4) keep written records of the investigatory steps taken. Abercrombie continued to publicize the Internal Complaint Procedure through the Exhibit B Notices and the Associate Handbooks.

VI.     **SUBSTANCE OF MONITOR'S FINDINGS REGARDING RECRUITMENT AND HIRING**

Abercrombie trained "all involved staff" in the Company's Recruitment and Hiring Protocol during the Third Compliance Period. Abercrombie did not provide sufficient data to make a definite conclusion as to the proportion of "involved staff" trained within the time periods required by the Consent Decree. On a going-forward basis, Abercrombie should ensure that it implements adequate systems to identify whether employees are timely trained.

1   **VII.   SUBSTANCE OF MONITOR'S FINDINGS REGARDING MANAGERIAL**
2        **PROMOTIONS**

3        Abercrombie met the Promotion Benchmarks (as defined in the Consent Decree) with

4   respect to African American, Asian American, Latino, and female managers for most managerial

5   positions.  However, Abercrombie did not do so with respect to African American promotions

6   from Assistant Manager to the Store Manager/General Manager positions during either the fifth

7   or sixth six-month period.  To comply with the requirements of the Consent Decree,

8   Abercrombie must renew its efforts to promote African American managers "in a proportion that

9   is no less than the specific group's proportion of the available feeder pool."

10  **VIII.   SUBSTANCE OF MONITOR'S FINDINGS REGARDING RECRUITERS**

11        The Monitor found that Abercrombie employed the agreed-upon number of Recruiters

12  and that Abercrombie based an adequate number of those Recruiters in major metropolitan areas,

13  as required by the Consent Decree.  Abercrombie is also charged with implementing a plan to

14  ensure that its Recruiters reflect diversity in race/national origin and gender.  More than half of

15  the Company's Recruiters are female.  The Monitor also found that the Recruiters are diverse

16  with respect to African Americans and Asian Americans.  However, the percentage of Latino

17  Recruiters remains too low to warrant a finding that the Recruiters generally reflect diversity

18  with respect to race.  Abercrombie should redouble its planning efforts to ensure that the

19  Recruiters hired reflect diversity with respect to Latinos.

20        The Consent Decree requires that Abercrombie consider both external and internal

21  candidates for the Recruiter position.  The Company has not yet hired an external candidate.  For

22  the upcoming compliance period, Abercrombie should expand its external recruiting efforts

23  when seeking additional Recruiters and/or filling vacant Recruiter positions.  Alternatively,

24  Abercrombie should seek modification of this requirement from Lead Counsel and the EEOC if

25  the Company believes that the objectives of the Recruiter provision are being attained.

26

27

28

EXECUTIVE SUMMARY OF COURT-                                    -4-
APPOINTED MONITOR'S THIRD ANNUAL
COMPLIANCE REPORT

1    The Consent Decree requires that Abercrombie charge the Recruiters with recruiting

2  Minority[3] applicants of both genders into in-store positions.  While the job description for the

3  Recruiter position includes an affirmative directive that the Recruiters recruit African Americans,

4  Asian Americans, and Latinos of both genders, certain developments during the Third

5  Compliance Period suggested that Recruiters are not spending as much time performing this

6  essential role as in prior compliance periods.  Abercrombie should ensure that the Recruiters

7  remain focused on recruiting Minority applicants of both genders into in-store positions.

8  **IX.    SUBSTANCE OF MONITOR'S FINDINGS REGARDING ADVERTISEMENTS**

9    The Monitor found that Abercrombie complied with the Consent Decree's requirement

10  that the Company place advertisements for in-store employment opportunities in periodicals that

11  targeted African Americans, Asian Americans, and/or Latinos of both genders.

12  **X.    SUBSTANCE OF MONITOR'S FINDINGS REGARDING MINORITY**
   **RECRUITING EVENTS**

13

14    The Monitor found that Abercrombie attended Minority job fairs and recruiting events.

15  However, the Monitor noted that Minority job fairs and recruiting events represent only a small

16  fraction of the fairs and recruiting events that Recruiters attend overall, based on the information

17  provided in the Fifth and Sixth Semi-Annual Progress Reports.

18  **XI.    SUBSTANCE OF MONITOR'S FINDINGS REGARDING DIVERSITY**
   **CONSULTANT**

19

20    The Monitor found that Abercrombie utilized a Diversity Consultant to conduct diversity

21  and inclusion training and to aid in identifying sources of qualified Minority candidates, as

22  required by the Consent Decree.

23

24

25

26

----

27   [3] This Executive Summary incorporates herein by reference the definition of "Minority"
   contained in the Consent Decree: "'Minority' means all African Americans, Asian Americans,
28   and Latinos."

XII.   **SUBSTANCE OF MONITOR'S FINDINGS REGARDING HIRING BENCHMARKS**

The Monitor found that Abercrombie complied with the requirements of the Consent Decree in terms of implementing and establishing Hiring Benchmark rates for the fifth and sixth six-month periods.

Abercrombie did not meet most Hiring Benchmarks set for the Model position for the Third Compliance Period.  Table 1, below, summarizes Abercrombie's performance with respect to the Benchmarks for the Model position in the fifth and sixth six-month periods.

**Table 1**
**Model - Achievement of Fifth and Sixth Six-Month Period Benchmarks**

|  | Fifth Period | Sixth Period |
|---|---|---|
| African American | Missed | Missed |
| Asian American | Met | Missed |
| Latino | Missed | Met |
| African American Female | Missed | Missed |
| Female | Met | Met |

Abercrombie met a majority of the Manager-in-Training Hiring Benchmarks set for the Third Compliance Period.  Table 2, below, summarizes Abercrombie's performance with respect to the Benchmarks for the Manager-in-Training position in the fifth and sixth six-month periods.

**Table 2**
**MIT - Achievement of Fifth and Sixth Six-Month Period Benchmarks**

|  | Fifth Period | Sixth Period |
|---|---|---|
| African American | Missed | Met |
| Asian American | Met | Missed |
| Latino | Missed | Met |
| Female | Met | Met |

XIII.   **SUBSTANCE OF MONITOR'S FINDINGS REGARDING COMPLIANCE MEETINGS**

Abercrombie engaged in compliance meetings pursuant to the terms of the Consent Decree.

1    **XIV.   SUBSTANCE OF MONITOR'S FINDINGS REGARDING CONTENTS OF SEMI-
2            ANNUAL PROGRESS REPORTS**

3            Abercrombie submitted Semi-Annual Progress Reports in a timely fashion.  The Semi-

4    Annual Progress Reports generally included the materials and information required pursuant to

5    the Consent Decree.

6

7    Dated:  September 2, 2008                        Fred W. Alvarez

8

9                                        By:  _____
10                                             Fred W. Alvarez
                                             WILSON SONSINI GOODRICH & ROSATI
11                                           Professional Corporation

12                                           Court-Appointed Monitor

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# EXHIBIT 9

1   Fred W. Alvarez, State Bar No. 068115
    WILSON SONSINI GOODRICH & ROSATI
2   650 Page Mill Road
    Palo Alto, CA 94304-1050
3   Telephone: (650) 493-9300
    Facsimile: (650) 493-6811
4
    Court-Appointed Monitor
5
                    UNITED STATES DISTRICT COURT
6
                  NORTHERN DISTRICT OF CALIFORNIA
7
8   EDUARDO GONZALEZ, ANTHONY          )   CASE NOS.: 03-2817 SI, 04-4730 and
    OCAMPO, ENCARNACION GUTIERREZ,     )   04-4731
    JOHAN MONTOYA, JUANCARLOS GÓMEZ-   )
9   MONTEJANO, JENNIFER LU, AUSTIN CHU, )  **EXECUTIVE SUMMARY OF**
    IVY NGUYEN, ANGELINE WU, ERIC FIGHT, ) **COURT-APPOINTED MONITOR'S**
10  CARLA GRUBB, DAVID CULPEPPER,      )   **FOURTH ANNUAL COMPLIANCE**
    PATRICE DOUGLASS, and ROBAIR       )   **REPORT**
11  SHERROD, BRANDY HAWK and ANDRE     )
    STEELE, on behalf of themselves and all others, )
12                                     )
                Plaintiffs,            )
13                                     )
          v.                           )
14                                     )
    ABERCROMBIE & FITCH STORES, INC.,  )
15  A&F CALIFORNIA, LLC, A&F OHIO, INC., )
    and ABERCROMBIE & FITCH            )
16  MANAGEMENT CO.,                    )
                                       )
17              Defendants.            )
    ELIZABETH WEST and JENNIFER LU,    )
18                                     )
                Plaintiffs,            )
19                                     )
          v.                           )
20                                     )
    ABERCROMBIE & FITCH STORES, INC.,  )
21  A&F CALIFORNIA, LLC, A&F OHIO, INC., )
    and ABERCROMBIE & FITCH            )
22  MANAGEMENT CO.,                    )
                                       )
23              Defendants.            )
    EQUAL EMPLOYMENT OPPORTUNITY       )
24  COMMISSION,                        )
                                       )
25        v.                           )
                                       )
26  ABERCROMBIE & FITCH STORES, INC.,  )
    A&F CALIFORNIA, LLC, A&F OHIO, INC., )
27  and ABERCROMBIE & FITCH            )
    MANAGEMENT CO.,                    )
28                                     )
                Defendants.            )

    EXECUTIVE SUMMARY OF COURT-
    APPOINTED MONITOR'S FOURTH
    ANNUAL COMPLIANCE REPORT

## I.      REQUIREMENTS OF CONSENT DECREE

The Consent Decree provides for the preparation of an Executive Summary of the Court-Appointed Monitor's Annual Compliance Report.  The Executive Summary should set forth "the substance of the Monitor's findings" with respect to Abercrombie's[1] compliance with the requirements of the Consent Decree for the applicable period.  The Consent Decree goes on to describe the Executive Summary as follows:  "The parties contemplate that the Executive Summary will reflect the Monitor's general findings in areas such as, but not limited to, training, recruitment, . . . and attainment of Benchmarks, all as more specifically covered by the Report, and the parties also contemplate that the Executive Summary will not include specific findings as to, inter alia, the numbers of applications, hires, promotions, or specific occurrences or events.  By way of example, the Executive Summary's discussion of the Company's training could generally set out the Monitor's findings relative to whether the Company had or had not met its overall training objectives under the Decree over the subject reporting period, and, if not, a general statement of matters with respect to which there had been non-compliance and any steps the Company is to take to resolve such matters."  What follows is the Monitor's Executive Summary of the Fourth Annual Compliance Report.  This Executive Summary does not discuss any of Abercrombie's obligations limited to the first year following the Approval Date of the Decree.

## II.     SUBSTANCE OF MONITOR'S FINDINGS REGARDING MARKETING

The Consent Decree requires that Abercrombie's marketing materials, taken as a whole, "reflect diversity, as reflected by the major racial/ethnic minority populations of the United

---

[1] This Executive Summary incorporates herein by reference the definition of "Abercrombie" contained in the Consent Decree:  "'Abercrombie' or the 'Company' means Abercrombie & Fitch Stores, Inc.; A&F California, LLC; A&F Ohio, Inc.; and Abercrombie & Fitch Management Co., as well as each of their parents, subsidiaries, affiliates, officers, directors, agents, management, successors and assigns and those in active concert or participation with them, or any of them.  The terms of [the Consent] Decree cover all stores operated by Abercrombie whether under the name Abercrombie & Fitch, Hollister, abercrombie, or any other concept operated by Abercrombie."

EXECUTIVE SUMMARY OF COURT-                    -1-
APPOINTED MONITOR'S FOURTH
ANNUAL COMPLIANCE REPORT

1  States." The Monitor found that Abercrombie's marketing materials during the Fourth

2  Compliance Period,[2] taken as a whole, did not reflect diversity.

3      Abercrombie has continued to have a substantial presence of African Americans in the

4  marketing materials at a level generally reflective of African Americans' respective

5  representation in the United States population. Asian Americans and Latinos were generally

6  underrepresented in Abercrombie's marketing materials. To achieve compliance with this

7  obligation, Abercrombie should continue to include African Americans at representative levels

8  and strive to include Asian Americans and Latinos in the full range of marketing materials,

9  including in the more prominent in-store locations, so that those materials, taken as a whole,

10  reflect diversity.

11  **III.   SUBSTANCE OF MONITOR'S FINDINGS REGARDING NOTICE AND POSTING**

12

13      The Monitor found that Abercrombie posted the Exhibit B Notices in stores and in its HR

14  411 Bulletin as required by the Consent Decree. As in the Third Compliance period,

15  confirmation of the posting of Exhibit B Notice was provided by the Recruiters. The Consent

16  Decree requires that such confirmation be provided by District Managers. Abercrombie should

17  seek modification of this requirement from Lead Counsel and the EEOC if the Company believes

18  that the objectives of the Consent Decree can be better attained through confirmation by the

19  Recruiters.

20  **IV.   SUBSTANCE OF MONITOR'S FINDINGS REGARDING EEO AND DIVERSITY TRAINING**

21      All of Abercrombie's District Managers, Regional Managers, and Human Resources

22  Employees required to be trained under the Consent Decree received EEO and Diversity

23  Training in the Fourth Compliance Period. However, some of these employees were not trained

24  within the time periods required by the Consent Decree. Notably, a majority of the salaried

25  exempt employees in Abercrombie's Store Administration, Store Communications, Security,

26  Stores HR, Store Operations, and Store Control departments did not receive the required EEO

27  _____

28      [2] The Fourth Compliance Period extends from May 1, 2008 to April 30, 2009.

EXECUTIVE SUMMARY OF COURT-          -2-
APPOINTED MONITOR'S FOURTH
ANNUAL COMPLIANCE REPORT

1  and Diversity Training during the Fourth Compliance Period. In addition, a large minority of In-

2  Store Managers received EEO and Diversity Training after the expiration of the applicable

3  deadline set forth the Consent Decree.

4       The Monitor found that Abercrombie does not appear to be accurately tracking

5  individualized training deadlines for employees required to receive EEO and Diversity Training.

6  To be fully compliant with the Consent Decree, Abercrombie would need to ensure that

7  employees are trained within the applicable training deadline. The Monitor remains concerned

8  that Abercrombie's current strategy both fails to meet the training deadline for some and "over

9  trains" others by training them twice as often as required by the Consent Decree. The Monitor

10  encourages Abercrombie to pursue potential low cost and "low tech" alternatives to meeting

11  Decree requirements without overtraining employees.

12  **V.  SUBSTANCE OF MONITOR'S FINDINGS REGARDING INTERNAL
   COMPLAINT PROCEDURE**

13

14       The Monitor found that, in general, Abercrombie complied with the Consent Decree's

15  requirements that it: (1) commence and resolve investigations in a timely manner; (2) interview

16  relevant witnesses; (3) communicate the results of investigations to complainants; and (4) keep

17  written records of the investigatory steps taken. Abercrombie continued to publicize the Internal

18  Complaint Procedure primarily through the Exhibit B Notices and the Associate Handbooks for

19  each brand.

20       In the Fourth Compliance Period, the Monitor alerted Abercrombie to an unusual number

21  of complaints about the manner in which Abercrombie handled internal employee EEO

22  complaints to Human Resources. Abercrombie investigated the issue and provided further

23  training to Human Resources associates handling the complaints. The Monitor will continue to

24  review Abercrombie's implementation and internal oversight of the Internal Compliant

25  Procedure.

26  **VI.  SUBSTANCE OF MONITOR'S FINDINGS REGARDING RECRUITMENT AND
   HIRING**

27       Abercrombie trained its In-Store Managers in the Company's Recruitment and Hiring

28  Protocol within the time period required by the Consent Decree. However, Abercrombie failed

EXECUTIVE SUMMARY OF COURT-
APPOINTED MONITOR'S FOURTH
ANNUAL COMPLIANCE REPORT

-3-

1  to train its District Managers in the Company's Recruitment and Hiring Protocol at all in the

2  Fourth Compliance Period. Therefore, Abercrombie did not train "all involved staff" in within

3  the time periods required by the Consent Decree.

4  **VII.  SUBSTANCE OF MONITOR'S FINDINGS REGARDING MANAGERIAL PROMOTIONS**

5

6  Abercrombie met the Promotion Benchmarks (as defined in the Consent Decree) with

7  respect to Asian American, Latino, and female managers for all managerial positions during the

8  7th six-month period. However, Abercrombie did not do so with respect to African American

9  promotions from MIT to the Assistant Manager position or from the Assistant Manager position

10  to the Store Manager/General Manager positions during the 7th six-month period.

11  Abercrombie met the Promotion Benchmarks (as defined in the Consent Decree) with

12  respect to all Minorities for all managerial positions in the 8th six-mouth period.

13  **VIII.  SUBSTANCE OF MONITOR'S FINDINGS REGARDING RECRUITERS**

14  The Monitor found that Abercrombie employed the agreed-upon number of Recruiters in

15  the 7th six-month period and the 8th period. In both periods, Abercrombie based an adequate

16  number of those Recruiters in major metropolitan areas, as required by the Consent Decree.

17  Abercrombie is also charged with implementing a plan to ensure that its Recruiters reflect

18  diversity in race/national origin and gender. More than half of the Company's Recruiters are

19  female. The Monitor also found that the Recruiters are diverse with respect to Asian Americans.

20  The Monitor noted that representation of African Americans within the recruiting department

21  was satisfactory, but noted the absence of African Americans in the more senior positions within

22  the department. The percentage of Latino Recruiters remains low. Abercrombie should

23  redouble its efforts to ensure that the Recruiters hired reflect diversity with respect to Latinos and

24  African Americans at all levels within the recruiting department.

25  The Consent Decree requires that Abercrombie consider both external and internal

26  candidates for the Recruiter position. As in prior compliance periods, the Company did not hire

27  any external candidates for the position. Abercrombie should expand its external recruiting

28  efforts when seeking additional Recruiters and/or filling vacant Recruiter positions.

1   Alternatively, Abercrombie should seek modification of this requirement from Lead Counsel and

2   the EEOC if the Company believes that the objectives of the Recruiter provision are being

3   attained.

4        The Consent Decree requires that Abercrombie charge the Recruiters with recruiting

5   Minority[3] applicants of both genders into in-store positions. While Recruiters have increased the

6   number of Minority job fairs and recruiting events attended by Recruiters, the Monitor remains

7   concerned about job responsibilities imposed upon Recruiters that are not Decree-related.

8   Abercrombie should ensure that the Recruiters remain focused on recruiting Minority applicants

9   of both genders into in-store positions and other Decree-related functions.

10   **IX.    SUBSTANCE OF MONITOR'S FINDINGS REGARDING ADVERTISEMENTS**

11        The Monitor found that Abercrombie complied with the Consent Decree's requirement

12   that the Company place advertisements for in-store employment opportunities in periodicals that

13   targeted African Americans, Asian Americans, and/or Latinos of both genders in the 7th six-

14   month period. However, Abercrombie failed to meet this requirement in the 8th six-month

15   period because its advertisements did not make reference to in-store employment opportunities.

16   **X.    SUBSTANCE OF MONITOR'S FINDINGS REGARDING MINORITY**
        **RECRUITING EVENTS**

17

18        The Monitor found that Abercrombie attended Minority job fairs and recruiting events as

    required by the Consent Decree.

19

20   **XI.   SUBSTANCE OF MONITOR'S FINDINGS REGARDING DIVERSITY**
       **CONSULTANT**

21        The Monitor found that Abercrombie utilized a Diversity Consultant to conduct diversity

22   and inclusion training and to aid in identifying sources of qualified Minority candidates, as

23   required by the Consent Decree.

24

25

26

27      [3] This Executive Summary incorporates herein by reference the definition of "Minority"
    contained in the Consent Decree: "'Minority' means all African Americans, Asian Americans,

28     and Latinos."

## XII. SUBSTANCE OF MONITOR'S FINDINGS REGARDING HIRING BENCHMARKS

The Monitor found that Abercrombie complied with the requirements of the Consent Decree in terms of implementing and establishing Hiring Benchmark rates for the 7th and 8th six-month periods.

Abercrombie did not meet most Hiring Benchmarks set for the Model position for the Fourth Compliance Period. Table 1, below, summarizes Abercrombie's performance with respect to the Benchmarks for the Model position in the 7th and 8th six-month periods.

**Table 1**
**Model - Achievement of 7th and 8th Six-Month Period Benchmarks**

|  | 7th Period | 8th Period |
|---|---|---|
| African American | Missed | Missed |
| Asian American | Met | Met |
| Latino | Missed | Missed |
| Female | Met | Missed |
| African American Female | Missed | Missed |

Abercrombie did not meet most of the Manager-in-Training Hiring Benchmarks set for the Fourth Compliance Period. Table 2, below, summarizes Abercrombie's performance with respect to the Benchmarks for the Manager-in-Training position in the 7th and 8th six-month periods.

**Table 2**
**MIT - Achievement of 7th and 8th Six-Month Period Benchmarks**

|  | 7th Period | 8th Period |
|---|---|---|
| African American | Missed | Missed |
| Asian American | Met | Missed |
| Latino | Missed | Missed |
| Female | Met | Met |

## XIII. SUBSTANCE OF MONITOR'S FINDINGS REGARDING COMPLIANCE MEETINGS

Abercrombie engaged in compliance meetings pursuant to the terms of the Consent Decree.

**XIV. SUBSTANCE OF MONITOR'S FINDINGS REGARDING CONTENTS OF SEMI-ANNUAL PROGRESS REPORTS**

Abercrombie submitted Semi-Annual Progress Reports in a timely fashion. The Semi-Annual Progress Reports included the materials and information required pursuant to the Consent Decree.

Dated: August 31, 2009                                    Fred W. Alvarez

By: _____
Fred W. Alvarez
WILSON SONSINI GOODRICH & ROSATI
Professional Corporation

Court-Appointed Monitor

# EXHIBIT 10

1    Fred W. Alvarez, State Bar No. 068115
     WILSON SONSINI GOODRICH & ROSATI
2    650 Page Mill Road
     Palo Alto, CA 94304-1050
3    Telephone: (650) 493-9300
     Facsimile: (650) 493-6811
4
     Court-Appointed Monitor
5
                 UNITED STATES DISTRICT COURT
6
               NORTHERN DISTRICT OF CALIFORNIA
7
8    EDUARDO GONZALEZ, ANTHONY            )    CASE NOS.: 03-2817 SI, 04-4730 and
     OCAMPO, ENCARNACION GUTIERREZ,       )    04-4731
     JOHAN MONTOYA, JUANCARLOS GÓMEZ-     )
9    MONTEJANO, JENNIFER LU, AUSTIN CHU,  )    **EXECUTIVE SUMMARY OF**
     IVY NGUYEN, ANGELINE WU, ERIC FIGHT, )    **COURT-APPOINTED MONITOR'S**
10   CARLA GRUBB, DAVID CULPEPPER,        )    **FIFTH ANNUAL COMPLIANCE**
     PATRICE DOUGLASS, and ROBAIR         )    **REPORT**
11   SHERROD, BRANDY HAWK and ANDRE       )
     STEELE, on behalf of themselves and all others, )
12                                        )
                 Plaintiffs,              )
13                                        )
                                          )
14        v.                              )
                                          )
15   ABERCROMBIE & FITCH STORES, INC.,    )
     A&F CALIFORNIA, LLC, A&F OHIO, INC., )
16   and ABERCROMBIE & FITCH             )
     MANAGEMENT CO.,                      )
17                                        )
                 Defendants.              )
18   ELIZABETH WEST and JENNIFER LU,     )
                                          )
19               Plaintiffs,              )
                                          )
20        v.                              )
                                          )
21   ABERCROMBIE & FITCH STORES, INC.,    )
     A&F CALIFORNIA, LLC, A&F OHIO, INC., )
22   and ABERCROMBIE & FITCH             )
     MANAGEMENT CO.,                      )
23                                        )
                 Defendants.              )
24   EQUAL EMPLOYMENT OPPORTUNITY        )
     COMMISSION,                          )
25                                        )
          v.                              )
26                                        )
     ABERCROMBIE & FITCH STORES, INC.,    )
27   A&F CALIFORNIA, LLC, A&F OHIO, INC., )
     and ABERCROMBIE & FITCH             )
28   MANAGEMENT CO.,                      )
                                          )
                 Defendants.              )

EXECUTIVE SUMMARY OF COURT-
APPOINTED MONITOR'S FIFTH ANNUAL
COMPLIANCE REPORT

4039251_3.DOC

## I.    REQUIREMENTS OF CONSENT DECREE

The Consent Decree provides for the preparation of an Executive Summary of the Court-Appointed Monitor's Annual Compliance Report.  The Executive Summary should set forth "the substance of the Monitor's findings" with respect to Abercrombie's[1] compliance with the requirements of the Consent Decree for the applicable period.  The Consent Decree goes on to describe the Executive Summary as follows: "The parties contemplate that the Executive Summary will reflect the Monitor's general findings in areas such as, but not limited to, training, recruitment, . . . and attainment of Benchmarks, all as more specifically covered by the Report, and the parties also contemplate that the Executive Summary will not include specific findings as to, inter alia, the numbers of applications, hires, promotions, or specific occurrences or events.  By way of example, the Executive Summary's discussion of the Company's training could generally set out the Monitor's findings relative to whether the Company had or had not met its overall training objectives under the Decree over the subject reporting period, and, if not, a general statement of matters with respect to which there had been non-compliance and any steps the Company is to take to resolve such matters."  What follows is the Monitor's Executive Summary of the Fifth Annual Compliance Report.  This Executive Summary does not discuss any of Abercrombie's obligations limited to the first year following the Approval Date of the Decree.

## II.   SUBSTANCE OF MONITOR'S FINDINGS REGARDING MARKETING

The Consent Decree requires that Abercrombie's marketing materials, taken as a whole, "reflect diversity, as reflected by the major racial/ethnic minority populations of the United

---

[1] This Executive Summary incorporates herein by reference the definition of "Abercrombie" contained in the Consent Decree: "'Abercrombie' or the 'Company' means Abercrombie & Fitch Stores, Inc.; A&F California, LLC; A&F Ohio, Inc.; and Abercrombie & Fitch Management Co., as well as each of their parents, subsidiaries, affiliates, officers, directors, agents, management, successors and assigns and those in active concert or participation with them, or any of them.  The terms of [the Consent] Decree cover all stores operated by Abercrombie whether under the name Abercrombie & Fitch, Hollister, abercrombie, or any other concept operated by Abercrombie."

1   States." The Monitor found that Abercrombie's marketing materials during the Fifth

2   Compliance Period,[2] taken as a whole, did not reflect diversity.

3       All Minorities were underrepresented in Abercrombie's marketing materials in the Fifth

4   Compliance Period, with the exception of Asian Americans. In past Compliance Periods,

5   Abercrombie's marketing materials featuring African Americans was steadily increasing. In the

6   Fifth Compliance Period, however, this was not the case, as African Americans were represented

7   at a fraction of their representation in the U.S. population. In addition, Latinos remain almost

8   entirely absent from Abercrombie's marketing materials, as they have since the inception of the

9   Consent Decree.

10  **III.    SUBSTANCE OF MONITOR'S FINDINGS REGARDING NOTICE AND
            POSTING**

11

12      The Monitor found that Abercrombie posted the Exhibit B Notices in stores and in its HR

13  411 Bulletin as required by the Consent Decree. The Consent Decree requires that confirmation

14  of the posting of the Exhibit B Notice be provided by District Managers. Abercrombie complied

15  with this requirement in the Fifth Compliance Period.

16  **IV.    SUBSTANCE OF MONITOR'S FINDINGS REGARDING EEO AND DIVERSITY
            TRAINING**

17

18      The Consent Decree requires that Home Office Associates, Human Resources

19  Employees, District Managers, Regional Managers, and In-Store Managers receive EEO and

20  Diversity Training within specific time periods required by the Consent Decree. Regarding

21  Home Office Employees, approximately 76% of Home Office Associates who had contact with

22  stores received training during the Fifth Compliance Period. Abercrombie reported that the only

23  Human Resource Associate with substantive responsibilities hired during the Fifth Compliance

24  Period was timely trained.

25      Regarding District Managers, Abercrombie satisfied its EEO and Diversity Training

26  obligations for incumbent District Managers. The Company, however, did not timely train

27  ───────────────

28      [2] The Fifth Compliance Period extends from May 1, 2009 to April 30, 2010.

EXECUTIVE SUMMARY OF COURT-              -2-                      4039251_3.DOC
APPOINTED MONITOR'S FIFTH ANNUAL
COMPLIANCE REPORT

1   newly promoted District Managers. The Consent Decree requires that newly promoted District

2   Managers receive two (2) hours of EEO training and Abercrombie only provided one (1) hour of

3   EEO training to such individuals during the Fifth Compliance Period.

4         Regarding Regional Managers, Abercrombie satisfied its training obligations for

5   incumbent Regional Managers. Although Abercrombie provided documentation that Regional

6   Managers were trained multiple times throughout the year, the Monitor was unable to confirm

7   whether newly promoted Regional Managers were trained in a timely fashion; it is unclear

8   whether the trainings Regional Managers received meet the substantive requirements set forth in

9   the Consent Decree.

10        With respect to In-Store Managers, Abercrombie satisfied its training obligations for

11  incumbent In-Store Managers. However, the Monitor was unable to confirm whether newly

12  promoted In-Store Managers were timely trained because Abercrombie did not provide the

13  Monitor with individualized training deadlines for In-Store Managers regarding EEO and

14  Diversity Training within the Fifth Compliance Period.

15  **V.    SUBSTANCE OF MONITOR'S FINDINGS REGARDING INTERNAL
           COMPLAINT PROCEDURE**

16

17        The Monitor found that, in general, Abercrombie complied with the Consent Decree's

18  requirements that it: (1) commence and resolve investigations in a timely manner; (2) interview

19  relevant witnesses; (3) communicate the results of investigations to complainants; and (4) keep

20  written records of the investigatory steps taken. Abercrombie continued to publicize the Internal

21  Complaint Procedure primarily through the Exhibit B Notices and the Associate Handbooks for

22  each brand.

23        Throughout the Fifth Compliance Period, complainants continued to call the Monitor to

24  report allegations of discrimination. The Monitor conducted interviews with such complainants

25  and informed Abercrombie of his findings. For the few complaints that described practices

26  potentially inconsistent with the Consent Decree, the Monitor made a particular effort to bring

27  such information to Abercrombie's attention and to follow up regarding Abercrombie's

28  investigation into the complaint. The Monitor was satisfied with Abercrombie's response to

1  these complaints. The Monitor will continue to review Abercrombie's implementation and

2  internal oversight of the Internal Complaint Procedure.

3  **VI.   SUBSTANCE OF MONITOR'S FINDINGS REGARDING RECRUITMENT AND HIRING**

4

5       The Consent Decree requires that Abercrombie train "all involved staff" in the conduct of

6  structured interviews and the Company's Recruitment and Hiring Protocol. Abercrombie timely

7  trained District Managers and Managers-In-Training. Store Managers and General Managers,

8  however, were not trained in a timely fashion. Abercrombie did not provide any information as

9  to its trainings of Assistant Managers.

10  **VII.  SUBSTANCE OF MONITOR'S FINDINGS REGARDING MANAGERIAL PROMOTIONS**

11

12       Abercrombie satisfied the Promotion Benchmarks (as defined in the Consent Decree) for

13  promotions of Asian Americans and women to the Assistant Manager position during the 9th six-

14  month period. Abercrombie also met the Promotion Benchmarks for promoting Asian

15  Americans, Latinos, and women to the Store Manager and General Manager positions in the 9th

16  six-month period. However, Abercrombie failed to meet the Promotion Benchmarks for

17  promotions of African Americans and Latinos to the Assistant Manager position and for African

18  American promotions to the Store Manager and General Manager positions in the 9th six-month

19  period.

20       Abercrombie satisfied the Promotion Benchmarks for promotions to the Assistant

21  Manager position with respect to all Minorities during the 10th six-month period. It also met the

22  Promotion Benchmarks for promoting African Americans, Latinos, and women to the Store

23  Manager and General Manager positions in the 10th six-month period. However, it failed to

24  meet this Promotion Benchmark for Asian Americans in the 10th six-month period.

25  **VIII.  SUBSTANCE OF MONITOR'S FINDINGS REGARDING RECRUITERS**

26       Abercrombie is required to hire and maintain at least twenty-five (25) full-time diversity

27  recruiters. Counting City Recruiters, Senior Recruiters, the Senior Manager for Store Recruiting,

28  the Recruiting Analyst and the Recruiting Coordinator, the Monitor found that Abercrombie

1    employed the requisite number of Recruiters in the 10th six-month period, but not in the 9th six-
2    month period.

3         Pursuant to the Consent Decree, the Recruiters must reflect diversity in race/national
4    origin and gender. Abercrombie satisfied this requirement with respect to gender, as over
5    seventy percent (70%) of the Recruiters employed during the Fifth Compliance Period were
6    female. Abercrombie also satisfied this requirement with respect to Asian Americans within the
7    recruiting department. The Monitor, however, is concerned about the number of Latino and
8    African American Recruiters. Abercrombie has not increased the number of Latino Recruiters
9    since the Third Compliance Period; since that time it has consistently employed two (2) Latino
10   Recruiters. Additionally, the Monitor notes that the representation of African American
11   Recruiters has dropped by more than half since the Second Compliance Period. The Monitor
12   also notes the very low number of Minorities[3] in senior and management recruiter positions.

13        The Consent Decree requires that Abercrombie consider both external and internal
14   candidates for the Recruiter position. As in prior compliance periods, all of the Recruiters
15   employed during the 9th and 10th six-month periods were hired internally.

16        The Consent Decree also requires that Abercrombie charge the Recruiters with recruiting
17   Minority applicants of both genders into in-store positions. City Recruiters attended, on average,
18   less than one (1) Minority recruiting event per month in the 9th six-month period and slightly
19   more than one (1) Minority recruiting event per month in the 10th six-month period. Senior
20   Recruiters attended a total of fewer than 10 Minority events with a potential recruiting
21   component during the year. The Monitor noted that a large percentage of the job fairs that
22   Recruiters attended during the Fifth Compliance Period were at schools with a predominantly
23   Caucasian student body. The Monitor encourages Abercrombie to ensure that Recruiters
24   maintain a focus on Decree-related responsibilities, including making recruiting Minority
25   applicants a priority.

26   _____

27   [3] This Executive Summary incorporates herein by reference the definition of "Minority"
     contained in the Consent Decree: "'Minority' means all African Americans, Asian Americans,
28   and Latinos."

EXECUTIVE SUMMARY OF COURT-          -5-                          4039251_3.DOC
APPOINTED MONITOR'S FIFTH ANNUAL
COMPLIANCE REPORT

IX.    SUBSTANCE OF MONITOR'S FINDINGS REGARDING ADVERTISEMENTS

The Consent Decree requires that Abercrombie place advertisements for in-store employment opportunities in periodicals that target African Americans, Asian Americans, and/or Latinos of both genders. Abercrombie failed to meet this requirement in the 9th and 10th six-month period because its advertisements did not make reference to in-store employment opportunities.

X.    SUBSTANCE OF MONITOR'S FINDINGS REGARDING MINORITY RECRUITING EVENTS

The Monitor found that Abercrombie attended Minority job fairs and recruiting events as required by the Consent Decree.

XI.    SUBSTANCE OF MONITOR'S FINDINGS REGARDING DIVERSITY CONSULTANT

The Monitor found that Abercrombie continued to utilize a Diversity Consultant throughout the Fifth Compliance Period to conduct diversity and inclusion training and to assist in identifying sources of qualified Minority candidates, as required by the Consent Decree.

XII.    SUBSTANCE OF MONITOR'S FINDINGS REGARDING HIRING BENCHMARKS

The Monitor found that Abercrombie complied with the requirements of the Consent Decree in terms of implementing and establishing Hiring Benchmark rates for the 9th and 10th six-month periods.

Abercrombie did not meet most Hiring Benchmarks set for the Model position for the Fifth Compliance Period. Table 1, below, summarizes Abercrombie's performance with respect to the Benchmarks for the Model position in the 9th and 10th six-month periods.

**Table 1**
**Model - Achievement of 9th and 10th Six-Month Period Benchmarks**

|  | 9th Period | 10th Period |
|---|---|---|
| African American | Missed | Missed |
| Asian American | Met | Met |
| Latino | Missed | Missed |
| Female | Met | Met |
| African American Female | Missed | Missed |

EXECUTIVE SUMMARY OF COURT-
APPOINTED MONITOR'S FIFTH ANNUAL
COMPLIANCE REPORT

-6-

4039251_3.DOC

Abercrombie met most of the Manager-in-Training Hiring Benchmarks set for the Fifth Compliance Period. Table 2, below, summarizes Abercrombie's performance with respect to the Benchmarks for the Manager-in-Training position in the 9th and 10th six-month periods.

**Table 2**
**MIT - Achievement of 9th and 10th Six-Month Period Benchmarks**

|                  | 9th Period | 10th Period |
|------------------|------------|-------------|
| African American | Missed     | Met         |
| Asian American   | Met        | Met         |
| Latino           | Missed     | Missed      |
| Female           | Met        | Met         |

## XIII. SUBSTANCE OF MONITOR'S FINDINGS REGARDING COMPLIANCE MEETINGS

Abercrombie engaged in compliance meetings pursuant to the terms of the Consent Decree.

## XIV. SUBSTANCE OF MONITOR'S FINDINGS REGARDING CONTENTS OF SEMI-ANNUAL PROGRESS REPORTS

Abercrombie submitted Semi-Annual Progress Reports in a timely fashion. The Semi-Annual Progress Reports included the materials and information required pursuant to the Consent Decree.

Dated: September 2, 2010          Fred W. Alvarez

By: _____
Fred W. Alvarez
WILSON SONSINI GOODRICH & ROSATI
Professional Corporation

Court-Appointed Monitor

# EXHIBIT 11

From: Knueve, Mark A. [mailto:MAKnueve@vorys.com]
Sent: Tuesday, March 01, 2011 10:58 AM
To: Lee, Bill Lan; Alvarez, Fred; Ridgley, Thomas B.; Norman, Jonathan M.; JLee@MinamiTamaki.com; Sagafi, Jahan C.;
GREGORY GOCHANOUR (GREGORY.GOCHANOUR@EEOC.GOV); Julie Wilensky
Cc: Phillips, Lauren (lphillips@wsgr.com)
Subject: RE: FW: April 14, 2011


Fred:

We wanted to respond to Bill's e-mail so that you understood the Company's position.

The parties are currently litigating an enforcement action in front of Special Master Hughes in which the plaintiffs seek an
extension of the Decree.  The Company believes that the plaintiffs have delayed prosecution of that enforcement
proceeding to create an appearance that an extension of the Decree is necessary in order to conclude their prosecution of
the enforcement proceeding.  The Company also believes that the plaintiffs' suggestions to you regarding meetings and a
report after the Decree's expiration are an attempt to obtain through another route what they seek to obtain - over the
Company's objections - in the enforcement proceeding.  Given that context, the Company objects to the plaintiffs'
suggestions to you.

The Company also objects to any extension of the Decree because (1) no extension is warranted in light of the
extraordinary progress the Company has made and (2) the Decree has a clear, specifically negotiated six-year term with a
definite ending point.  All parties ought to be held to their bargain.

Thanks,

Mark

From: Bill Lann Lee [mailto:blee@lewisfeinberg.com]
Sent: Thursday, February 24, 2011 5:53 PM
To: Alvarez, Fred; Knueve, Mark A.; Ridgley, Thomas B.; Norman, Jonathan M.; JLee@MinamiTamaki.com; Sagafi, Jahan
C.; GREGORY GOCHANOUR (GREGORY.GOCHANOUR@EEOC.GOV); Julie Wilensky
Cc: Phillips, Lauren (lphillips@wsgr.com)
Subject: FW: FW: April 14, 2011


Fred,

Plaintiffs believe that it is appropriate to have a final Monitor compliance meeting and final court hearing before the Decree
expires.
Ideally that should occur after the pending enforcement action is finally decided.  Because the Special Master expects to
have a ruling by April 11, 2011, we plan to meet and confer with Abercrombie about whether they will stipulate to extend
the Decree for the Court to entertain and decide any appeal from the Special Master's ruling, and to hold a final hearing.  If
the parties agree or the Court extends the Decree pendent lite to permit an appeal to be heard and decided, Plaintiffs
propose to schedule the final compliance meeting and final hearing immediately after the appeal decision.

Plaintiffs have no objection to the Monitor preparing a condensed final report for the Court.

Bill

From: Alvarez, Fred [FAlvarez@wsgr.com]
Sent: Friday, February 18, 2011 10:19 AM
To: Knueve, Mark A.; Jonathan M. Norman (jmnorman@vssp.com); TBRidgley@vssp.com; Bill Lann Lee
(blee@lewisfeinberg.com); Jack Lee; Sagafi, Jahan C.; gregory.gochanour@eeoc.gov
Cc: Alvarez, Fred; Phillips, Lauren
Subject: April 14, 2011

   We are now in the twelfth and final period of the Consent Decree and, in light of the approaching end to the
Decree term, I would like to solicit the parties' positions on how to conclude my monitoring duties.
The Decree states that "the provisions of this Decree shall remain in effect for a period of six years (72 months). " April 14,
2011 marks the end of the six-year effective period. My question is a simple one:  What do the parties expect me to do
after April 14, 2011, or leading up to that date? I don't know if this a controversial question or not, but I thought I had better
ask.

   As you know, in the past,  Abercrombie has submitted a Semi-Annual Progress Report at the end of June, which,
this year, would extend beyond the term of the Decree.  Therefore, we should determine how, if at all, Abercrombie will
report on its 12th Period compliance.
In addition, much of my monitoring activities have been performed in the spring and summer such as conducting store
visits and drafting the Annual Compliance Reports.  The Decree does not address whether the Monitor shall issue a final
Report after the term of the Decree to assess Abercrombie's compliance in the 11th and 12th Periods, and so I welcome
your views on whether I should prepare a final report. Of course, preparing a report would require a great deal of
engagement on Abercrombie's end with document productions, interviews, and data analysis which would, again, extend
beyond the period of the Decree.

   Finally, we have all participated in compliance meetings each spring, and so I would like to hear your views on
whether we should have a final compliance meeting in the next couple of months.

   I look forward to your thoughts.

   Fred.


   Fred W. Alvarez
   Wilson Sonsini Goodrich & Rosati
   650 Page Mill Road
   Palo Alto, California 94027
   650-496-4316
   650-565-5100 Fax
   falvarez@wsgr.com


   This email and any attachments thereto may contain private, confidential, and privileged material for the sole use
of the intended recipient.  Any review, copying, or distribution of this email (or any attachments thereto) by others is strictly
prohibited.  If you are not the intended recipient, please contact the sender immediately and permanently delete the
original and any copies of this email and any attachments thereto.


This message is intended for the named recipients only.  It may contain information protected by the attorney-client or
work-product privilege.
If you have received this email in error, please notify the sender immediately by replying to this email.  Please do not
disclose this message to anyone and delete the message and any attachments. Thank you.


This message is intended for the named recipients only.  It may contain information protected by the attorney-client or
work-product privilege.
If you have received this email in error, please notify the sender immediately by replying to this email.  Please do not
disclose this message to anyone and delete the message and any attachments. Thank you.

From the law offices of Vorys, Sater, Seymour and Pease LLP.

IRS CIRCULAR 230 DISCLOSURE:  In order to ensure compliance with requirements imposed by the U.S. Internal Revenue Service, we inform you that any federal tax advice contained in this communication (including any attachments) is not intended or written to be used, and it cannot be used, by any taxpayer for the purpose of (i) avoiding penalties  that may be imposed under the U.S. Internal Revenue Code or
(ii) promoting, marketing, or recommending to another person, any transaction or other matter addressed herein.

CONFIDENTIALITY NOTICE: This e-mail message is intended only for the person or entity to which it is addressed and may contain confidential and/or privileged material. Any unauthorized review, use, disclosure or distribution is prohibited. If you are not the intended recipient, please contact the sender by reply e-mail and destroy all copies of the original message. If you are the intended recipient but do not wish to receive communications through this medium, please so advise the sender immediately.

This message is intended for the named recipients only.  It may contain information protected by the attorney-client or work-product privilege.  If you have received this email in error, please notify the sender immediately by replying to this email.  Please do not disclose this message to anyone and delete the message and any attachments. Thank you.