IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| EDUARDO GONZALEZ, *et al.*, | No. C 03-2817 SI |
| Plaintiffs, | Related Cases: No. C 04-4730 SI, No. C 04-4731 SI |
| v. | **ORDER AFFIRMING SPECIAL MASTER'S DECISION** |
| ABERCROMBIE & FITCH CO., *et al.*, | |
| Defendants. | |

On June 3, 2011, the Court held a hearing on plaintiffs' motion to modify the consent decree and partial appeal from the Special Master's April 15, 2011 Order. For the following reasons, the Court DENIES plaintiffs' motion and AFFIRMS the Special Master's Order.

**BACKGROUND**

On August 28, 2009, plaintiffs initiated an enforcement action before the Special Master. Plaintiffs raised two claims: (1) that Abercrombie has failed to comply with its obligations under Section XII.A.2 of the consent decree because the selection criteria for Abercrombie's Model position caused adverse impact in the selection rates of Latinos and African-Americans, and Abercrombie had not used Best Efforts to determine whether alternative selection criteria or an alternative use of selection criteria would cause less adverse impact and be equally predictive of performance; and (2) that Abercrombie has failed to comply with its obligations under Section XIV of the consent decree because it failed to use Best Efforts to reach the Benchmarks for hiring of African-Americans, African-American Females, and Latinos to the Model position.

On April 1, 2011, the Special Master held a hearing, and on April 15, 2011, he issued a 42 page

decision. On the first claim, the Special Master found that plaintiffs had met their burden of showing that the selection criteria caused adverse impact in the selection of African-Americans, African-American women, and Latinos to the Model position. The Special Master also found that Abercrombie had not met its burden to "show[] that it has used Best Efforts to determine whether alternative job-related selection criteria or whether an alternative use of job-related selection criteria has less adverse impact and would be equally predictive of job performance." Consent Decree § XII.A.2. The Special Master ordered Abercrombie to "make an adverse impact review and assessment of its selection criteria (which includes its group interview procedures) relative to African-Americans and Latinos and determine whether alternative job-related selection criteria or whether an alternative use of job-related selection criteria has less adverse impact and would be equally predictive of job performance." Special Master's Order at 41-42.

However, on the first claim the Special Master denied two forms of relief that the plaintiffs sought. Plaintiffs sought an order directing Abercrombie to implement the alternative job-related selection criteria or alternative uses of the existing model selection procedure for a period of no less than two years. The Special Master denied that relief, finding that it was not authorized by the consent decree:

The Decree language at issue provides:

> If the selection criteria cause such adverse impact and are challenged under Section X of this Decree, the selection criteria shall be affirmed if Abercrombie shows that it has used Best Efforts to determine whether alternative job-related selection criteria or whether an alternative use of job-related selection criteria has less adverse impact and would be equally predictive of job performance.

This heavily negotiated Decree speaks in terms of the selection criteria being "affirmed" if Abercrombie has carried its Best Efforts burden. As discussed above, I have found that Abercrombie has not met its XII.A.2. Best Efforts burden. But the Decree does not authorize the relief outlined by Plaintiffs. Contrary to Plaintiffs' proposed relief, there is nothing in Section XII.A.2. of the Decree that requires Abercrombie to change its original selection criteria. What the Decree states is that Abercrombie can comply with its Best Efforts obligation by showing that it has used Best Efforts to determine whether other selection criteria (or alternate uses of selection criteria) have less impact and are equally predictive of job performance – i.e. do a component analysis and using that additional information to determine whether there are alternative job-related criteria (or selection criteria uses) having less impact that are equally predictive. Once Abercrombie makes that determination, then it has complied with its Best Efforts obligation under the Decree.

2

> Moreover, the Plaintiffs' proposed relief assumes that there are in fact alternatives with lesser impact that are equally predictive. However, there is no basis in the record to support the conclusion. In fact, the record suggests just the opposite in that the jointly selected organizational psychologist has opined repeatedly that there are no other such alternatives. While her opinion may change after completion of the component analyses, there is nothing in the record that necessarily leads to that conclusion.

Special Master's Order at 40-41. The Special Master also denied plaintiffs' request that Abercrombie be required to conduct "inter-rater reliability analyses" as part of the adverse impact review. The Special Master held that "§ XII.A.2 speaks to selection criteria and their uses. Inter-rater reliability studies do not fall within the scope of this Decree provision and, in any event, I find that the evidence does not support a finding that inter-rater reliability issues are a potential cause of adverse impact." *Id*. at 36-37. The Special Master noted that "[n]either of the parties cited any research or other evidence to suggest that there is a relationship between adverse impact and inter-rater reliability." *Id*. at 15.

On plaintiffs' second claim under Section XIV of the consent decree, the Special Master rejected plaintiffs' contention that Abercrombie failed to use Best Efforts to reach the Benchmarks for hiring of African-Americans, African-American Females, and Latinos to the Model position.

> Plaintiffs' position in essence is that Abercrombie's obligations to use Best Efforts under XII.A.2 coincides with its Best Efforts obligations under XIV. Thus plaintiffs contend that once it has established that the Benchmark obligations were not satisfied, then Abercrombie was required under the Uniform Guidelines to reexamine the PSP on a component analysis. In Plaintiffs' view, given Abercrombie's decision not to undertake the component analysis and instead to continue to rely on efforts that had not been wholly successful in achieving Benchmarks, its plan could not be found to be reasonably designed and implemented to achieve the Benchmarks. I disagree with Plaintiff's position.
>
> I find that Abercrombie did use Best Efforts to meet its Benchmark obligations under Section XIV. Abercrombie's Best Efforts obligations under Section XII.A.2. and Section XIV are not, as argued by Plaintiffs, fungible. The former is aimed at a very narrow issue of concern centering around the hiring selection criteria adopted by Abercrombie as part of its new hiring procedures. Section XII.A.2. tracks in many respects the obligations of parties under Title VII and the Uniform Guidelines under the adverse impact model. While changing the respective burdens of the parties in some respects, the adverse impact, causation, and alternative criteria concepts of Section XII.A.2. track those found in Title VII and used in adverse impact cases under Title VII. Thus, interpreting section XII.A.2. consistent with Title VII selection concepts and principles is logical and consist[ent] with the intent of the parties [as] evidenced by the structure and language of the Decree.
>
> But the Benchmark provision is different. The Benchmarks are not quotas. They are simply targets established to afford guidance as to whether Abercrombie is making selection decisions in a way as to afford equal employment opportunity. Section XIV is structured differently and serves a different purpose than the Section XII provision.

3

It does not adopt Title VII standards but simply looks to whether Abercrombie had a plan that was properly funded and implemented that was reasonably designed to meet the Benchmarks. Abercrombie clearly had such a plan (which it updated from time to time) to reach the Benchmarks and as outlined above it and ATP successfully implemented that plan. That point is clearly made by among other things:

- Abercrombie's achievement of most of the Model Hiring Benchmarks for females and Asian-Americans throughout the life of the Decree.

- Abercrombie's increase in minority representation in the Model position during the life of the Decree. During the life of the Decree, Abercrombie has more than quadrupled the incumbency rate of African-Americans, Asian-Americans, and Latinos in the Model position, and more than quintupled the incumbency rate of people who self-identify as non-white. More than half of those holding the Model position on October 31, 2010 were nonwhite.

- Abercrombie's hire rates of Latinos, African-Americans, Asian-Americans, and African-American Females into the Model position have steadily risen since the inception of the Decree in April 2005.

- Applicant rates of African-Americans and Latinos have also steadily risen during the life of the Decree, reflecting Abercrombie's successful efforts to recruit and attract minority applicants.

Special Master's Order at 37-39.

In addition to ordering Abercrombie to make an adverse impact review and assessment of its selection criteria, the Special Master recommended to the Court that the Court consider modification of the consent decree to permit a limited extension of the decree for the purpose of making the review and assessment. *Id*. at 42. The Special Master also ordered that at the completion of the review and assessment, Abercrombie shall submit a report to plaintiffs and the Court concerning the review and assessment. *Id*.

Plaintiffs filed a timely appeal of the Special Master's order. Plaintiffs request that the Court reverse the Special Master's finding with respect to inter-rater reliability, as well as the Special Master's finding with respect to their claim under Section XIV. Plaintiffs also request that the Court modify the consent decree by ordering Abercrombie to implement alternative Model selection criteria or alternative use of the existing criteria, and extend the consent decree until the alternative criteria are fully implemented and evaluated for a period of 18 months. Abercrombie did not file an appeal, opposes plaintiffs' motion, and states that it has begun conducting the review and assessment ordered by the Special Master.

**LEGAL STANDARD**

Section X.B.2 of the consent decree states that "The Special Master shall have authority to resolve all disputes arising under the Decree, subject to limitations and standards set forth in the Decree." Section X.B.4 contains a detailed process by which disputes are submitted to and decided by the Special Master. Section X.B.7 states that "The decision rendered by the Special Master shall be affirmed unless the Court determines that the Special Master made clearly erroneous findings of fact or wrongly interpreted or applied the Consent Decree."

**DISCUSSION**

**I.  Modification of consent decree**

Plaintiffs request that the Court modify the consent decree by ordering Abercrombie to identify, develop and implement alternative Model selection criteria or alternative use of the existing criteria, and extend the decree until the alternative criteria are fully implemented and evaluated for a period of 18 months. Plaintiffs contend that the Court has the authority to modify the consent decree pursuant to Section IX.B.2. of the decree, which provides that the decree may be modified "[i]n the event that changed or other circumstances make modification of the Decree necessary to ensure its purposes are fully effectuated." Consent Decree § IX.B.2. The Court may modify the consent decree only upon a showing by clear and convincing evidence that changed or other circumstances make a modification necessary. *Id*. Plaintiffs argue that the Special Master's finding that the selection criteria causes adverse impact, and that Abercrombie has failed to use Best Efforts to consider less discriminatory alternatives, constitute "changed circumstances" that modification is necessary to effectuate the purposes of the consent decree.

Plaintiffs also argue that the Court has the inherent equitable authority to enforce the consent decree such that it can go beyond the relief ordered by the Special Master. Plaintiffs contend that regardless of the terms of the decree agreed upon by the parties, the Court has inherent "continuing authority and discretion" to ensure compliance until Abercrombie has fulfilled its "express obligations." *EEOC v. Local 580, Int'l Assoc. of Bridge, Structural & Ornamental Ironworkers*, 925 F.2d 588, 593 (2d Cir. 1991). Plaintiffs argue that they have met the test that the Supreme Court has established for

5

modifying a consent decree, which requires plaintiffs to "satisfy the initial burden of showing a significant change either in factual conditions or in the law warranting modification of the decree. . . The district court must then determine whether the proposed modification is suitably tailored to resolve the problems created by the changed factual or legal condition." *United States v. Asarco, Inc.*, 430 F.3d 972, 979 (9th Cir. 2005) (citing *Rufo v. Inmates of Suffolk County Jail*, 502 U.S. 367, 384, 391 (1992)). Plaintiffs assert that the Special Master's findings constitute a "significant change in circumstances" sufficient to warrant modification of the decree. Thus, both of plaintiffs' arguments in support of modifying the consent decree rest on the contention that the Special Master's findings of adverse impact and Abercrombie's failure to use Best Efforts under Section XII.A.2. are "changed circumstances" that warrant modification.

The Court is not persuaded by plaintiffs' arguments. "A court should not ordinarily modify a decree, . . . 'where a party relies upon events that actually were anticipated at the time it entered into a decree.'" *Id.* (quoting *Rufo*, 502 U.S. at 385). Here, the consent decree explicitly anticipates that plaintiffs may challenge selection criteria if they cause adverse impact. Consent Decree § XII.A.2. The consent decree also states that selection criteria "shall be affirmed if Abercrombie shows that it has used Best Efforts to determine whether alternative job-related selection criteria or whether an alternative use of job-related selection criteria has less adverse impact and would be equally predictive of job performance." Consent Decree § XII.A.2. The consent decree does not state what will happen if Abercrombie does not show that it has used Best Efforts, and as the Special Master noted, the consent decree does not require Abercrombie to change its selection criteria. By providing that plaintiffs could challenge the selection criteria if they cause adverse impact, and stating the circumstances under which the selection criteria would be affirmed, the parties effectively anticipated the situation presented here, where the selection criteria are challenged and the Special Master finds that Abercrombie has not used its Best Efforts to determine whether alternative job-related selection criteria or whether an alternative use of job-related selection criteria has less adverse impact and would be equally predictive of job performance. Thus, the Special Master's findings do not constitute "changed circumstances" warranting modification of the consent decree.

The Court also finds that plaintiffs' proposed modification is not appropriate because it (1)

6

assumes that there is alternative selection criteria that causes less adverse impact, and (2) ignores the fact that the consent decree requires that the determination of alternative selection criteria include a determination that any such alternative selection criteria be "equally predictive of job performance." Consent Decree § XII.A.2. Plaintiffs request an order directing Abercrombie to "identify, develop, and implement less discriminatory alternative model selection criteria or alternative use of the existing criteria, which Abercrombie shall implement," and that the decree be extended until the alternative criteria have been fully implemented and evaluated for 18 months. Proposed Order (Docket No. 228-1). The Special Master's order requires Abercrombie "to make an adverse impact review and assessment of its selection criteria (which includes its group interview procedures) relative to African-Americans and Latinos and determine whether alternative job-related selection criteria or whether an alternative use of job-related selection criteria has less adverse impact and would be equally predictive of job performance." Special Master's Order at 41-42. Unlike the broader relief sought by plaintiffs, the Special Master's more limited relief is tailored to and consistent with the consent decree.

The Court is sympathetic to plaintiffs' argument that simply requiring Abercrombie to do the component analysis of the selection procedure and consider less discriminatory alternatives, without requiring that Abercrombie actually implement any such alternatives, does not ensure employment on a non-discriminatory basis. At the hearing, Abercrombie's counsel stated that if the results of the review ordered by the Special Master show that there are alternative selection criteria that cause less adverse impact and that are equally predictive of job performance, he believed that Abercrombie would implement such alternative selection criteria. Abercrombie's counsel also acknowledged that if Abercrombie did not implement such alternative selection criteria, Abercrombie would be exposed to liability in a future lawsuit.

At the hearing, plaintiffs' counsel expressed concern that plaintiffs' ability to participate in the component study would be limited, and he suggested that Dr. Lundquist was not jointly selected by the parties. However, as Abercrombie notes, notwithstanding plaintiffs' assertion that they did not jointly select Dr. Lundquist, the consent decree states that "[t]he parties stipulate and agree upon Abercrombie's retention of Kathleen Lundquist, a professional industrial organizational psychologist, to develop a written job analysis and job-related criteria for each in-store store position." Consent

7

Decree § XII.A.1. In addition, although plaintiffs want the ability to "evaluate" whatever alternative selection criteria are created, the consent decree provides that plaintiffs are "provided an opportunity for comment." Consent Decree § XII.A.4, § XII.B.9.

**II.     Inter-rater reliability analysis**

The Special Master found that Abercrombie is not required to undertake an empirical analysis of inter-rater reliability because (1) inter-rater reliability is outside the scope of Section XII.A.2, and (2) because neither party had cited any research or other evidence to suggest that there is a relationship between adverse impact and inter-rater reliability. Plaintiffs challenge this finding, arguing that the Special Master's interpretation of the consent decree is incorrect, and that his factual findings are clearly erroneous.

The Court affirms the Special Master's decision. As the Special Master found, Section XII.A.2 addresses selection criteria and their uses, and does not mention inter-rater reliability. Although plaintiffs cited literature to the Special Master and this Court regarding the connection between reliability and validity, neither party cited any literature or research suggesting a connection between inter-rater reliability and adverse impact.[1] In addition, as Abercrombie notes, the evidence before the Special Master and this Court shows that (1) Dr. Lundquist validated the PSP, (2) plaintiffs' expert Dr. Zedeck acknowledged that the work for Dr. Lundquist was within professional standards, and (3) at the April 1, 2011 hearing, plaintiffs agreed that the PSP was properly validated by Dr. Lundquist. On this record, the Court concludes that the Special Master did not err in denying this aspect of plaintiffs' enforcement action.

**III.    Best efforts under Section XIV**

The Special Master found that Abercrombie made Best Efforts to meet the Model hiring Benchmarks for African-American and Latino applicants, and that the Best Efforts obligations under

---

[1] At the hearing, Abercrombie's counsel also stated that an inter-rater reliability analysis could not simply be folded into the empirical study that is underway because currently there is one "rater" per group interview, whereas an inter-rater reliability analysis would require that there be multiple raters per group interview.

8

1  Sections XII.A.2 and XIV were distinct. Plaintiffs contend that the Special Master erred because the
2  Special Master "failed to defer to the informed findings of Court-appointed Monitor Alvarez in his most
3  recent report to the Court declining to find that Abercrombie engaged in Best Efforts as to these groups
4  for the Model position." Motion at 23:1-4. *See* Lee Decl. Ex. 4 (Monitor's Report).

5       Abercrombie responds that the consent decree does not state, or even imply, that the Special
6  Master is required to defer to the Monitor. The consent decree provides that the Special Master is the
7  trier of fact and has the authority to resolve disputes, whereas the Monitor is not a trier of fact, does not
8  take or weigh evidence, and has no authority to make findings. *Compare* Consent Decree § XV (role
9  of Monitor) *with* § X.B.2, 4.g., 4.h., 7 (role of Special Master). Abercrombie also asserts that the
10 Monitor did *not* state that Abercrombie failed to use Best Efforts, but instead that he was "reserv[ing]
11 judgment on the question of best efforts in Model hiring until Abercrombie has a final opportunity to
12 thoroughly examine all critical assumptions in the Model hiring process and address them directly."
13 Lee Decl. Ex. 4 at 53. Abercrombie argues that the Special Master reviewed and weighed the Monitor's
14 Reports, in addition to the extensive evidence submitted by the parties, and correctly held that
15 Abercrombie met its Best Efforts obligations under Section XIV.

16      The Court concludes that the Special Master did not err. The Court agrees with Abercrombie
17 that the consent decree does not require the Special Master to defer to the Monitor, and in any event,
18 the Monitor reserved judgment on the question of whether Abercrombie satisfied its Best Efforts
19 obligations with regard to Benchmarks. The Special Master found that while the Best Efforts obligation
20 under Section XII.A.2 tracks in many respects the obligations of parties under Title VII, Section XIV
21 does not adopt Title VII standards but simply looks to whether Abercrombie had a plan that was
22 properly funded and implemented that was reasonably designed to meet the Benchmarks.[2] Plaintiffs do
23 not challenge any of the factual findings underpinning the Special Master's conclusion that Abercrombie
24 had a plan that was reasonably designed to meet the Benchmarks, and that Abercrombie successfully
25 implemented that plan. As the Special Master noted, throughout the life of the consent decree,

---

27      [2] The consent decree defines "Best Efforts" as "implementing and adequately funding a plan reasonably designed to comply with all the specific objectives to which the best efforts are directed."
28  Consent Decree § III.H.

9

Abercrombie achieved most of the Model Hiring Benchmarks for females and Asian-Americans throughout the life of the consent decree, and more than quadrupled the incumbency rate of African-Americans, Asian-Americans, and Latinos in the Model position.

**CONCLUSION**

For the foregoing reasons, the Court DENIES plaintiffs' motion to modify the consent decree and AFFIRMS the Special Master's Order. Docket No. 228 in C 03-2817 SI; Docket No. 71 in C 04-4731 SI. The Court modifies the consent decree to permit a limited extension of the decree for the purpose of making the review and determinations ordered by the Special Master. At the completion of the review and required determinations, Abercrombie shall submit a report to plaintiffs and the Court concerning the subject review and determinations.

**IT IS SO ORDERED.**

Dated: June 23, 2011

SUSAN ILLSTON
United States District Judge